**Rosen, Tsionis & Pizzo, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Avrum J. Rosen, Esq.
Alex E. Tsionis, Esq.

*Counsel for Debra Kramer, Plaintiff-Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 7 |
| MARGARITA ONASSIS PARLIONAS *a/k/a* MARGARITA MARY VEKRAKOS, | Case No.: 23-42029-jmm |
| Debtor. | |

-----------------------------------------------------------X

| | |
|---|---|
| DEBRA KRAMER, Solely as Chapter 7 Trustee for the Estate of MARGARITA ONASSIS PARLIONAS *a/k/a* MARGARITA MARY VEKRAKOS, | Adv. Pro. No.: 25-_____-jmm |
| Plaintiff, | |
| -against- | |
| MARGARITA ONASSIS PARLIONAS *a/k/a* MARGARITA MARY VEKRAKOS, | |
| Defendant. | |

-----------------------------------------------------------X

# **COMPLAINT**

Debra Kramer, Solely as Chapter 7 Trustee (the "Plaintiff") for the Estate of Margarita Onassis Parlionas *a/k/a* Margarita Mary Vekrakos, by and through her counsel, Rosen, Tsionis & Pizzo, PLLC, respectfully submits this as and for her complaint (the "Complaint") against Margarita Onassis Parlionas *a/k/a* Margarita Mary Vekrakos (the "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action by the Chapter 7 Trustee seeking to deny the Defendant-debtor's discharge under multiple Sections of 727 of Title 11 of the United States Code (the "Bankruptcy Code"). The Defendant asserted in her bankruptcy schedules, plan, and sworn testimony that she had "lost" her diamond engagement ring, which was insured for over $140,000. However, mere hours after learning that her husband, Athanasios Parlionas ("Athanasios"), with whom the Defendant is embroiled in a bitter divorce, was asserting entitlement to one-half of the Ring's insurance proceeds, the Defendant suddenly contacted the Plaintiff's counsel, claiming she had "found" the Ring—after months of maintaining under oath that it was lost. And when pressed to turn over this purportedly "found" Ring, the Defendant produced a counterfeit substitute ring. In fact, when the insurance company examined the purported "found" ring turned over by the Defendant, the insurance company determined that it was not even the ring insured by the policy—it was a completely different ring.

2. As such, the Defendant's conduct presents only two possible scenarios. Either: (a) the Ring was not actually lost and the Defendant knowingly concealed its whereabouts to hinder recovery by the estate and prevent her husband, Athanasios, from claiming any insurance proceeds (the "Concealment Theory"); or (b) the Ring was genuinely lost as claimed, but the Defendant falsely represented that she had "found" the Ring to prevent Athanasios (whom she is embroiled in a bitter divorce with) from obtaining any insurance proceeds (the "False Finding Theory").

3. Under either theory, the Defendant's conduct warrants a denial of her discharge, as the Defendant's underlying bankruptcy estate was denied both the turnover of the actual Ring and the Ring's insurance proceeds, which totaled over $140,000.

## JURISDICTION AND VENUE

4. This adversary proceeding relates to the above-captioned bankruptcy proceeding pending in the United States Bankruptcy Court for the Eastern District of New York and is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A), (B), (E), (F), (H), and (O) and 1334, and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5. The United States Bankruptcy Court for the Eastern District of New York has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334.

6. This Court is the proper venue for this adversary proceeding in accordance with 28 U.S.C. § 1409(a).

7. The statutory predicate for the relief sought herein includes Sections 727(a)(2)(A)-(B), 727(a)(4)(A)-(B), and 727(a)(5) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 4002, 4004, 4005, 6009 and 7001 of the Bankruptcy Rules.

8. Pursuant to Rule 7008 of the Bankruptcy Rules, the Plaintiff consents to the entry of final orders and judgments by the Court presiding over this adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## THE PARTIES

9. The Plaintiff is the Chapter 7 Trustee herein. The Plaintiff has a mailing address of 10 Gingerbread Lane, East Hampton, New York 11937. The Plaintiff is authorized to file this action under Section 323 of the Bankruptcy Code and Bankruptcy Rule 6009.

10. The Defendant is an individual and is the debtor in the underlying bankruptcy case. Upon information and belief, the Defendant has a mailing address of 11 The Hemlocks, Roslyn, New York 11576.[1]

## ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

**A.  The Defendant's Bankruptcy Filing and the Appointment of the Plaintiff**

11. On June 7, 2023 (the "Petition Date"), the Defendant filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

12. The Court entered an Order [Bankr. ECF No. 95] in the underlying bankruptcy case, dated March 18, 2024, converting the Defendant's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

13. Debra Kramer was appointed as the interim Chapter 7 Trustee of the Defendant's bankruptcy estate and, by operation of law, became the permanent Chapter 7 Trustee of the Defendant's bankruptcy estate.

14. Although the Defendant was represented by counsel as of the Petition Date, she is now appearing *pro se* in the underlying bankruptcy case.

15. On June 27, 2025, the Court entered an Order [Bankr. ECF No. 219] in the underlying bankruptcy case extending the Plaintiff and the United States Trustee's time to object to the Defendant's discharge pursuant to Section 727 of the Bankruptcy Code to and including September 23, 2025.

---

[1] On or about February 28, 2025, the Plaintiff closed on the sale of the Defendant's interest in the real property located 157-22 Powells Cove Boulevard, Whitestone, New York 11357, which the Defendant disclosed as being her primary residence. On April 2, 2025, the Plaintiff, through counsel, contacted the Defendant by email requesting that the Defendant file a Notice of Change of Address. The Plaintiff received no response to that email. The Defendant, however, requested that her Homestead Exemption check be mailed to 11 The Hemlocks, Roslyn, New York 11576. That address is the address of the Defendant's Daughter, Evangelia Andreone, who is a defendant in a fraudulent conveyance action commenced by the Plaintiff in another action (Adv. Pro. No. 25-01022-jmm). As such, the "11 The Hemlocks" address is the last known address of the Defendant.

**B.     The Defendant's Fraudulent Representations and Concealment Regarding the Ring**

16.     According to the Defendant's amended Schedule "A/B" [Bankr. ECF No. 19], which the Defendant signed under penalty of perjury, the Defendant disclosed the Ring.

17.     Specifically, the Defendant's Amended Schedule "A/B" describes the Ring as "an engagement ring **which is now lost** was worth 60k, covered by insurance. [Defendant] shall be filing insurance claim." *See* **Exhibit "A"**, Amended Schedule "A/B", Q. 12 (emphasis added).

18.     The Defendant also disclosed the Ring in her combined disclosure statement and Chapter 11 plan of liquidation [Bankr. ECF No. 85] (the "Plan").

19.     The Defendant described the Ring in her Plan as having a "3.01 carat diamond, VVS1 clarity" with a current value of $140,000, and that the "[Ring] **is lost**, and insurance claim has been filed." *See* Bankr. ECF No. 85, Section 2.8 D (emphasis added).

20.     The Defendant's representations in her amended schedules were made under penalty of perjury, and her amended schedules constitute oaths within the meaning of Section 727(a)(4) of the Bankruptcy Code.

21.     These statements were materially false because, as detailed below, **either** the Ring was not actually lost, and the Defendant knowingly concealed its whereabouts to hinder recovery by the estate, **or** the Defendant falsely claimed that she "found" the Ring and turned over a substitute counterfeit ring to prevent Athanasios (her husband with whom the Defendant is embroiled in bitter divorce proceedings) from obtaining any insurance proceeds.

22.     The Ring was insured under Chubb Policy No. 14379049-05 (the "Insurance Policy"), which described it as a "LADYS DIAMOND PLATINUM ENGAGEMENT RING W 3.1TCW ; 2.5 CARAT CHANEL SET BAGUETTE CUT DIAMONDS CTR DIA IS D COLOR,

VVS-1 CLARITY" valued at $144,569 (the "Ring"). *See* **Exhibit "B"**, Itemized Articles Schedule.

23. On or about September 7, 2023 (the Petition Date herein), the Defendant reported the Ring as lost to Chubb, filed an insurance claim, and was assigned Claim No. 040523038083.

24. The Defendant's insurance claim was presented in connection with the Defendant's underlying bankruptcy case, as the proceeds were intended to become estate property.

25. During Chubb's investigation, the Defendant submitted to an Examination Under Oath ("EUO") on October 16, 2024, wherein she testified under oath, among other things, that the Ring was hers alone, that Athanasios had no ownership interest in it, and that it was genuinely lost.

26. Specifically, the Defendant testified:

> Q. You understand that this Examination Under Oath pertains to your claim for the loss of a diamond engagement ring, correct?
>
> A. Correct.
>
> Q. Have you found the ring?
>
> A. No.
>
> Q. Has anybody found the ring, to your knowledge?
>
> A. No.

A copy of the relevant portion of the EUO transcript referenced in this paragraph is annexed hereto as **Exhibit "C"**.

27. The Defendant further testified at the EUO as follows:

> Q. Did the subject of the ownership of the ring in question ever come up at any proceeding in connection with the marital dispute, your divorce case?
>
> A. I don't think so. **I know that the ring is mine in the divorce. It has nothing to do with Mr. Parlionas.**

> Q. How do you know that?
>
> A. Because my attorney had told me, Michael Black, that all jewelry belongs to whose ever they are. He has jewelry. I had jewelry. **That belongs to me.**
>
> Q. Did you and your husband or your respective attorneys ever enter into any agreement, formal agreement, a written agreement, specifying that all the jewelry is yours?
>
> A. I don't remember. You can have access to the court records. I don't remember. I know it's the law. That's what my attorney told me. **The law says in the divorce that I own the ring and he has his jewelry.** If that be the case, I should get his jewelry. Do you know what I mean?

A copy of the relevant portion of the EUO transcript referenced in this paragraph is annexed hereto as **Exhibit "D"**.

28. The Defendant's October 16, 2024 EUO testimony was either knowingly false (if the Ring was not actually lost and she had concealed it) or became the basis for subsequent false representations (when she later claimed to have "found" the Ring). In either case, these statements demonstrate the Defendant's fraudulent intent to deny Athanasios (and the bankruptcy estate) any entitlement to the Ring or its insurance proceeds amid their contested divorce proceedings.

29. The Defendant and Athanasios are embroiled in a long and protracted divorce proceeding that is pending in the Supreme Court of the State of New York, County of Queens, Index No. 721778/2020. Additionally, Athanasios has filed proofs of claim in the Defendant's underlying bankruptcy estate.[2]

30. The Defendant's denials of Athanasios's ownership interest demonstrate her intent to prevent him from receiving any portion of the insurance proceeds, even if it also harms the bankruptcy estate.

---

[2] The Plaintiff reserves all rights against Athanasios.

31.     On March 12, 2025, Chubb emailed the Defendant, the Plaintiff, and Athanasios (through counsel), attaching a letter filed with the Court [Bankr. ECF No. 210] noting that it would pay insurance proceeds of $144,569 but also noting competing claims to the insurance proceeds: the Plaintiff claimed them as estate property, while Athanasios claimed entitlement based on his alleged interest in the Ring. A copy of Chubb's March 12th letter is annexed hereto as **Exhibit "E"**. A copy of Chubb's email referenced in this paragraph is annexed hereto as **Exhibit "F"**.

32.     The timing of the Defendant's subsequent actions demonstrates the fraudulent nature of her entire scheme and establishes her fraudulent intent under either possible scenario. Mere hours after receiving Chubb's March 12, 2025 email highlighting Athanasios's competing claim and Chubb's intention to pay the insurance proceeds, the Defendant contacted the Plaintiff's counsel by telephone and claimed she had suddenly "found" the Ring.

33.     This immediate "discovery" of the Ring occurred precisely when the Defendant learned that Athanasios was claiming entitlement to the insurance proceeds, demonstrating either: (a) that the Ring was never actually lost and the Defendant had concealed it with intent to hinder creditors and deny Athanasios any recovery; or (b) that the Defendant's claim to have "found" the Ring was false and was made with intent to prevent Athanasios (and the bankruptcy estate) from receiving any insurance proceeds. Under either scenario, the Defendant's actions damaged the bankruptcy estate and interfered with the Plaintiff's administration by either concealing valuable estate property or by intentionally turning over a fake ring, which led to the denial of the Ring's insurance proceeds.

34.     Immediately following the telephone conversation between the Defendant and the Plaintiff's counsel, the Plaintiff's counsel wrote to the Defendant by email confirming their conversation wherein the Defendant notified the Plaintiff's counsel that she "found" the Ring. A

copy of the Plaintiff's counsel's email referenced in this paragraph is annexed hereto as **Exhibit "G"**.

35. The Plaintiff's counsel's March 12, 2025 email also directed the Defendant to immediately send the Plaintiff a picture of the "ring" and to turn the "ring" over to the Plaintiff. A copy of a picture of the purported Ring sent by the Defendant is annexed hereto as **Exhibit "H"**.

36. Following the purported Ring's turnover to the Plaintiff, MYC & Associates, Inc. ("MYC"), the Plaintiff's custodian, examined the ring and determined that the center stone of the purported Ring was not a real diamond but rather a cubic zirconia. *See* **Exhibit "I"**.

37. MYC brought the purported Ring to Atlantis Jewelry LLC, which also examined the purported Ring and confirmed that the center stone of the purported Ring was a cubic zirconia. *See* **Exhibit "J"**.

38 On April 2, 2025, the Plaintiff's counsel emailed the Defendant notifying her that the center stone of the purported Ring was not genuine and requested an explanation or information about the original stone. A copy of the Plaintiff's counsel's email referenced in this paragraph is annexed hereto as **Exhibit "K"**.

39. The Defendant failed to respond to the Plaintiff's counsel's April 2, 2025 email, providing no explanation for the discrepancy.

40. Chubb subsequently examined the purported Ring and, on August 20, 2025, issued a letter (the "Chubb Withdrawal Letter") denying the claim entirely, confirming that the purported Ring **was not the insured item** and that no physical loss had occurred, as the Defendant had "found" and turned over a ring (albeit a completely different one). A copy of the Chubb Withdrawal Letter is annexed hereto as **Exhibit "L"**.

41. Specifically, the Chubb Withdrawal Letter states:

We also deny the claim because the ring Ms. Parlionas claimed she lost, and which ring we understand was recently in the possession of your designee MYC & Associates, **is not the ring** scheduled in Chubb policy number 14379049-05. Therefore, policy number 14379049-05 affords no valuable articles coverage for the ring in your designee's possession and, as we have said, that ring has not sustained physical loss. This letter elaborates on the preceding grounds for denying the claim and reserves our right to assert additional grounds for denying the claim.

On September 7, 2023 Ms. Parlionas gave us notice, under Chubb policy number 14379049-05, of the loss of a scheduled ring. The only article scheduled in this policy was described in the policy as follows:

> LADYS DIAMOND PLATINUM ENGAGEMENT RING W 3.1 TCW ; 2.5 CARAT CHANEL SET BAGUETTE CUT DIAMONDS CTR DIA IS D COLOR, VVS-1 CLARITY $ 144,569

*See* Exhibit "L", Chubb Withdrawal Letter (emphasis added).

42. The Chubb Withdrawal Letter goes on to state:

Jillian Beck of Gurr Johns, at Chubb's request, examined the ring at the offices of MYC & Associates. Ms. Beck's enclosed July 18, 2025 report describes the ring in detail and includes the following observations: (1) its setting was "14 karat white gold"; (2) its center stone was a "round brilliant-cut diamond simulant" measuring approximately 9.49 – 9.55 mm; (3) the center stone was "flanked by two round brilliant-cut diamonds" measuring approximately 5.04 – 5.07 and 4.99 – 5.00 mm; (4) thirty-four "round full-cut pink gemstones" measuring approximately 1.52 mm were set in the ring's "halo frames"; and (5) fifty-four "round full-cut diamonds" measuring approximately 1.0 – 1.7 mm were set in the ring's "shoulders, side panels and gallery."

**It is evident that the ring in your designee's possession is not the scheduled ring:** (1) the ring in your designee's possession has a gold setting whereas the ring scheduled in Chubb policy number 14379049-05 had a platinum setting; (2) the ring in your designee's possession has a diamond simulant center stone as Ms. Beck described it, or a cubic zirconium center stone according to the jeweler consulted by MYC & Associates, whereas the scheduled ring had a diamond center stone; (3) the ring in your designee's possession has two round brilliant-cut diamonds alongside the center stone, whereas the scheduled ring had two baguette-cut diamonds; (4) the ring in your designee's possession has thirty-four round full-cut pink gemstones measuring approximately 1.52 mm set in the ring's halo frames, whereas the scheduled ring had no pink gemstones; and (5) the ring in your designee's possession has fifty-four round full-cut diamonds measuring approximately 1.0 - 1.7 mm set in the ring's shoulders, side panels and gallery, whereas, the scheduled ring had no diamonds other than a center diamond and two baguette-cut diamonds.

> Therefore, because it has been **conclusively determined** that the reportedly lost ring **is not** insured by Chubb policy number 14379049-05 and because it has also been conclusively determined that there was and is no physical loss of or concerning the reportedly lost ring, we hereby deny the entirety of all claims asserted by Ms. Parlionas, by Mr. Parlionas and by you, as Trustee.[3]

*See* Exhibit "L", Chubb Withdrawal Letter (emphasis added).

43. In other words, according to the Chubb Withdrawal Letter, the purported Ring was not the ring that was scheduled in the Insurance Policy—it was a completely different ring with different metal composition, different stone cuts, different stone types, and additional gemstones not present in the insured Ring.

44. On September 2, 2025, the Plaintiff's counsel again emailed the Defendant, demanding turnover of the actual Ring by September 5, 2025, and noting the discrepancies identified in the Chubb Withdrawal Letter. A copy of the Plaintiff's counsel's September 2, 2025 email referenced in this paragraph is annexed as **Exhibit "M"**.

45. The Defendant again failed to respond or provide any explanation.

46. The Defendant's fraudulent conduct is established under either of two alternative theories, both of which warrant denial of her discharge.

47. First, if the Ring was never actually lost, then the Defendant's representations in her schedules, plan, EUO testimony, and insurance claim were knowingly false from the outset as the Defendant concealed the Ring (the Concealment Theory herein).

48. Second, and alternatively, if the Ring was genuinely lost as originally claimed, then the Defendant's subsequent representation that she had "found" the Ring was knowingly false (the False Finding Theory herein). Her production of a counterfeit substitute ring was done with the intent to defraud Athanasios and prevent him from receiving insurance proceeds amid their bitter

---

[3] The Plaintiff does not concede Chubb's argument and fully reserves her rights in that regard.

11

divorce, while falsely representing to the Plaintiff (the Chapter 7 Trustee) that the Ring had been recovered. Under this theory, the Defendant's false claim of "finding" the Ring and the turnover of a counterfeit ring constitute fraudulent conduct occurring after the Petition Date.

49. Under either theory, the Defendant's knowing production of a counterfeit substitute ring while representing it as the genuine insured Ring establishes her fraudulent intent. The fact that the substitute ring that was turned over was so fundamentally different from the insured Ring (different metal, different stones, different design) demonstrates that the Defendant's conduct was deliberate and calculated to deceive both the Plaintiff and Athanasios.

## **CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**(Denial of Discharge Under 11 U.S.C. § 727(a)(2)(A))**

50. The Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 49 above as if fully set forth herein.

51. Section 727(a)(2)(A) of the Bankruptcy Code provides that a debtor shall not be granted a discharge if the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate, has transferred, removed, destroyed, mutilated, or concealed property of the debtor within one year before the petition date.

52. Within one year before the Petition Date, and under the Concealment Theory, the Defendant allegedly concealed the Ring by falsely claiming it was lost and filing a fraudulent insurance claim, with actual intent to hinder, delay, or defraud creditors, including Athanasios, as demonstrated by her subsequent course of conduct including her immediate production of a counterfeit substitute when faced with competing claims and her false testimony denying Athanasios' ownership interest amid the contentious divorce proceedings.

53. By reason of the foregoing, the Defendant should be denied a discharge pursuant to Section 727(a)(2)(A).

**SECOND CLAIM FOR RELIEF**
**(Denial of Discharge Under 11 U.S.C. § 727(a)(2)(B))**

54. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 53 above as if fully set forth herein.

55. Section 727(a)(2)(B) provides that a debtor shall not be granted a discharge if the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate, has transferred, removed, destroyed, mutilated, or concealed property of the estate after the petition date.

56. After the Petition Date, and under the Concealment Theory, the Defendant transferred, removed, or concealed the Ring, which is bankruptcy estate property, by continuing to conceal its whereabouts and turning over a counterfeit substitute Ring—a completely different item—to the Plaintiff, while continuing to conceal or having previously transferred the genuine Ring, with actual intent to hinder, delay, or defraud the Plaintiff and creditors, as evidenced by the immediate "finding" of a substitute after Chubb's email about Athanasios's entitlement to the Ring's insurance proceeds.

57. Alternatively, under the False Finding Theory, the Defendant's post-petition conduct of falsely claiming to have "found" the Ring and turning over a counterfeit substitute ring constitutes a fraudulent transfer or concealment of estate property with intent to hinder, delay, or defraud creditors and the estate.

58. The Defendant's post-petition conduct demonstrates ongoing concealment and transfer of estate property, as she produced a worthless substitute while continuing to conceal the location and disposition of the valuable estate asset worth over $140,000.

59. By reason of the foregoing, the Defendant should be denied a discharge pursuant to Section 727(a)(2)(B).

**THIRD CLAIM FOR RELIEF**
**(Denial of Discharge Under 11 U.S.C. § 727(a)(4)(A))**

60. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 59 above as if fully set forth herein.

61. Section 727(a)(4)(A) provides that a debtor shall not be granted a discharge if the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account.

62. The Defendant knowingly and fraudulently made material false oaths in her amended schedules, Plan, and EUO under either theory of her fraudulent conduct.

63. Under the Concealment Theory, the Defendant knowingly and fraudulently made material false oaths in her amended schedules, and EUO by claiming the Ring was lost and providing false testimony regarding its whereabouts, when she knew the Ring was not lost and she had concealed it and subsequently turned over a counterfeit substitute, thereby materially affecting the bankruptcy estate's assets and creditor recoveries.

64. Under the False Finding Theory, even if the Ring was lost as claimed, the Defendant's subsequent representations that she had "found" the Ring were knowingly false, as demonstrated by her production of a counterfeit substitute ring and her failure to provide any explanation for the substitution despite repeated demands.

65. In either case, her false oaths materially affected the Plaintiff's administration of the underlying bankruptcy estate.

66. The materiality of the Defendant's false oaths is demonstrated by the significant value of the Ring (insured for over $140,000), its status as estate property, and the impact of her

false representations on both the insurance claim proceeding and the Plaintiff's efforts to recover the Ring or the Ring's insurance proceeds.

67. By reason of the foregoing, the Defendant should be denied a discharge pursuant to Section 727(a)(4)(A).

**FOURTH CLAIM FOR RELIEF**
**(Denial of Discharge Under 11 U.S.C. § 727(a)(4)(B))**

68. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 67 above as if fully set forth herein.

69. Section 727(a)(4)(B) provides that a debtor shall not be granted a discharge if the debtor knowingly and fraudulently, in or in connection with the case, presented or used a false claim.

70. The Defendant knowingly and fraudulently presented and used false claims in connection with her bankruptcy case under either theory of her fraudulent conduct.

71. Under the Concealment Theory, the Defendant knowingly and fraudulently presented and used a false insurance claim with Chubb, asserting a non-existent loss of the Ring, in connection with her bankruptcy case to generate estate proceeds while concealing the asset and subsequently presenting a counterfeit substitute ring to support the false claim.

72. Alternatively, under the False Finding Theory, the Defendant presented a false claim by representing that she had "found" the Ring and turning over a counterfeit substitute to support this false representation.

73. The Defendant's conduct of presenting the counterfeit substitute ring to the Plaintiff while claiming it was the genuine insured Ring constitutes the presentation and use of a false claim, regardless of which theory applies.

74. The Defendant's continued failure to produce the actual Ring or explain its whereabouts constitutes an ongoing presentation and use of false claims in connection with the underlying bankruptcy case.

75. The false nature of the Defendant's insurance claim is established by Chubb's analysis in the Chubb Withdrawal Letter, confirming that the ring produced by the Defendant was not the insured Ring and by the Defendant's inability to explain the substitution or produce the actual Ring.

76. In either case, the Defendant either presented a false claim by misrepresenting that she "lost" the Ring while continuing to conceal it, or presented a false claim by asserting that she "found" the Ring and turning over a counterfeit substitute that was not even the ring insured by Chubb.

77. Under either scenario, the Defendant interfered with the Plaintiff's administration of the bankruptcy estate as the Defendant did not turn over the actual Ring and the estate was denied the insurance proceeds.

78. By reason of the foregoing, the Defendant should be denied a discharge pursuant to Section 727(a)(4)(B).

**FIFTH CLAIM FOR RELIEF**
**(Denial of Discharge Under 11 U.S.C. § 727(a)(5)**

79. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 78 above as if fully set forth herein.

80. Section 727(a)(5) provides that a debtor shall not be granted a discharge if the debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities.

81. The Defendant has failed to provide any explanation for the loss or whereabouts of the actual Ring and has failed to explain her production of a counterfeit substitute ring in place of the actual Ring—both involving an asset valued at over $140,000—despite demands from the Plaintiff, resulting in an unexplained loss of a significant estate asset.

82. The Defendant's failure to explain satisfactorily is evidenced by her complete non-response to the Plaintiff's demands for explanation following the discovery that she had produced a counterfeit substitute ring and her continued refusal to disclose the location or disposition of the actual Ring.

83. The significance of the unexplained loss is demonstrated by the Ring's value of over $140,000, representing a substantial portion of the bankruptcy estate's assets, and the Defendant's ongoing concealment prevents the bankruptcy estate from recovering this valuable property for the benefit of creditors.

84. By reason of the foregoing, the Defendant should be denied a discharge pursuant to Section 727(a)(5).

## **RESERVATION OF RIGHTS**

85. During the course of this adversary proceeding, the Plaintiff may learn (through discovery or otherwise) of additional causes of action. Accordingly, the Plaintiff reserves her right to amend this Complaint to include, among other things: (i) further information regarding the allegations herein; (ii) revisions to the Defendant's name; (iii) additional defendants; and (iv) additional causes of action (the "Amendments"), that may become known to the Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to the Complaint.

**WHEREFORE**, the Plaintiff respectfully demands: (i) judgment against the Defendant consistent with the allegations set forth in the Complaint; together with (ii) such other, further and different relief that this Court deems just, proper and equitable.

Dated: September 19, 2025
     Huntington, New York

Respectfully submitted,

**Rosen, Tsionis & Pizzo, PLLC**
*Counsel to Debra Kramer,*
*Plaintiff-Trustee*

By:   */s/ Alex E. Tsionis*
     Alex E. Tsionis, Esq.
     Avrum J. Rosen, Esq.
     38 New Street
     Huntington, New York 11743
     (631) 423-8527
     atsionis@ajrlawny.com
     arosen@ajrlawny.com