UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:

MARGARITA PARLIONAS
Aka MARGARITA MARY VEKRAKOS,

Debtor.

-----------------------------------------------------------X

Chapter 7
Case No: 23-42029-jmm

**AFFIDAVIT OF DOREEN MOHAMMED**

STATE OF NEW YORK )
) ss.:
COUNTY OF QUEENS )

DOREEN MOHAMMED, being duly sworn, deposes and says:

1. I am over eighteen (18) years of age and reside in Queens County, New York. Except where stated to be upon information and belief, the statements set forth below are made upon my own personal knowledge.

2. I am not a party to the above-captioned bankruptcy case, nor to the matrimonial action described below. I have no financial interest in the outcome of either proceeding. I am an acquaintance of Margarita Parlionas and have been attending her trial hearings to offer moral support as she is proceeding pro se without an attorney. I have been assisting with note-taking to help her better prepare for upcoming trial hearings.

3. On four separate occasions in August 2026, I attended, in person and as a member of the public seated in the gallery, portions of the trial in the matrimonial action captioned *Parlionas v. Parlionas*, Index No. 721778/2020, pending in the Supreme Court of the State of New York, County of Queens, before the Honorable William A. Viscovich,

J.S.C. The dates I attended were Tuesday, August 11, 2026; Wednesday, August 12, 2026; Monday, August 17, 2026; and Tuesday, August 18, 2026. Each session began at approximately 2:00 p.m.

4. During each of those sessions I took contemporaneous notes by hand and/or on a laptop computer as the proceedings occurred in front of me. My notes were made at or near the time of the events they describe, and I recorded the time of day for many of the entries. My notes are a true and accurate record of what I personally saw and heard in the courtroom.

5. I set forth below the statements made by the Court concerning contempt, incarceration, or the threat of incarceration. I express no opinion as to the merits of any issue before the Supreme Court. Times given are approximate and are taken from my notes. Language appearing within quotation marks reflects words I heard spoken and recorded in my notes as spoken; language not in quotation marks is my summary of what was said.

**<u>Tuesday, August 11, 2026</u>**

6. At approximately 3:40 p.m., following a recess taken so that another matter could be briefly heard, the Court stated that Ms. Parlionas would be given one additional day to complete her direct examination on account of the delay caused by that interruption. The Court then stated to Ms. Parlionas that she could be locked up in relation to a civil contempt order.

**<u>Wednesday, August 12, 2026</u>**

7. At approximately 2:53 p.m., the Court asked a court officer, who was wearing a white shirt, to approach the bench for a sidebar.

8. At approximately 2:54 p.m., the Court addressed me directly from the bench and asked what I was doing on my laptop. I informed the Court that I was only taking notes. The Court informed me that if I were recording on my laptop, I could be held in contempt of court for seven (7) days. I made clear to the Court that I was not recording anything and was only taking notes. The Court responded that this was fine and that I could take all the notes I wanted.

9. At approximately 3:10 p.m., the Court read the law governing *pro se* litigants aloud, on the record. The Court warned Ms. Parlionas that she could be locked up. The Court further warned her regarding the preservation of assets, stating that this issue as well could result in her incarceration.

10. At approximately 3:12 p.m., the subject of contempt arose. It was stated that Ms. Parlionas had been assigned an attorney in connection with the contempt matter. The Court stated that it did not wish to discuss the matter further at that time.

**<u>Monday, August 17, 2026</u>**

11. At approximately 3:05 p.m., in the course of an exchange concerning exhibits, Ms. Parlionas stated that she had spoken with defense counsel about a check in the amount of $5,000 relating to the contempt charge. Defense counsel stated that she had no recollection of this at that time but would look into it.

12. At approximately 4:25 p.m., in response to a question posed by Ms. Parlionas, the Court stated that **"she is getting closer to getting locked up."**

13. At approximately 4:26 p.m., the Court stated that **"this trial will continue into Queens Criminal Court"** if it continued on its then-current path. The Court referred to Ms. Parlionas being **"held in contempt of $180,000,"** stated that he did not want her to be held, and stated to her, "please please please meet with your lawyer to find $180,000," referencing the homestead money that she was paid in relation to the sale of her house in Queens.

**<u>Tuesday, August 18, 2026</u>**

17. At approximately 4:11 p.m., the Court stated that it would have to review its notes, but **that Ms. Parlionas's contempt matter may be active and that she may be locked up on Monday, August 24, 2026.** Defense counsel then asked that August 27 be kept off the calendar.

18. At approximately 4:13 p.m., the Court addressed Ms. Parlionas at length concerning contempt and incarceration. The Court used the phrase **"if you are incarcerated on Monday."** The Court stated that Ms. Parlionas had already been found in contempt, and that she has a lawyer for that matter. The Court stated that the contempt finding arose out of her transfer of shares in Yoyo Lip Gloss from her own name into her daughter's name, and that the Court had given her thirty (30) days either to restore the shares or to place money in escrow. The Court stated that she has a substantial asset. The Court stated, **"there is a chance that you will be locked up,"** and stated that the issue was whether she could have purged her contempt. **The Court advised her not to bring anything of value with her.** The Court stated, I cannot emphasize further risk to yourself, and directed her to speak with her lawyer. The Court then indicated that it would go off the record because Ms. Parlionas might otherwise incriminate herself.

**Closing**

19. The notes I took on each of the above dates remain in my possession. I am prepared to produce them and to testify to the matters set forth in this affidavit if called upon to do so.

20. I make this affidavit freely and voluntarily. No person has offered me anything of value in exchange for making it, and no person has told me what to say in it.

21. WHEREFORE, I respectfully submit this affidavit for the Court's consideration in connection with the above-captioned matter.

Doreen M. 08-20-26

DOREEN MOHAMMED

Sworn to before me this
20 day of August, 2026.

Notary Public

Sanaa Bergha
Notary Public, State of New York
Reg. No. 01BE0029319
Qualified in Queens County
Commission Expires 09/30/2028

08/20/2026

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---

In re:

MARGARITA PARLIONAS,
Debtor.

Chapter 7
Case No. 23-42029-jmm
Hon. Jil Mazer-Marino

---

**AFFIDAVIT OF EVANGELIA ANDREONE**

STATE OF NEW YORK )
) ss.:
COUNTY OF NASSAU )

EVANGELIA ANDREONE, being duly sworn, deposes and says:

## I. HOW I KNOW THIS

1. I am Margarita Parlionas's daughter. I am also a defendant in Adversary Proceeding No. 1-25-01022 in this Court, which I want to state up front. Everything here is from my own knowledge.

2. I am submitting this in support of my mother's application to enforce the automatic stay. It is about what the contempt proceedings and the seven days in jail have done to her. I am not addressing the merits of anything in this case or in the divorce.

3. My mother has lived with me at 11 The Hemlocks, Roslyn, New York 11576 since around the time her house was sold. I cannot give an exact date. I see her every day, and I am who she comes home to after court.

4. My mother was born on [redacted] 1959. I am not a doctor and I am not giving a medical opinion. I also cannot say what she feels inside. I can only say what I see and hear in my house, and that is all this affidavit covers.

## II. THE FEBRUARY 2023 INJURY

5. On February 28, 2023 my mother fell at her house and hit her head. The divorce court had directed her to be there that day to let the court's appraiser in. I found out about the fall because she could not be reached that afternoon and her lawyer at the time, Alyssa Eisner, called me looking for her.

6. She was diagnosed with a concussion after that. Since then she tires faster than she used to, and she has a harder time keeping the paperwork in this case straight. I am not offering an opinion on the medical cause or how serious it is.

## III. THE TWO CONTEMPT MATTERS

7. For years before 2026, my mother was threatened with arrest over a contempt about the transfer of her interest in Yoyo Lip Gloss, Inc. That dispute has been litigated in this Court, and enforcement of that contempt was stayed in the divorce case.

8. What happened on May 27, 2026 was not that contempt. It was a different one. An Order of Commitment was entered that day, my mother was sentenced to seven days, and she was taken into custody and held at Rikers Island. See NYSCEF Doc. No. 899.

9. I was not in the courtroom that day. I found out she had been taken into custody the same day it happened, though I no longer remember who told me or at what hour. That whole stretch of time is a blur to me, and I would rather not guess at it.

10. What I do know is that it was summary contempt, and that it happened in the courtroom with no lawyer beside her. She had no attorney with her that day. She was representing herself at that trial, on her own, with nobody there to help her keep track of what was being said. Since I was not present, I cannot speak to what the court based its ruling on.

11. My mother was 66 years old. She had gone into that courthouse over a divorce. I was afraid for her safety every day she was in there and there was nothing I could do. Those were the worst seven days of my life.

12. I talked to her on the phone several times a day while she was in there. I could hear how scared she was. She was trying hard to sound calm for me and she could not manage it.

## IV. WHAT I HAVE SEEN SINCE SHE CAME HOME

13. My mother has not been the same since that date.

14. She does not sleep. I hear her wake up at night. She comes out of nightmares badly shaken and cannot settle down again. This happens in my house and I hear it.

15. She gets sick to her stomach and throws up. This started after Rikers Island; it never happened before then.

16. She tells me she has a headache every other day. On those days she is not able to do very much.

17. She has pulled into herself in a way I have never seen from her before. She cries. Neither of us has been able to bring her out of it.

18. On her worst days she cannot get started. She sits down with her papers and just stays there.

19. She talks about going back to jail almost constantly. It is what she brings up more than anything else. She tells me she has no voice in that courtroom, and that she is treated like a criminal.

20. On court days she comes home and cannot do anything else. She tells me jailing her keeps coming up, including at appearances that have nothing to do with any contempt.

21. Because it has already happened to her once, she no longer believes it is unlikely. I wish I could tell her she is worrying over nothing, but I cannot, because last time she was right.

22. She is disorganized in a way she never was. There are papers all over the house and she cannot find which is which. She writes notes so she will remember things and then loses the notes. She redoes work she already finished.

## V. WHAT CHANGED, AND WHEN

23. I want to be fair to this Court about what came from where.

24. This divorce has been going on for eleven years, and it had worn her down long before 2026. Her trouble concentrating goes back to the February 2023 injury. I would not attribute either of those to anything that happened this year.

25. What is different since May 27, 2026 is not more of the same. The vomiting started after Rikers. The waking up at night started after Rikers. She went and found a therapist right after Rikers. Before that she was worn down but she still worked on her case. She does not now.

26. Her fear is also about one particular thing. It is not worry over how the divorce will come out. It is the contempt, and the possibility of going back to jail over it.

## VI. MY CONCERN

27. I am very worried about my mother. I live with her and I see her every day, and what these past months have done to her frightens me. She is seeing Amanda Drapkin, LMSW, and I encourage her to keep going.

28. I want to be clear about one thing. My mother is intelligent and capable. She runs her own household and handles her own affairs. I am not suggesting to this Court that she is incompetent, and I am not asking that anyone be appointed to act for her.

29. What I am saying is that she is frightened to the point where she cannot make use of what she has. My hope is that this would ease if the threat of jail were lifted from her.

30. I ask that this be read together with my mother's affidavit and Ms. Drapkin's.

31. The statements in this affidavit are true to my own knowledge.

EVANGELIA ANDREONE

Sworn to before me this
19th day of August, 2026.

Notary Public

Carol Wang
Notary Public - State of New York
No. 01WA6087955
Qualified in Queens County
My Commission Expires March 3, 2027

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

| | |
|---|---|
| In re: | Chapter 7 |
| MARGARITA ONASSIS PARLIONAS<br>a/k/a MARGARITA MARY VEKRAKOS, | Case No. 23-42029-jmm<br>Hon. Jil Mazer-Marino |
| Debtor. | |

---------------------------------------X

**AFFIDAVIT OF MARGARITA ONASSIS PARLIONAS**

STATE OF NEW YORK )
) ss.:
COUNTY OF NASSAU )

MARGARITA ONASSIS PARLIONAS, being duly sworn, deposes and says:

## PRELIMINARY STATEMENT

1. I am the Debtor in this case. I filed my voluntary petition on June 7, 2023. The case remains open. No discharge has been entered, and the case has not been dismissed or closed.

2. I am also the plaintiff in *Parlionas v. Parlionas*, Index No. 721778/2020, pending in the Supreme Court of the State of New York, County of Queens, Part 63, before the Honorable William A. Viscovich, J.S.C. (the "matrimonial action"). I represent myself in that action. My husband, Athanasios Parlionas, is represented by Maria Coffinas, Esq., of Coffinas & Lusthaus, P.C.

3. I submit this affidavit on three subjects: first, what has been done in the matrimonial action to collect a prepetition contempt fine while the automatic stay has been in effect; second, the conditions under which I have been required to litigate, including being sentenced to jail without a lawyer; and third, the effect that seven days at Rikers Island, and the continuing prospect of returning there, have had on me.

4. Wherever I describe what was said in court, I quote from the certified transcripts rather than rely on my recollection. Citations are given as "Tr. [date] at [page]:[line]." The certified transcripts of May 18, 19, 20, 21 and 27, 2026 are annexed as Exhibits 8 through 12. Where I describe something I heard in court and do not quote a transcript, I say so.

5. Two separate contempt proceedings appear below. They are different matters and I ask that they not be treated as one:

(a) *The YoYo Lip Gloss money contempt.* Adjudicated June 16, 2022 (Mot. Seq. 16) and entered June 21, 2022. A fine of $252,500.00 and $5,000.00 in counsel fees, measured by my former interest in YoYo Lip Gloss, Inc. This obligation arose before my petition. Terrence Worms, Esq. was appointed to represent me on this contempt. (Ex. 1; Ex. 9, Tr. May 19, 2026 at 18:14–19:4, 21:8–14.)

(b) *The recording contempt.* A summary civil contempt found on May 21, 2026 for recording a proceeding on my telephone. I was sentenced on May 27, 2026 and served seven days at Rikers Island. Mr. Worms was expressly not appointed on it. That conduct occurred after my petition. (Ex. 11, Tr. May 21, 2026 at 136:12–14, 137:1–3; Ex. 14.)

## I. THE AUTOMATIC STAY, AND WHAT WAS SAID ABOUT IT IN THE MATRIMONIAL ACTION

### *A. This Court declared the stay in effect as to enforcement.*

6. By Order Remanding Case dated December 4, 2023 and entered December 5, 2023 in Adversary Proceeding No. 23-01067-jmm (ECF No. 19), this Court remanded the matrimonial action and ordered (Ex. 4):

> "ORDERED, that the automatic stay is hereby declared and confirmed as being in effect as to the enforcement of claims adjudicated in the Divorce Action against assets of the Bankruptcy Estate."

7. I understand that order to permit the state court to proceed with the divorce itself, including equitable distribution and domestic support obligations. I do not contend otherwise. What this affidavit addresses is enforcement of the June 2022 money contempt.

8. No order granting relief from the automatic stay has ever been entered in favor of my husband.

9. The case was converted from Chapter 11 to Chapter 7 on March 18, 2024. (Ex. 7.) I have not received a discharge. The case has not been dismissed and it has not been closed.

***B. The state court had already ruled that enforcement of this fine was stayed.***

10. By Decision and Order dated January 3, 2024 and entered January 4, 2024 (Mot. Seq. 23, NYSCEF Doc. No. 837) (Ex. 5), the state court denied an immediate warrant for my arrest and commitment, a money judgment of $252,500.00 under Domestic Relations Law § 244, and a money judgment of $5,000.00 in counsel fees, as stayed by my bankruptcy filing.

11. The following day, on Mot. Seq. 33 (NYSCEF Doc. No. 838) (Ex. 6), the state court held that enforcement of a $15,600.00 counsel fee award "is stayed pursuant to plaintiff's bankruptcy filing."

***C. May 18, 2026.***

12. On May 18, 2026 the state court raised the June 2022 contempt. It asked whether the contempt had been purged. Ms. Coffinas answered that it had not, stated the amount as $252,500.00, and stated that no part of it had been restored. (Ex. 8, Tr. May 18, 2026 at 3:8–23.)

13. The state court asked whether an Affirmation of Non-Compliance had been filed. Ms. Coffinas answered that she could not recall. (*Id.* at 3:24–4:2.) Later the same day, when the court returned to the question, she answered, "I think so." (*Id.* at 8:9–11.)

14. The state court then said: "there's probably very little value in filing, entering a judgment against you for $252,000 because you have declared bankruptcy. You may wind up getting that judgment discharged. As such, my only alternative maybe to have you incarcerated." (*Id.* at 4:19–24.)

15. The state court asked whether the bankruptcy court, or any other court of higher jurisdiction, had in any way stayed the contempt order or that court's ability to act on it. Ms. Coffinas answered: "I'm not aware of that, Your Honor." (*Id.* at 5:13–17.)

16. The following exchange then took place on the record:

> MS. COFFINAS: That is correct. There was an initial stay issued when Mrs. Parlionas first filed the bankruptcy. To my knowledge, there is no order currently in effect which prevents the Court from following through with the contempt finding.
>
> THE COURT: Has the stay been lifted?
>
> MS. COFFINAS: As far as I know, yes.
>
> THE COURT: You will confirm that?
>
> MS. COFFINAS: I will confirm that.

(*Id.* at 5:22–6:6.)

17. The automatic stay had not been lifted. It was in effect on May 18, 2026, it has been in effect at all times since June 7, 2023, and it is in effect today.

18. The state court then said: "I'm being told that there's no longer a stay in effect but we're going to confirm that because if there is, I would not dare lock you up." (*Id.* at 7:18–21.)

19. The state court directed Ms. Coffinas to confirm by the following day whether a stay was in effect on its contempt order, and whether she had filed an Affirmation of Non-Compliance. (*Id.* at 8:5–12.)

20. I have read the certified transcripts of the proceedings on May 19, May 20 and May 21, 2026. I find in them no statement by Ms. Coffinas addressing the status of the automatic stay, and no confirmation of the kind the state court directed on May 18, 2026. (Exs. 9, 10, 11.)

21. On May 19, 2026 at 10:04 a.m. — the morning after that direction — Ms. Coffinas filed a letter in the matrimonial action transmitting an order of this Court dated May 1, 2026, entered in Adversary Proceeding No. 24-01059-jmm. That filing appears at NYSCEF Doc. No. 892 and I was copied on it. (Ex. 13.) That adversary proceeding concerns my interest in YoYo Lip Gloss, Inc. — the same interest on which the June 2022 fine was calculated.

22. Ms. Coffinas has appeared in the matrimonial action throughout. She stated on the record that she has been present "at every single court appearance since the commencement of this case." (Ex. 8, Tr. May 18, 2026 at 11:6–8.)

23. The state court also stated more than once that the reason I had not already been incarcerated was that my husband did not wish it. (*Id.* at 5:18–20, 6:10–12, 7:13–16.)

***D. May 21, 2026 — the request to adjudicate the contempt as criminal.***

24. On May 21, 2026 the state court told Ms. Coffinas: "You are not part of the summary contempt proceeding here. So, quite frankly, you don't have an official position in what I'm doing here." (Ex. 11, Tr. May 21, 2026 at 138:10–13.)

25. Ms. Coffinas then stated: "I'm going to ask that you consider adjudicating Mrs. Parlionas in criminal contempt. And that is because she has met the standard for a finding of

criminal contempt." (*Id.* at 138:17–22.) She addressed the subject again at 139:8–15 and again at 140:10–19.

26. The state court responded: "you really don't have a position here … You are not the prosecutor. There's no prosecutor in this case." (*Id.* at 139:16–24.) It also stated, "I'm basically the prosecutor and the sentencer." (*Id.* at 140:6–8.)

27. The state court returned to that request six days later. On May 27, 2026 it said: "His lawyer asked I hold you in criminal contempt; I did not do so. You are in civil contempt." (Ex. 12, Tr. May 27, 2026 at 5:8–9.) Later in the same proceeding it repeated: "I am not holding you in criminal contempt, I am holding you in civil contempt." (*Id.* at 9:20–21.)

***E. The homestead proceeds.***

28. I claimed a homestead exemption on Schedule C at ECF No. 11, filed June 16, 2023. (Ex. 3.) No objection to that exemption was ever sustained. On February 28, 2025 the Chapter 7 Trustee sold 157-22 Powells Cove Boulevard, and the homestead exemption was paid out to me.

29. I received $179,975.00. I placed those funds in the attorney escrow account of the Law Offices of Steven Zakharyayev. Between May 2, 2025 and August 13, 2026, $179,669.74 was disbursed, leaving a balance of $305.26. The disbursements went to legal fees, professional fees, medical bills and settlements, transcripts, and living expenses. The escrow attorney has produced a ledger and reconciliation of those funds, which I will supply on request.

30. At the appearance on August 10, 2026 the state court directed that I apply approximately $180,000 to the contempt fine. I do not have those funds. I was present at that appearance. I state this from what I heard, not from a transcript.

### *F. My application to purge has never been decided.*

31. The June 2022 Final Order permitted me to purge the contempt by demonstrating, through competent admissible evidence, that I am unable to pay. (Ex. 1.) I filed under that route on August 5, 2022 (NYSCEF Docs. 477–486) and supplemented it on August 12, 2022 (NYSCEF Docs. 509–516).

32. On August 8, 2022, chambers advised counsel that "Justice Viscovich will address all issues at the time of trial." (Ex. 2.) On January 3, 2024 the state court recited that I had "filed numerous exhibits demonstrating her alleged inability to purge her contempt," and did not decide the application.

33. Four years later, no determination of my ability to pay has ever been made.

34. My monthly operating reports in the Chapter 11 case, for the nine months from June 2023 through February 2024, were filed under penalty of perjury. Each reports gross income of $0.00 and total assets of $0.00. Month-end cash across those nine months was $600, $221, $554, $57, $216, $135, $105, $371 and $197.

35. I have not been able to pay the $252,500.00 fine at any time since it was imposed.

## II. THE CONDITIONS UNDER WHICH I HAVE BEEN REQUIRED TO LITIGATE

### *A. I was sentenced to jail with no lawyer.*

36. On May 21, 2026 the state court found me in summary civil contempt for recording a proceeding on my telephone, and took the telephone as the Court's exhibit. (Ex. 11, Tr. May 21, 2026 at 136:12–14, 138:2–7.)

37. Mr. Worms had been appointed to represent me on the YoYo money contempt only. On May 21, 2026 the state court confirmed that he was "not signed on this particular contempt." (*Id.* at 137:1–3; Ex. 9, Tr. May 19, 2026 at 18:14–19:4, 19:5–7, 21:8–14.) On May 27, 2026 the

state court said again that it had assigned counsel "on those two contempts." (Ex. 12, Tr. May 27, 2026 at 6:4–6, 10:1–2.)

38. On May 27, 2026 I appeared for sentencing on the recording contempt. The transcript records that no other parties were present. (Ex. 12, Tr. May 27, 2026 at 2:7.) I had no attorney.

39. I told the state court that I did not have counsel, that I could not afford counsel, and that I intended to apply that day to be assigned counsel. (*Id.* at 4:4–8.) I asked, "Will I be able to get counsel, Your Honor?" The state court answered: "Ma'am, your opportunity — and I don't believe you are destitute, ma'am." (*Id.* at 5:17–20.)

40. The state court found that I had violated Civil Rights Law § 52, sentenced me to seven days, and remanded me into custody. An Order of Commitment was filed that day at NYSCEF Doc. No. 899. (*Id.* at 12:1–16; Ex. 14.)

41. I served all seven days.

***B. The court withdrew its assurance about timing.***

42. On May 21, 2026 the state court stated: "I would not consider incarceration until the next date in September. That portion of anything I said is now off the record. I'm going to strongly consider incarcerating you on Wednesday morning." (Ex. 11, Tr. May 21, 2026 at 137:4–10.)

43. On May 20, 2026 the state court referred to my having "a meal on Rikers" and told me to bring my toothbrush to the next date. (Ex. 10, Tr. May 20, 2026 at 116:14–17.)

44. On May 18, 2026, when I said that I had no money because of the bankruptcy, the state court said that I would then remain in jail until I paid. (Ex. 8, Tr. May 18, 2026 at 9:13–16.) It said that "they have law libraries in prison." (*Id.* at 8:24–25.) It said that it would reduce the

purge amount to $125,000 — "So I hope you have 125." (*Id.* at 10:16–18.) It described bringing me back to court every six months. (*Id.* at 7:4–9.)

45. On May 27, 2026 the state court said: "it has become clear to this Court that the money part of it doesn't seem to affect you … so I think the only thing I can do to prove a point is to incarcerate you." (Ex. 12, Tr. May 27, 2026 at 6:7–12.) It said later in the same proceeding, after describing what became of the proceeds of the sale of my home, "it's obvious that the money concerns do not affect you." (*Id.* at 11:22–23.)

***C. Why I need matters placed on the record.***

46. On February 28, 2023 I fell and struck my head after going to my former home to provide access for an appraiser. Since that injury I have had difficulty with short-term memory and with concentration. I also have macular degeneration, so reading and locating documents takes me longer than it would take another person. I told the state court so on May 27, 2026. (Ex. 12, Tr. May 27, 2026 at 4:11–14.)

47. I want to be precise about what I am and am not saying. I am not saying that I am incompetent. I know what has happened in my life and I understand the financial transactions I have spent years reviewing. What I am saying is narrower: I do not reliably retain what is said aloud in a courtroom, and I therefore need it written down.

48. The state court has said the same of me. On May 27, 2026 it stated: "I have had the chance to observe you acting pro se in this matter. You have been prepared, you are asking questions, you are conducting yourself somewhat competently in your trial." (Ex. 12, Tr. May 27, 2026 at 6:14–18.)

49. That is why substantive discussion held off the record is a genuine problem for me. If something is not transcribed, I have no way to go back and check what was said. I have asked

repeatedly that matters be placed on the record. (Ex. 8, Tr. May 18, 2026 at 13:6–7; Ex. 11, Tr. May 21, 2026 at 136:1–4.)

50. I write things down, I order transcripts, and I ask for time to locate documents. Those are the accommodations I need in order to participate. When I told the state court that I am limited, it stated that I am "not mentally limited in any way," and an accommodation I sought was denied. (Ex. 11, Tr. May 21, 2026 at 133:17–134:1.)

51. My difficulty in locating a document quickly in a courtroom does not mean the document does not exist, or that I do not understand my own case. I have the financial records, checks and bank records that bear on the financial issues in the divorce.

## III. RIKERS ISLAND, AND WHAT HAS FOLLOWED

52. On May 27, 2026 I was taken from the courtroom and incarcerated at Rikers Island for seven days.

53. I spent more than eighteen hours a day locked inside my cell. There were four beds in the cell and no one else was housed there with me. There was no television, nothing to read, nothing to do, and no one to speak with. I walked in circles around the cell, over and over, because I needed something to do.

54. Occasionally I was permitted to go out to the yard. At times I could use the telephone, when the phones were available and the facility was not shut down. Those brief chances to speak to someone mattered a great deal, because otherwise I was alone hour after hour.

55. I could see some of the other women on the other side. They were able to move around and would sometimes wave to me or say hello. They were not permitted to stand there and have a conversation with me.

56. During the first days, because the staff apparently were not accustomed to having anyone housed where I was, there were occasions when I was overlooked. At times I was not given water. I was overlooked at commissary.

57. The isolation was the hardest part of it. The food was difficult, but it was nothing next to being locked alone in that cell for more than eighteen hours a day.

58. While I was at Rikers Island I began speaking with a therapist at the facility. After my release I continued on my own. I now see Amanda Drapkin, LMSW, every week.

59. When I first came home I could hardly sleep, and when I did fall asleep I would hear the cell door closing again. My sleep has not returned to normal. There are nights when I hardly sleep at all.

60. I have already been incarcerated once. So when I hear that I can be incarcerated again. I cannot tell myself that it will not happen. It has happened.

61. I have understood statements made in court to mean that I could be jailed for an indefinite or very long period if I cannot purge the contempt. At the appearance on August 10, 2026 the state court stated, in substance, that a future incarceration would be for three to four months, and that it would return me to jail repeatedly until the money is produced. I state this from what I heard at that appearance.

62. When I hear that, what comes back to me is the cell: the four empty beds, the silence, walking around in circles, and not knowing when I would be let out.

63. I now feel real anxiety when I enter that courtroom. I sometimes walk in wondering whether I will walk back out. I am expected at the same time to try a complicated financial case by myself.

64. I am not asking to be excused from anything, and I am not asking for sympathy. I am asking that the continuing possibility of incarceration be addressed, because it is the thing that has changed everything for me.

## CLOSING

65. Since June 7, 2023, every statement made in the matrimonial action in support of collecting the June 2022 fine has been made by my husband through Ms. Coffinas.

66. I submitted sworn proof of my inability to pay that fine in August 2022. To my knowledge that submission has never been decided, and no court has ever found that I am able to pay.

67. I make this affidavit so that my counsel, and any court reviewing these circumstances, have an accurate account in my own words of what has happened and where matters now stand.

MARGARITA ONASSIS PARLIONAS

Sworn to before me this
21 day of August, 2026.

Notary Public

Carol Wang
Notary Public - State of New York
No. 01WA6087955
Qualified in Queens County
My Commission Expires March 3, 2027

# TABLE OF EXHIBITS


| EX. | DOCUMENT | PAGE |
|---|---|---|
| **1** | Final Order (Decision and Order, Mot. Seq. No. 16), Hon. William A. Viscovich, J.S.C., dated June 16, 2022 and entered June 21, 2022, with Notice of Entry — NYSCEF Doc. No. 461 | 14 |
| **2** | E-mail from Chambers of Hon. William A. Viscovich, J.S.C., dated August 8, 2022 — NYSCEF Doc. No. 570 | 27 |
| **3** | Schedules and Statements filed June 16, 2023, including Schedule C (Official Form 106C) — Bankr. E.D.N.Y. Case No. 23-42029-jmm, ECF No. 11 | 30 |
| **4** | Order Remanding Case, dated December 4, 2023 and entered December 5, 2023 — Adv. Pro. No. 23-01067-jmm, ECF No. 19 | 75 |
| **5** | Decision and Order (Mot. Seq. No. 23), dated January 3, 2024 and entered January 4, 2024 — NYSCEF Doc. No. 837 | 78 |
| **6** | Decision and Order (Mot. Seq. No. 33), dated January 3, 2024 and entered January 4, 2024 — NYSCEF Doc. No. 838 | 82 |
| **7** | Order Converting Case to Chapter 7, entered March 18, 2024 — Bankr. E.D.N.Y. Case No. 23-42029-jmm, ECF No. 95 | 86 |
| **8** | Certified Transcript of Proceedings, May 18, 2026 — Supreme Court, Queens County, Part 63, Index No. 721778/2020 | 89 |
| **9** | Certified Transcript of Proceedings, May 19, 2026 — Supreme Court, Queens County, Part 63, Index No. 721778/2020 | 106 |
| **10** | Certified Transcript of Proceedings, May 20, 2026 — Supreme Court, Queens County, Part 63, Index No. 721778/2020 | 161 |
| **11** | Certified Transcript of Proceedings, May 21, 2026 — Supreme Court, Queens County, Part 63, Index No. 721778/2020 | 224 |
| **12** | Certified Transcript of Proceedings, May 27, 2026 — Supreme Court, Queens County, Part 63, Index No. 721778/2020 | 250 |
| **13** | Letter of Maria Coffinas, Esq. to Hon. William A. Viscovich, J.S.C., filed May 19, 2026, transmitting Order of the Bankruptcy Court dated May 1, 2026 (Adv. Pro. No. 24-01059-jmm) — NYSCEF Doc. No. 892 | 263 |
| **14** | Order of Commitment, filed May 27, 2026 — NYSCEF Doc. No. 899 | 266 |

# EXHIBIT 1

Final Order (Decision and Order, Motion Sequence No. 16),
Hon. William A. Viscovich, J.S.C., dated June 16, 2022 and
entered June 21, 2022, with Notice of Entry
NYSCEF Doc. No. 461

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF QUEENS

---------------------------------------------------------X Index No. 721778/2020

MARGARITA PARLIONAS,

**NOTICE OF ENTRY**

Plaintiff, **OF ORDER (MOT. SEQ. #16)**

-against-

ATHANASIOS PARLIONAS,

Defendant.

---------------------------------------------------------X

**PLEASE TAKE NOTICE** that the within is a true copy of the Order entered in the office of the clerk of the within named Court on June 21, 2022.

DATED: Brooklyn, New York
July 8, 2022

[redacted]

Coffinas & Lusthaus, P.C.
*Attorneys for Defendant*
186 Joralemon Street, Suite. 910
Brooklyn, New York 11201

TO: John Sipsas, Esq.
Sipsas P.C.
*Attorneys for Plaintiff*
31-16 30th Avenue, Suite 201
Astoria, New York 11102

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

Present: **HON. WILLIAM A. VISCOVICH** PART 63
Justice

Index No.: 721778/2020

**MARGARITA PARLIONAS,**

**FINAL ORDER**

**Plaintiff,**

Motion Seq.: #16

**- against -**

**FILED & RECORDED**

**ATHANASIOS PARLIONAS,**

**6/21/2022, 10:08:41 AM**

**Defendant.**

**COUNTY CLERK
QUEENS COUNTY**

Recitation, as required by CPLR §2219(a), of the papers considered in the review of defendant's motion for an order adjudicating plaintiff in civil and criminal contempt of court and for other related relief, is as follows:

| PAPERS | NUMBERED |
| --- | --- |
| Order to Show Cause, Affidavits and Exhibits Annexed (Seq. 16)............. | E238 - 250, 320 |
| Affidavits in Opposition & Exhibits................................................... | E355 - 359 |
| Reply Affirmation ........................................................................ | E381 - 382 |

Upon the foregoing papers and all the prior proceedings in this action, defendant's motion, brought by Order to Show Cause dated October 7, 2021, is decided as follows:

This action for a judgment of divorce and other ancillary relief was commenced on October 15, 2015. Plaintiff Margarita Parlionas and Defendant Athanasios Parlionas were married on April 21, 1984.

Defendant Athanasios Parlionas moves for an order granting the following relief:

(a) Adjudging Plaintiff Margarita Parlionas, to be in civil and criminal contempt of court pursuant to Jud. Law §§750 – 754, 756 and 773 et seq., for her willful violation of the automatic orders, imposing a sentence of imprisonment for the maximum term allowed by law and/or imposing a fine in the amount of $252,500.00 as the appropriate remedies; and
(b) Granting and issuing a Final Order of Commitment with Leave to Purge upon this Court's finding that Plaintiff is in civil and/or criminal contempt of court; and
( c) Granting Defendant his attorney fees and costs in an amount not less than $5,000.00 for the prosecution of this contempt motion; and

(d) Granting Defendant such other and further relief as the Court deems just and proper together with costs.

Plaintiff opposes the motion.

## CURRENT MOTION

It is undisputed that during the marriage, in 2008, plaintiff Margarita Parlionas acquired an ownership interest in YOYO Lip Gloss, Inc., a business which manufactures cosmetic products for the teen and tween markets, such as lip gloss, lip balm and nail kits. The business continues to operate as of the date of the application. Defendant Athanasios Parlionas alleges that subsequent to the commencement of this divorce action, plaintiff transferred that interest to her daughter Evangelia Parlionas without defendant's knowledge.

Defendant contends that plaintiff Margarita Parlionas is in civil and criminal contempt of court for transferring her interest in YOYO Lip Gloss, Inc., a valuable asset of the marriage, to her daughter, after the commencement of this divorce action, without defendant's knowledge or consent and in clear violation of the automatic orders. In this regard, defendant claims that plaintiff's actions were calculated to and have significantly prejudiced defendant's interest in this marital asset. In support of his motion, defendant annexes the following documents alleged to evince plaintiff's ownership interest in YOYO Lip Gloss:

(1) By-Laws Agreement of YOYO Lip Gloss Inc., signed by plaintiff;
(2) 2012 YOYO Lip Gloss Inc. income tax return with a Kl issued to plaintiff as a 49.97377% shareholder;
(3) 2013 YOYO Lip Gloss Inc. income tax return with a Kl issued to plaintiff as a 50% shareholder;
(4) 2014 YOYO Lip Gloss Inc. income tax return with a Kl issued to plaintiff as a 50% shareholder, (5) 2015 YOYO Lip Gloss Inc. income tax return with K1 issued to plaintiff as a 42.876712% shareholder;
(6) Women's Business Enterprise National Council (WBENC) 2015 Certification for YOYO Lip Gloss Inc., sworn to on April 13, 2015 by plaintiff's daughter Evangelia Parlionas listing plaintiff as a 49% shareholder and daily manager with equal management responsibilities, and as having contributed one million dollars cash to the business;
(7) The appraisal report dated September 28, 2021, prepared pursuant to this Court's order, by Mark Gottlieb, C.P.A., a neutral forensic accountant, which values the marital portion of YOYO Lip Gloss, Inc. at $505,000.00.
(8) The affidavit of Evangelia Parlionas dated August 6, 2021, submitted on a different motion in this action, alleging that she is the sole owner of YOYO Lip Gloss, Inc. that she is currently the sole shareholder of YOYO Lip Gloss, Inc. and that plaintiff has not been involved as a shareholder "for some time now".

According to defendant, he has met his burden of establishing all of the conditions to hold

plaintiff in civil contempt of court, warranting an immediate adjudication of civil contempt against plaintiff for her violation of the automatic orders, without a hearing. In addition, defendant contends that he has incurred actual damages from plaintiff's contempt in the amount of $252,500.00 representing 50% of the value of Plaintiff's interest in YOYO Lip Gloss, Inc. Defendant maintains that this amount will compensate defendant for the loss caused by plaintiff's violation of the automatic orders. Defendant avers that plaintiff's conduct rises to the level of criminal contempt as, according to defendant, plaintiff's actions were wilful. Defendant requests that, in addition to the fine of actual damages, plaintiff be ordered to pay counsel fees, costs and disbursements incurred for this order to show cause in the amount of not less than $5,000.00.

In opposition, plaintiff contends that she was never served personally with the motion papers and her attorney contends that the attorney was never served by email. Neither plaintiff nor her attorney alleges that they did not receive timely notice of the motion or that they did not receive a complete copy of the motion and supporting papers through the NYSCEF electronic filing system.

Plaintiff Margarita Parlionas argues that a partnership agreement dated September 19, 2015, a date prior to the commencement of this action less than one month later, outlines the ownership interest of plaintiff in YOYO Lip Gloss as 25% with the remaining 75% owned by her daughter Evangelia Parlionas. The agreement indicates that any necessary monetary contribution to fuel the growth of the company is the sole responsibility of plaintiff and that Evangelia Parlionas would manage the day to day operations of the business. In the agreement, plaintiff is named as an Owner/Investor.

Plaintiff Margarita Parlionas further emphasizes that the agreement provides that "any partner that no longer wishes to fulfill their role will be terminated as per this agreement." Plaintiff concedes that on October 1, 2018, she surrendered her stock in YOYO Lip Gloss, Inc. Plaintiff claims that she did so as she was no longer willing to make monetary contributions to the company. She claims the company continued to incur debt in high interest loans and that those loans were needed to sustain the company. The financial situation with YOYO Lip Gloss, Inc., according to plaintiff, became more problematic in 2018 when the debt had accumulated to about $121,000.00 in interest payments each month.

According to plaintiff, the surrender of stock in YOYO Lip Gloss, Inc. was done in the normal course of business, as a business decision that was necessary to ensure that plaintiff did not dissipate any asset and to ensure she did not incur an unreasonable amount of debt. Plaintiff claims that the selling of shares was not done to hide money from defendant, but to avoid the dissipation of an asset. Plaintiff argues that the motion for contempt should be denied in its entirety. Plaintiff maintains that defendant impeded her ability to fund YOYO Lip Gloss, Inc. by shutting down Modern Contracting, Inc. and forming new companies.

In his reply, defendant points to plaintiff's deposition testimony from September 5, 2019 wherein she states that she still had an ownership interest in YOYO Lip Gloss, Inc. as of that date, in contrast to the position she has taken on this motion. Further, defendant avers that plaintiff's claim

that in 2015, plaintiff's ownership interest was reduced from 50% to 25% is belied by the K1 annexed to the motion which reflects plaintiff's ownership shares to be 42.87% in 2015. Defendant points to the case *Davis v Davis*, (175 AD2d 45 [1st Dept 1991]), a case also relied on by plaintiff for a different purpose, to emphasize that dissipation of a marital asset can take the form of a transfer of funds to third parties without fair consideration. Defendant claims that plaintiff violated the automatic orders and dissipated a marital interest in YOYO Lip Gloss, Inc. by surrendering her ownership shares to her daughter without consideration.

**CIVIL AND CRIMINAL CONTEMPT OF COURT**

"Article 19 of the Judiciary Law authorizes a court to punish a person for 'criminal' or 'or civil' contempt, and permits adjudication and sentence by way of summary proceeding" *(People v Sweat,* 24 NY3d 348, 353 [2014]). Based on the evidence before it, the court "determines which provisions of the Judiciary Law apply and which to invoke based on the contemnor's conduct and the requirements of the statute" *(Id).*

Civil Contempt seeks "the vindication of a private right of a party to litigation and any penalty imposed upon the contemnor is designed to compensate the injured private party for the loss of or interference with that right" (*Matter of McCormick v Axelrod*, 59 NY2d 574, 583 [1983]; *quoting McCain v Dinkins*, 84 NY2d 216, 226 [1994]). By contrast, criminal contempt involves vindication of an offense against public justice and is utilized to protect the dignity of the judicial system and to compel respect for its mandates and, as a result, the penalty imposed is punitive in nature (*McCormick v Axelrod,* 59 NY2d at 583 *citing King v Barnes*, 113 NY 476 [1889]). While "the same act may be punishable as both a civil and a criminal contempt, the element which escalates a contempt to criminal status is the level of willfulness associated with the conduct" (*Matter of McCormick v Axelrod,* 59 NY2d at 583).

Under Judiciary Law §753, "[a] court of record has power to punish, by fine and imprisonment, or either, a neglect of violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced" (*see also, El-Dehdan v El-Dehdan,* 26 NY3d 19, 28-29 [2015]). It is well settled that a motion to punish a party for civil contempt is addressed to the sound discretion of the motion court" (*Toranzo v Toranzo,* 185 AD3d 621 [2d Dept 2021]; *Cover v Cover,* 173 AD3d 970 [2d Dept 2019]). Contempt is a drastic remedy which should not be granted absent a clear right to the relief (*Pinto v Pinto*, 120 AD2d 337, 338 [1st Dept 1986]).

In *Matter of McCormick v Axelrod* (59 NY2d 574 [1983]), the Court described the four elements necessary to support a finding of civil contempt: (1) It must be determined that a lawful order of the Court, clearly expressing an un equivocal mandate, was in effect; (2) It must appear, with reasonable certainty, that the Order has been disobeyed; (3) The party to be held in contempt must have had knowledge of the Court's order; (4) Prejudice to the right of the party to the litigation must be demonstrated *(id* at 583; *see also, El-Dehdan v. El-Dehdan,* 26 NY3d 19, 28-29 [2015]; *see also, Battinelli v Battinelli,* 192 AD3d 957 [2d Dept 2021]). Pursuant to Judiciary Law article 19, for both civil and criminal contempt, movant has the burden of proving the contempt with

"reasonable certainty," which requires "a quantum of proof . . . greater than a preponderance of evidence but less than proof beyond a reasonable doubt . . . akin to the clear and convincing evidence standard" (*Kihl v Pfeffer*, 47 AD3d 154, 163-164 [2d Dept 2007]; *see also, El-Dehdan v. El-Dehdan*, 26 NY3d at 29; *Matter of McCormick v Axelrod*, 59 NY2d at 583; *McCain v Dinkins*, 84 NY2d 216, 226 [1994]; *McKnight v New York City Tr Auth*, 150 AD3d 840 [2d Dept 2017]).

Once the moving party makes this showing, the burden shifts to the alleged contemnor to refute the movant's showing, or to offer evidence of a defense, such as an inability to comply with the order or judgment (*El-Dehdan v El-Dehdan*, 26 NY3d at 29). A hearing is required only if the papers in opposition raise a factual dispute as to the elements of civil contempt, or the existence of a defense (*Id; Shemtov v Shemtov*, 153 AD3d 1295, 1296 [2d Dept 2017]; *Matter of Fitzgerald*, 144 AD3d 906, 907 [2d Dept 2016]). It follows then that a hearing is not required when the alleged contemnor concedes the conduct (*see Rocco v Rocco*, 90 AD3d 886 [2d Dept 2011]; *see also, Behan v Kornstein*, 164 AD3d 1113, 1116 [1st Dept 2018]).

If the movant has met their burden with reasonable certainty such that there is a finding of civil contempt, and if the court determines that the contemnor has caused an actual loss to the movant, then a fine "sufficient to indemnify the aggrieved party" must be imposed, along with costs and disbursements (Judiciary Law § 773). The purpose of the imposition of civil contempt penalties is their remedial nature and effect (*State of New York v Unique Ideas*, 44 NY2d 345 [1978]). "Costs and expenses" in the statute means the costs and expenses of the motion to punish for contempt, and not the entire costs of the proceeding out of which the alleged contempt arose (*Federal Deposit Ins Corp*, 98 AD2d 790, 792 [2d Dept 1983]). The movant must request or establish the amount of damages *(Id)*. Judiciary Law § 773 permits recovery of attorney's fees and other professional fees from the offending party by a party aggrieved by the contemptuous conduct so long as they are attributable to proving contempt or the damages flowing therefrom and are a direct product of the contempt proceeding (*Schwartz v Schwartz*, 79 AD3d 1006, 1010 [2d Dept 2010] *quoting Children's Vil. v Greenburgh Eleven Teachers' Union Fedn. of Teachers, Local 1532, AFT, AFL-CIO*, 249 AD2d 435 [2d Dept 1998]; *see also, Vider v Vider*, 85 AD3d 902 [2d Dept 2011]).

Judiciary Law § 773 permits recovery of attorney's fees and other professional fees from the offending party by a party aggrieved by the contemptuous conduct so long as they are attributable to proving contempt or the damages flowing therefrom and are a direct product of the contempt proceeding (*Schwartz v Schwartz*, 79 AD3d 1006, 1010 [2d Dept 2010] *quoting Children's Vil. v Greenburgh Eleven Teachers' Union Fedn of Teachers, Local 1532, AFT, AFL-CIO*, 249 AD2d 435 [2d Dept 1998]; *see also, Vider v Vider*, 85 AD3d 902 [2d Dept 2011]; *Matter of Diorio v City of Peekskill Common Council*, 13 AD3d 523, 525 [2d Dept 2004]; *Holskin v 22 Prince Street Assocs.*, 178 AD2d 347 [1st Dept 1991]; *Glanzman v Fischman*, 143 AD2d 880 [2d Dept 1988], *app dismissed*, 74 NY2d 792 [1989]; *317 West 87th Associates v Dannenberg*, 170 AD2d 250). The court is required to consider the nature and extent of the services, the actual time spent, the nature of the issues involved and the prevailing hourly rate for similar legal work in the community (*Matter of First Natl. Bank of E. Islip v Brower*, 42 NY2d 471, 474 [1977]; *Gamache v Steinhaus*, 7 AD3d 525, 527 [2d Dept 2004]; *see also, Matter of Rahmey v Blum*, 95 AD2d 294 [2d Dept 1983]).

In addition, pursuant to DRL § 237 and DRL § 238 a party who is forced to file a contempt application in order to enforce an Order of the Court is generally entitled to reimbursement of legal fees relating to that application (*Quinn v Quinn*, 73 AD3d 887 [2d Dept 2010]; *Hayes v Barroga-Hayes*, 117 AD3d 794 [2d Dept 2014]).

Where a person has been found guilty of a civil contempt, the contemnor may be jailed until there is compliance with the lawful mandate, which may be months or years (*see,* Judiciary Law § 774 and 775; *People ex rel Feldman v. Warden*, 46 AD2d 256 [1st Dept 1974], *aff'd* 36 NY2d 846 [1975]). Judiciary Law § 774[1] provides "Where the misconduct proved consists of an omission to perform an act or duty, which is yet in the power of the offender to perform, he shall be imprisoned only until he has performed it, and paid the fine imposed" (*see also, People ex rel Kuby v Warden, Brooklyn House of Detention,* 305 AD2d 339, 340 [2d Dept 2003]; *Wides v Wides*, 96 AD2d 592, 593-94 [2d Dept 1983]; *NA Dev Co v Jones,* 99 AD2d 238 [2d Dept 1984]). It has long been said that as a jailed contemnor is able to purge the contempt and obtain his or her release by committing an affirmative act, that person "carries the keys of his prison in his own pocket" (*Int'l Union v Bagwell*, 512 US 821, 828 [1994] *quoting In re Nevitt*, 117 F 448, 451 [8th Cir 1902]). "The law is not so tender of those who defy its power and trample upon its command" (*People ex rel Stearns v. Marr*, 181 NY 463, 469 [1905]).

Domestic Relations Law § 236(B)(2)(b) and 22 NYCRR § 202.16 require the issuance of certain automatic orders, precluding both parties to a matrimonial action from transferring or in any way disposing of marital assets without the written consent of the other party or order of the court, except under certain circumstances. The automatic orders are binding upon a plaintiff upon commencement of the matrimonial action and upon a defendant upon service of the summons or summons and complaint (*see* Domestic Relations Law § 236[B][2][b]).

The automatic orders issued in a matrimonial action pursuant to Domestic Relations Law § 236(B)(2)(b) and the Uniform Rules for Trial Courts (22 NYCRR) § 202.16-a, constitute unequivocal mandates of the court for the purposes of holding a party in civil contempt pursuant to Judiciary Law § 753 if they are violated (*Spencer v Spencer*, 159 AD3d 174, 176 [2d Dept 2018]). Accordingly, a party to a matrimonial action who knowingly fails to comply with the court's automatic order which restricts them from transferring, selling, or converting marital funds, such that the party's actions result in prejudice to the other party, can be punished for civil or criminal contempt of court (*see* Judiciary Law § 753 [A] [3]; *Mage v Mage*, 174 AD3d 884, 888 [2d Dept 2019]; *Spencer v Spencer*, 159 AD3d at 176).

It undisputed that (1) upon the commencement of this action on October 15, 2015, the automatic orders, as required by Domestic Relations Law § 236(B)(2)(b) and 22 NYCRR § 202.16, became binding on plaintiff; (2) YOYO Lip Gloss, Inc. is a marital asset; and (3) after commencement, plaintiff, without the consent or knowledge of defendant, transferred her ownership in YOYO Lip Gloss, Inc. to a third party.

Here, based on plaintiff's admission that in 2018 she unilaterally terminated her ownership

interest in YOYO Lip Gloss, Inc., a marital asset, defendant has established with reasonable certainty that plaintiff has committed a civil contempt of court for a violation of the automatic orders. In this vigorously contested matrimonial action, plaintiff was well aware of the automatic orders as she has accused defendant of violating those orders from the inception of this case. As the automatic orders were in place expressing an unequivocal mandate orders, i.e. precluding both parties to this matrimonial action from transferring or in any way disposing of marital assets without the written consent of the other party or order of the court, and as plaintiff transferred her interest in a company valued, in 2021 at $505,000.00, plaintiff is in civil contempt of court. Thus, defendant has demonstrated an actual loss to the marital estate of $505,000.00 of which half is presumptively defendant's.

All of the elements necessary to hold plaintiff Margarita Parlionas in civil contempt have been met. First, there is a court order in effect, namely the automatic orders, expressing an unequivocal lawful mandate that the parties are not to transfer or dispose of marital assets. Second, defendant has demonstrated with reasonable certainty that the automatic orders have been disobeyed. Third, plaintiff knew of the automatic orders as she had the automatic orders served on defendant, as she has long argued defendant is in violation of such orders, and as she has been present at many virtual conferences when the automatic orders have been discussed. Fourth, the prejudice to defendant is inherent in the fact that a valuable marital asset has been transferred for no consideration without his knowledge or written consent. Further, defendant has incurred more legal fees in having to bring this motion for contempt.

As defendant has met his burden, the burden shifts to plaintiff, the alleged contemnor, to refute the movant's showing, or to offer evidence of a defense, such as an inability to comply with the automatic orders. In opposition to the motion for contempt, plaintiff readily admits her transfer of a marital asset and claims, without legal basis, that by following the terms for termination contained in the September 19, 2015 YOYO Lip Gloss, Inc. Partnership Agreement, she is somehow exempt from the prohibition against the transfer of assets. Plaintiff seems to think she is justified in providing her daughter with her ownership shares because she "no longer wish[ed] to fulfill [her] role as the owner investor."

Plaintiff's claim that the motion should be denied as plaintiff and her attorney were not properly served with the motion pursuant to the October 7, 2021 Order to Show Cause is rejected. Nowhere in plaintiff's papers is there an allegation that neither she nor her attorney were unaware of the motion or that they were prejudiced due to defendant's failure to properly serve them or that the motion was timely rejected once they were aware of the motion and its service provisions. Defendant is cautioned that in future, orders of the Court regarding service are to be followed.

The Court finds that defendant has shown with reasonable certainty that plaintiff is in civil contempt of court. The record supports a finding that plaintiff was actually aware of, and disobeyed, clear and unequivocal court directives, thereby prejudicing defendant's rights, justifying the finding of civil contempt (Judiciary Law § 753[A][3]; *El-Dehdan v El-Dehdan*, 26 NY3d at 29; *McCain v Dinkins*, 84 NY2d at 226; *Matter of McCormick v Axelrod*, 59 NY2d at 583).

Under these facts and circumstances, punishment for civil contempt pursuant to Judiciary Law §§ 770, 773 and 774 is warranted. The Court finds that plaintiff's actions in ignoring the lawful mandates of this Court were calculated to, and actually did, defeat, impair, impede or prejudice defendant's rights or remedies in this civil matrimonial action and it appearing that the misconduct of plaintiff consisted of an omission to perform an act or a duty which it was in her power to perform. It was well within plaintiff's power to notify the Court and defendant of her financial position with regard to her ownership interest in YOYO Lip Glass, Inc. to seek guidance and avoid committing a contempt.

In light of plaintiff's admission that she transferred a marital asset, plaintiff has failed to raise an issue of fact as to her contempt and the motion is granted without a hearing. While defendant makes a strong argument that plaintiff's actions constitute not only a civil contempt but a criminal contempt as well, the Court, in its discretion, adjudicates that plaintiff's actions constitute a civil contempt of court.

Having reviewed defendant's attorney's retainer agreement indicating that defendant's attorney charges an hourly rate of $450.00., after considering the affirmation in support and the extent of the services and the nature of the issues involved, the Court awards counsel fees in the amount of $5,000.00.

It is therefore

**ORDERED and ADJUDGED** that defendant's motion is granted to the extent that, pursuant to Judiciary Law § 772, plaintiff Margarita Parlionas is guilty of Civil Contempt of Court, as plaintiff's actions in disobeying the lawful mandate of the court which prohibited her from transferring or dissipating a marital asset, were calculated to, and actually did, defeat, impair, impede or prejudice defendant's rights or remedies in this civil matrimonial action and it appearing that the misconduct of plaintiff consisted of an omission to perform an act or a duty which it was in her power to perform; and it is

**ORDERED** that pursuant to Judiciary Law § 773, a fine (1) consisting of the actual loss that the contemnor has caused to the movant, which shall include a portion of the value of plaintiff's ownership interest in YOYO Lip Gloss, Inc., here in the amount of $252,500.00, and (2) attorney's fees in the amount of $5,000.00, will be imposed on plaintiff for her misconduct and civil contempt of court which she has been found guilty of, as aforesaid; and it is

**ORDERED** that plaintiff shall have the opportunity to purge herself by, within thirty (30) days of service on plaintiff's attorney via NYSCEF, of a copy of this Final Order with notice of entry, paying counsel fees in the amount of $5,000.00 and placing $252,500.00 in her attorney's escrow account or by posting a bond in said amount or by demonstrating, through competent admissible evidence submitted to the Court and served on defendant, within thirty (30) days of today's date, including but not limited to all financial records from the date of commencement forward, relating to defendant's income, retirement accounts, credit card statements, checking and savings accounts,

crypto-currency accounts, and an updated statement of net worth, that she is unable to pay the attorney's fees, fine and/or post a bond as set forth above (Judiciary Law §§ 772 and 773); and it is

**ORDERED** that upon submission of an Affirmation of Non-Compliance together with a copy of this Order, on notice, the Court will issue a Warrant for plaintiff Margarita Parlionas' immediate arrest and commitment for a period of incarceration and will issue a money judgment inclusive of interest where applicable for all amounts owed and attorney's fees as outlined above, and any other disposition the Court, in its discretion shall make.

This constitutes the Decision, Order and Judgment of the Court.

Dated: June 16, 2022

ENTER:

WILLIAM A. VISCOVICH, J.S.C.

FILED & RECORDED

6/21/2022, 10:08:41 AM

COUNTY CLERK
QUEENS COUNTY

CLERK

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
----------------------------------------------------------------------X Index No.:721778/2020

MARGARITA PARLIONAS,

Plaintiff, **AFFIDAVIT OF SERVICE**

-against-

ATHANASIOS PARLIONAS,

Defendant.
----------------------------------------------------------------------X
STATE OF NEW YORK, COUNTY OF KINGS, ss.

Maria Mitchell, being sworn, says: I am not a party to the above captioned action; I am over 18 years of age; and I reside at 186 Joralemon Street, Brooklyn, New York.

On July 8, 2022

I served the within **ORDER WITH NOTICE OF ENTRY (MOT. #16)** on the Plaintiff's attorney via NYSCEF filing, via email and by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State addressed as follows:

John P. Sipsas, Esq.
Sipsas, P.C.
31-16 30th Avenue, Suite #201
Astoria, New York 11102
E-mail: john@sipsaslaw.com

[redacted]CHELL

Subscribed and sworn to before me on July 8, 2022

[redacted]

MARIA COFFINAS
Notary Public, State of New York
No. 02004847342
Qualified in Kings County
Commission Expires June 30, 2023

Index Number: 721778/2020
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

---

MARGARITA PARLIONAS,
Plaintiff,

-against-

ATHANASIOS PARLIONAS,
Defendant.

---

NOTICE OF ENTRY OF ORDER (MOT. #16)

---

COFFINAS & LUSTHAUS, P.C.
*Attorney for:* Defendant

*Office Address:*
186 Joralemon Street, Ste. 910
BROOKLYN, NEW YORK 11201
TELEPHONE : (718) 488-7900
FACSIMILE : (718) 625-3210

I, MARIA COFFINAS , hereby certify that to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the paper or the contentions therein are not frivolous as defined in the subsection (C) of section 130-1.1

Dated: July 8, 2022

[redacted]
*Attorney for* DEFENDANT

Service of a copy of the within is hereby admitted.

Dated: ………………………
Attorney for:

# EXHIBIT 2

E-mail from Chambers of Hon. William A. Viscovich, J.S.C.,
dated August 8, 2022
NYSCEF Doc. No. 570

**From:** QSCPART63
**To:** Gina Maria Nikolaou; QSCPART63
**Cc:** John Sipsas; mcoffinas@coflus.com
**Subject:** RE: Parlionas v Parlionas 721778/2020
**Date:** Monday, August 8, 2022 4:05:58 PM

---

Good Afternoon:

I write at the direction of Justice Viscovich.

Justice Viscovich states that any documents should be brought to Court and introduced into evidence at the appropriate time. Justice Viscovich will address all issues at the time of trial.
Regards,

Maura Curtin Vance
Principal Law Clerk

---

**From:** Gina Maria Nikolaou <gina@sipsaslaw.com>
**Sent:** Monday, August 8, 2022 2:11 PM
**To:** QSCPART63 <QSCPART63@nycourts.gov>
**Cc:** John Sipsas <john@sipsaslaw.com>; mcoffinas@coflus.com
**Subject:** Parlionas v Parlionas 721778/2020

To the Court:

Plaintiff filed the appropriate filings to purge her contempt on Friday August 5, 2022. The documents were e-filed onto NYSCEF Doc No 477-486.

The total pages of all the documents are approximately 1,700 pages. Would the Court like us to send a hard copy of the 1,700 pages, or would it be acceptable to put the large files on a DVD?

Please advise how to send the courtesy copies.

Thank you,

Gina Maria Nikolaou, Esq.
*Associate Attorney*
**Sipsas P.C.**
31-16 30th Avenue, Suite 201
Astoria, NY 11102
Tel: (718)777-0909
Fax: (718)777-5869
E-Mail: gina@sipsaslaw.com

CONFIDENTIALITY NOTICE
This e-mail message is intended only for the use of the named recipient(s), and, unless otherwise expressly indicated, is confidential and privileged information. Any dissemination, distribution, or copying of any part of this e-mail message, other than as intended, is prohibited. If you are not an intended recipient or person responsible for delivering this e-mail message to an intended recipient, you may not review, use, copy, disseminate, forward, print, or distribute any portion of this e-mail message. If you have received this e-mail in error, please notify us immediately by reply e-mail or by calling 718-777-0909 and purge all copies of this e-mail message from your system. Thank you for your cooperation.

Please be CAREFUL when clicking links or opening attachments from external senders.

# EXHIBIT 3

Schedules and Statements filed June 16, 2023, including
Schedule C — The Property You Claim as Exempt (Official Form 106C)
Bankr. E.D.N.Y. Case No. 23-42029-jmm, ECF No. 11
(Schedule C appears at pp. 14–15 of this exhibit)

**Fill in this information to identify your case:**

Debtor 1 **MARGARITA ONASSIS PARLIONAS**
First Name Middle Name Last Name

Debtor 2
(Spouse if, filing) First Name Middle Name Last Name

United States Bankruptcy Court for the: EASTERN DISTRICT OF NEW YORK

Case number **23-42029**
(if known)

☐ Check if this is an amended filing

# B 104

## For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims Against You and Are Not Insiders

12/15

**If you are an individual filing for bankruptcy under Chapter 11, you must fill out this form. If you are filing under Chapter 7, Chapter 12, or Chapter 13, do not fill out this form. Do not include claims by anyone who is an insider. Insiders include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20 percent or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Also, do not include claims by secured creditors unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.**

Part 1: **List the 20 Unsecured Claims in Order from Largest to Smallest. Do Not Include Claims by Insiders.**

**Unsecured claim**

**1**

**Aleka Katehis**
**199-03 23rd Aveue**
**Whitestone, NY**

Contact

Contact phone

**What is the nature of the claim?** **$5,000.00**

**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed
■ None of the above apply

**Does the creditor have a lien on your property?**
■ No
☐ Yes. Total claim (secured and unsecured)
Value of security: -
Unsecured claim

**2**

**Athanasios Parlionass**
**103 Muttontown Eastwoods**
**Syosset, NY 11791**

Contact

**What is the nature of the claim?** **$252,000.00**

**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**
■ No
☐ Yes. Total claim (secured and unsecured)
Value of security: -

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number *(if known)* **23-42029**

Contact phone — Unsecured claim

---

**3**

**Chase Card Member**
**PO Box 1423**
**Charlotte, NC 28201**

**What is the nature of the claim?** **$25,000.00**

**As of the date you file, the claim is:** Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed
- ☐ None of the above apply

**Does the creditor have a lien on your property?**
- ■ No
- ☐ Yes. Total claim (secured and unsecured)
  - Value of security: -
  - Unsecured claim

Contact

Contact phone

---

**4**

**Christopher Andreone**
**11 The Hemlocks**
**Roslyn, NY 11576**

**What is the nature of the claim?** **$234,000.00**

**As of the date you file, the claim is:** Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed
- ■ None of the above apply

**Does the creditor have a lien on your property?**
- ■ No
- ☐ Yes. Total claim (secured and unsecured)
  - Value of security: -
  - Unsecured claim

Contact

Contact phone

---

**5**

**Con Edison**
**PO Box 1702**
**New York, NY 10116**

**What is the nature of the claim?** **Con Edison, account in name of her husband** **$20,400.00**

**As of the date you file, the claim is:** Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed
- ☐ None of the above apply

**Does the creditor have a lien on your property?**
- ■ No
- ☐ Yes. Total claim (secured and unsecured)
  - Value of security: -
  - Unsecured claim

Contact

Contact phone

---

**6**

**John Sipsas**
**Sipsas PC**
**31-16 30th Avenue**
**Suite 201**
**Astoria, NY 11102**

**What is the nature of the claim?** **$62,219.00**

**As of the date you file, the claim is:** Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No
☐ Yes. Total claim (secured and unsecured)
Value of security: -
Unsecured claim

Contact
Contact phone

---

**7**

**Michael Ian Black, Esq.**
**270 Madison Avneue**
**New York, NY 10016**

Contact
Contact phone

**What is the nature of the claim?** **$52,046.00**

**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No
☐ Yes. Total claim (secured and unsecured)
Value of security: -
Unsecured claim

---

**8**

**NYC Department of Finance**
**PO Box 680**
**Newark, NJ 07101**

Contact
Contact phone

**What is the nature of the claim?** **$31,563.00**

**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No
☐ Yes. Total claim (secured and unsecured)
Value of security: -
Unsecured claim

---

**9**

**Preferred Process Servers**
**166-06 24Rd LL**
**Whitestone, NY 11357**

Contact
Contact phone

**What is the nature of the claim?** **$8,344.00**

**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No
☐ Yes. Total claim (secured and unsecured)
Value of security: -
Unsecured claim

---

## Part 2: Sign Below

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number *(if known)* **23-42029**

**Under penalty of perjury, I declare that the information provided in this form is true and correct.**

| | |
|---|---|
| X **/s/ MARGARITA ONASSIS PARLIONAS** | X |
| **MARGARITA ONASSIS PARLIONAS**<br>Signature of Debtor 1 | Signature of Debtor 2 |
| Date **June 14, 2023** | Date |

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | MARGARITA ONASSIS PARLIONAS | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse if, filing) | | | |
| | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: EASTERN DISTRICT OF NEW YORK

Case number (if known) **23-42029**

☐ Check if this is an amended filing

# Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information 12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.**

**Part 1: Summarize Your Assets**

| | Your assets<br>Value of what you own |
|---|---|
| 1. **Schedule A/B: Property** (Official Form 106A/B)<br>1a. Copy line 55, Total real estate, from Schedule A/B | $ **1,975,000.00** |
| 1b. Copy line 62, Total personal property, from Schedule A/B | $ **11,100.00** |
| 1c. Copy line 63, Total of all property on Schedule A/B | $ **1,986,100.00** |

**Part 2: Summarize Your Liabilities**

| | Your liabilities<br>Amount you owe |
|---|---|
| 2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)<br>2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...* | $ **700,000.00** |
| 3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)<br>3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F* | $ **0.00** |
| 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F* | $ **690,572.00** |
| **Your total liabilities** | $ **1,390,572.00** |

**Part 3: Summarize Your Income and Expenses**

| | |
|---|---|
| 4. *Schedule I: Your Income* (Official Form 106I)<br>Copy your combined monthly income from line 12 of *Schedule I* | $ **4,500.00** |
| 5. *Schedule J: Your Expenses* (Official Form 106J)<br>Copy your monthly expenses from line 22c of *Schedule J* | $ **2,510.00** |

**Part 4: Answer These Questions for Administrative and Statistical Records**

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

■ Yes

7. **What kind of debt do you have?**

☐ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

■ **Your debts are not primarily consumer debts**. You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.



Software Copyright (c) 1996-2023 Best Case, LLC - www.bestcase.com

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number *(if known)* **23-42029**

8. **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form 122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14. $

9. **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| **From Part 4 on *Schedule E/F*, copy the following:** | **Total claim** |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ **0.00** |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ **0.00** |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ **0.00** |
| 9d. Student loans. (Copy line 6f.) | $ **0.00** |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ **0.00** |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ **0.00** |
| 9g. **Total.** Add lines 9a through 9f. | $ **0.00** |



Software Copyright (c) 1996-2023 Best Case, LLC - www.bestcase.com

**Fill in this information to identify your case and this filing:**

Debtor 1 **MARGARITA ONASSIS PARLIONAS**
First Name Middle Name Last Name

Debtor 2
(Spouse, if filing) First Name Middle Name Last Name

United States Bankruptcy Court for the: EASTERN DISTRICT OF NEW YORK

Case number **23-42029**

☐ Check if this is an amended filing

Official Form 106A/B

# Schedule A/B: Property

**12/15**

**In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

## Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes. Where is the property?

1.1

**157-22 Powells Cove Blvd**
Street address, if available, or other description

**Whitestone** **NY** **11357-0000**
City State ZIP Code

**Queens**
County

**What is the property?** Check all that apply

■ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$1,400,000.00** | **$1,400,000.00** |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

☐ **Check if this is community property** (see instructions)

**Other information you wish to add about this item, such as local property identification number:**

**Co-owned**

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number *(if known)* **23-42029**

**If you own or have more than one, list here:**

1.2

**1331 Se 8th Ct.**
Street address, if available, or other description

**Deerfield Beach** **FL** **33441-0000**
City State ZIP Code

**Broward**
County

**What is the property?** Check all that apply

- ■ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ☐ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other

**Who has an interest in the property?** Check one

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$475,000.00** | **$475,000.00** |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

**Joint tenant**

☐ **Check if this is community property** (see instructions)

**Other information you wish to add about this item, such as local property identification number:**

**Co-owning with husband (in divorce proceeding)**

---

**If you own or have more than one, list here:**

1.3

**SBL 93-1-45 Town of Oppenheim**
Street address, if available, or other description

City State ZIP Code

County

**What is the property?** Check all that apply

- ☐ Single-family home
- ☐ Duplex or multi-unit building
- ☐ Condominium or cooperative
- ☐ Manufactured or mobile home
- ■ Land
- ☐ Investment property
- ☐ Timeshare
- ☐ Other

**Who has an interest in the property?** Check one

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$100,000.00** | **$100,000.00** |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

☐ **Check if this is community property** (see instructions)

**Other information you wish to add about this item, such as local property identification number:**

**Empty lot deed is in the name of the corporation Tommy and Margarita Inc.**

---

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here..........................................................................=>** **$1,975,000.00**

**Part 2:** **Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number *(if known)* **23-42029**

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

3.1 Make: **Nissan**
Model:
Year: **1995**
Approximate mileage: **100,000**
Other information:

**Who has an interest in the property?** Check one
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*.

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$2,000.00** | **$2,000.00** |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5 **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here.............................................................................=>** **$2,000.00**

**Part 3:** **Describe Your Personal and Household Items**

**Do you own or have any legal or equitable interest in any of the following items?** — **Current value of the portion you own?** Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
*Examples:* Major appliances, furniture, linens, china, kitchenware
☐ No
■ Yes. Describe.....

**Furniture, beds, chairs file cabinets etc.** **$5,500.00**

7. **Electronics**
*Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
■ Yes. Describe.....

**TV laptop** **$1,500.00**

8. **Collectibles of value**
*Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
■ No
☐ Yes. Describe.....

9. **Equipment for sports and hobbies**
*Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
■ No
☐ Yes. Describe.....

10. **Firearms**
*Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
■ No

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number *(if known)* **23-42029**

☐ Yes. Describe.....

11. **Clothes**
*Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
☐ No
■ Yes. Describe.....

**Garments etc.** **$1,100.00**

12. **Jewelry**
*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
☐ No
■ Yes. Describe.....

**Pinky ring** **Unknown**

13. **Non-farm animals**
*Examples:* Dogs, cats, birds, horses
■ No
☐ Yes. Describe.....

14. **Any other personal and household items you did not already list, including any health aids you did not list**
■ No
☐ Yes. Give specific information.....

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here .............................................................................** **$8,100.00**

**Part 4: Describe Your Financial Assets**

**Do you own or have any legal or equitable interest in any of the following?** — **Current value of the portion you own?** Do not deduct secured claims or exemptions.

16. **Cash**
*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
☐ No
■ Yes.................................................................................................................

**Cash** **$500.00**

17. **Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
☐ No
■ Yes....................... Institution name:

17.1. **Savings** **Chase Bank and TD** **$500.00**

18. **Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
■ No
☐ Yes................. Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
☐ No
■ Yes. Give specific information about them..................

| Name of entity: | % of ownership: | |
|---|---|---|
| **Ownership interest in Tommy and Margarita Inc.** | % | **$0.00** |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No
☐ Yes. Give specific information about them
Issuer name:

21. **Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

■ No
☐ Yes. List each account separately.
Type of account: Institution name:

22. **Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No
☐ Yes. .................... Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

■ No
☐ Yes............ Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

■ No
☐ Yes............ Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

■ No
☐ Yes. Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

■ No
☐ Yes. Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

■ No
☐ Yes. Give specific information about them...

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**

■ No
☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

29. **Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

■ No
☐ Yes. Give specific information......

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number *(if known)* **23-42029**

30. **Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

☐ No
■ Yes. Give specific information..

| | |
|---|---|
| **The Debtor is owed monies by her husband (divorce pending). Debtor has an amount exceeding $100,000 at present in the escrow account Michael Black.** | **Unknown** |

31. **Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

■ No
☐ Yes. Name the insurance company of each policy and list its value.

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|

32. **Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

■ No
☐ Yes. Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

■ No
☐ Yes. Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☐ No
■ Yes. Describe each claim.........

| | |
|---|---|
| **Claims against Athanasios Parlionas under RICO, embezzlment related to accounts receivables and other fraud claims. Malpractice claims against Alyssa Eisner (Sager Gellerman Eisner PLLC).** | **Unknown** |

35. **Any financial assets you did not already list**

■ No
☐ Yes. Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.........................................................................................................** **$1,000.00**

**Part 5: Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.**

37. **Do you own or have any legal or equitable interest in any business-related property?**

■ No. Go to Part 6.
☐ Yes. Go to line 38.

**Part 6: Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**
If you own or have an interest in farmland, list it in Part 1.

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

■ No. Go to Part 7.
☐ Yes. Go to line 47.

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number *(if known)* **23-42029**

**Part 7:** **Describe All Property You Own or Have an Interest in That You Did Not List Above**

53. **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership
■ No
☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here** .................................... **$0.00**

**Part 8:** **List the Totals of Each Part of this Form**

| | | | | |
|---|---|---|---|---|
| 55. | **Part 1: Total real estate, line 2** ......... | | | **$1,975,000.00** |
| 56. | **Part 2: Total vehicles, line 5** | **$2,000.00** | | |
| 57. | **Part 3: Total personal and household items, line 15** | **$8,100.00** | | |
| 58. | **Part 4: Total financial assets, line 36** | **$1,000.00** | | |
| 59. | **Part 5: Total business-related property, line 45** | **$0.00** | | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | **$0.00** | | |
| 61. | **Part 7: Total other property not listed, line 54** + | **$0.00** | | |
| 62. | **Total personal property.** Add lines 56 through 61... | **$11,100.00** | Copy personal property total | **$11,100.00** |
| 63. | **Total of all property on Schedule A/B**. Add line 55 + line 62 | | | **$1,986,100.00** |

**Fill in this information to identify your case:**

Debtor 1: **MARGARITA ONASSIS PARLIONAS**
First Name / Middle Name / Last Name

Debtor 2 (Spouse if, filing):
First Name / Middle Name / Last Name

United States Bankruptcy Court for the: EASTERN DISTRICT OF NEW YORK

Case number (if known): **23-42029**

☐ Check if this is an amended filing

Official Form 106C

# Schedule C: The Property You Claim as Exempt

**4/22**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

## Part 1: Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

■ You are claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)

☐ You are claiming federal exemptions. 11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **157-22 Powells Cove Blvd Whitestone, NY 11357 Queens County Co-owned**<br>Line from *Schedule A/B*: **1.1** | **$1,400,000.00** | ☐ <br>■ 100% of fair market value, up to any applicable statutory limit | **NYCPLR § 5206** |
| **1995 Nissan 100,000 miles**<br>Line from *Schedule A/B*: **3.1** | **$2,000.00** | ■ **$2,000.00**<br>☐ 100% of fair market value, up to any applicable statutory limit | **NYCPLR § 5205(a)(8)** |
| **Furniture, beds, chairs file cabinets etc.**<br>Line from *Schedule A/B*: **6.1** | **$5,500.00** | ■ **$5,500.00**<br>☐ 100% of fair market value, up to any applicable statutory limit | **NYCPLR § 5205(a)(5)** |
| **TV laptop**<br>Line from *Schedule A/B*: **7.1** | **$1,500.00** | ■ **$1,500.00**<br>☐ 100% of fair market value, up to any applicable statutory limit | **NYCPLR § 5205(a)(5)** |

3. **Are you claiming a homestead exemption of more than $189,050?**
(Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

- ■ No
- ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?
  - ☐ No
  - ☐ Yes

**Fill in this information to identify your case:**

Debtor 1 **MARGARITA ONASSIS PARLIONAS**
First Name Middle Name Last Name

Debtor 2
(Spouse if, filing) First Name Middle Name Last Name

United States Bankruptcy Court for the: EASTERN DISTRICT OF NEW YORK

Case number **23-42029**
(if known)

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

**12/15**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).**

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

## Part 1: List All Secured Claims

| **2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | *Column A* **Amount of claim** Do not deduct the value of collateral. | *Column B* **Value of collateral that supports this claim** | *Column C* **Unsecured portion** If any |
|---|---|---|---|
| 2.1 **Wells Fargo Bank** — Describe the property that secures the claim: | **$700,000.00** | **$1,400,000.00** | **$0.00** |

**Wells Fargo Bank**
Creditor's Name

**PO Box 14529**
**Des Moines, IA 50306**
Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**
**Debtor owns this property her spouse but is not on the loan.**

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)

**Date debt was incurred** _____ **Last 4 digits of account number** _____

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number (if known) **23-42029**
First Name Middle Name Last Name

| | | | | |
|---|---|---|---|---|
| 2.2 **Wells Fargo Bank NA**<br>Creditor's Name<br><br>**PO Box 14529**<br>**Des Moines, IA 50306**<br>Number, Street, City, State & Zip Code | **Describe the property that secures the claim:**<br>**The Debtor coowns this property based in Florida her spouse, but she is not on the mortgage.** | **$0.00** | **$0.00** | **$0.00** |

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Who owes the debt?** Check one.
- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim relates to a community debt**

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) ______

**Date debt was incurred** **For Notice purpose only** **Last 4 digits of account number** ______

| | |
|---|---|
| **Add the dollar value of your entries in Column A on this page. Write that number here:** | **$700,000.00** |
| **If this is the last page of your form, add the dollar value totals from all pages. Write that number here:** | **$700,000.00** |

**Part 2: List Others to Be Notified for a Debt That You Already Listed**

**Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.**

[ ] Name, Number, Street, City, State & Zip Code
**Wells Fargo Bank**
**PO Box 14529**
**Des Moines, IA 50306**

On which line in Part 1 did you enter the creditor? **2.1**

Last 4 digits of account number ___

**Fill in this information to identify your case:**

Debtor 1 **MARGARITA ONASSIS PARLIONAS**
First Name Middle Name Last Name

Debtor 2
(Spouse if, filing) First Name Middle Name Last Name

United States Bankruptcy Court for the: EASTERN DISTRICT OF NEW YORK

Case number **23-42029**
(if known)

☐ Check if this is an amended filing

Official Form 106E/F

# Schedule E/F: Creditors Who Have Unsecured Claims

12/15

**Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).**

## Part 1: List All of Your PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims against you?**

■ No. Go to Part 2.

☐ Yes.

## Part 2: List All of Your NONPRIORITY Unsecured Claims

3. **Do any creditors have nonpriority unsecured claims against you?**

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

■ Yes.

4. **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

**Total claim**

4.1 **Aleka Katehis**
Nonpriority Creditor's Name
**199-03 23rd Aveue**
**Whitestone, NY**
Number Street City State Zip Code

**Last 4 digits of account number** **$5,000.00**

**When was the debt incurred?**

**As of the date you file, the claim is:** Check all that apply

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number (if known) **23-42029**

4.2 **Athanasios Parlionass**
Nonpriority Creditor's Name
**103 Muttontown Eastwoods**
**Syosset, NY 11791**
Number Street City State Zip Code
**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
■ No
☐ Yes

**Last 4 digits of account number** **$252,000.00**
**When was the debt incurred?**
**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
■ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify

---

4.3 **Chase Card Member**
Nonpriority Creditor's Name
**PO Box 1423**
**Charlotte, NC 28201**
Number Street City State Zip Code
**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
■ No
☐ Yes

**Last 4 digits of account number** **4556** **$25,000.00**
**When was the debt incurred?**
**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
■ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify

---

4.4 **Chase Cardmember Service**
Nonpriority Creditor's Name
**PO Box 1423**
**Charlotte, NC 28201**
Number Street City State Zip Code
**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
■ No
☐ Yes

**Last 4 digits of account number** **5725** **$0.00**
**When was the debt incurred?**
**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
■ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify

---

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number (if known) **23-42029**

4.5 **Christopher Andreone** — Last 4 digits of account number ____ — **$234,000.00**
Nonpriority Creditor's Name
**11 The Hemlocks**
**Roslyn, NY 11576**
Number Street City State Zip Code
**When was the debt incurred?** ____
**As of the date you file, the claim is:** Check all that apply

**Who incurred the debt?** Check one.
- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify ____

4.6 **Con Edison** — Last 4 digits of account number ____ — **$20,400.00**
Nonpriority Creditor's Name
**PO Box 1702**
**New York, NY 10116**
Number Street City State Zip Code
**When was the debt incurred?** ____
**As of the date you file, the claim is:** Check all that apply

**Who incurred the debt?** Check one.
- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify **Con Edison, account in name of her husband**

4.7 **John Sipsas** — Last 4 digits of account number **Attorney representation** — **$62,219.00**
Nonpriority Creditor's Name
**Sipsas PC**
**31-16 30th Avenue**
**Suite 201**
**Astoria, NY 11102**
Number Street City State Zip Code
**When was the debt incurred?** ____
**As of the date you file, the claim is:** Check all that apply

**Who incurred the debt?** Check one.
- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
- ■ No
- ☐ Yes

- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ■ Other. Specify ____

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number (if known) **23-42029**

4.8 **Michael Ian Black, Esq.**
Nonpriority Creditor's Name
**270 Madison Avneue**
**New York, NY 10016**
Number Street City State Zip Code
**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
■ No
☐ Yes

**Last 4 digits of account number** **$52,046.00**
**When was the debt incurred?**
**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify

4.9 **NYC Department of Finance**
Nonpriority Creditor's Name
**PO Box 680**
**Newark, NJ 07101**
Number Street City State Zip Code
**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
■ No
☐ Yes

**Last 4 digits of account number** **$31,563.00**
**When was the debt incurred?**
**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify

4.10 **Preferred Process Servers**
Nonpriority Creditor's Name
**166-06 24Rd LL**
**Whitestone, NY 11357**
Number Street City State Zip Code
**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
■ No
☐ Yes

**Last 4 digits of account number** **$8,344.00**
**When was the debt incurred?**
**As of the date you file, the claim is:** Check all that apply
☐ Contingent
☐ Unliquidated
■ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify

## Part 3: List Others to Be Notified About a Debt That You Already Listed

**5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.**

## Part 4: Add the Amounts for Each Type of Unsecured Claim

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number (if known) **23-42029**

**6. Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.**

| | | | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. | $ **0.00** |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ **0.00** |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ **0.00** |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ **0.00** |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ **0.00** |

| | | | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $ **0.00** |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ **0.00** |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ **0.00** |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ **690,572.00** |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ **690,572.00** |

**Fill in this information to identify your case:**

Debtor 1 MARGARITA ONASSIS PARLIONAS
First Name Middle Name Last Name

Debtor 2
(Spouse if, filing) First Name Middle Name Last Name

United States Bankruptcy Court for the: EASTERN DISTRICT OF NEW YORK

Case number 23-42029
(if known)

☐ Check if this is an amended filing

# Official Form 106G
# Schedule G: Executory Contracts and Unexpired Leases

**12/15**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).**

1. **Do you have any executory contracts or unexpired leases?**
   - ■ No. Check this box and file this form with the court with your other schedules. You have nothing else to report on this form.
   - ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| | Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|---|
| 2.1 | Name<br>Number Street<br>City State ZIP Code | |
| 2.2 | Name<br>Number Street<br>City State ZIP Code | |
| 2.3 | Name<br>Number Street<br>City State ZIP Code | |
| 2.4 | Name<br>Number Street<br>City State ZIP Code | |
| 2.5 | Name<br>Number Street<br>City State ZIP Code | |

**Fill in this information to identify your case:**

Debtor 1 **MARGARITA ONASSIS PARLIONAS**
First Name Middle Name Last Name

Debtor 2
(Spouse if, filing) First Name Middle Name Last Name

United States Bankruptcy Court for the: EASTERN DISTRICT OF NEW YORK

Case number **23-42029**
(if known)

☐ Check if this is an amended filing

# Official Form 106H
# Schedule H: Your Codebtors

**12/15**

**Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.**

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.

■ No
☐ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

■ No. Go to line 3.
☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

**3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

| | *Column 1:* **Your codebtor**<br>Name, Number, Street, City, State and ZIP Code | *Column 2:* **The creditor to whom you owe the debt**<br>Check all schedules that apply: |
|---|---|---|
| 3.1 | Name<br>Number Street<br>City State ZIP Code | ☐ Schedule D, line<br>☐ Schedule E/F, line<br>☐ Schedule G, line |
| 3.2 | Name<br>Number Street<br>City State ZIP Code | ☐ Schedule D, line<br>☐ Schedule E/F, line<br>☐ Schedule G, line |

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **MARGARITA ONASSIS PARLIONAS** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK |
| Case number (If known) | **23-42029** |

Check if this is:
- ☐ An amended filing
- ☐ A supplement showing postpetition chapter 13 income as of the following date: ________ MM / DD/ YYYY

Official Form 106I

# Schedule I: Your Income

**12/15**

**Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

## Part 1: Describe Employment

1. **Fill in your employment information.**

If you have more than one job, attach a separate page with information about additional employers.

Include part-time, seasonal, or self-employed work.

Occupation may include student or homemaker, if it applies.

| | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|
| **Employment status** | ■ Employed<br>☐ Not employed | ☐ Employed<br>☐ Not employed |
| **Occupation** | **Unemployed** | |
| **Employer's name** | | |
| **Employer's address** | | |
| **How long employed there?** | | |

## Part 2: Give Details About Monthly Income

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ **0.00** | $ **N/A** |
| 3. | **Estimate and list monthly overtime pay.** | 3. | +$ **0.00** | +$ **N/A** |
| 4. | **Calculate gross Income.** Add line 2 + line 3. | 4. | $ **0.00** | $ **N/A** |

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number (*if known*) **23-42029**

| | | | For Debtor 1 | | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|---|
| | **Copy line 4 here** | 4. | $ 0.00 | | $ N/A |
| 5. | **List all payroll deductions:** | | | | |
| 5a. | **Tax, Medicare, and Social Security deductions** | 5a. | $ 0.00 | | $ N/A |
| 5b. | **Mandatory contributions for retirement plans** | 5b. | $ 0.00 | | $ N/A |
| 5c. | **Voluntary contributions for retirement plans** | 5c. | $ 0.00 | | $ N/A |
| 5d. | **Required repayments of retirement fund loans** | 5d. | $ 0.00 | | $ N/A |
| 5e. | **Insurance** | 5e. | $ 0.00 | | $ N/A |
| 5f. | **Domestic support obligations** | 5f. | $ 0.00 | | $ N/A |
| 5g. | **Union dues** | 5g. | $ 0.00 | | $ N/A |
| 5h. | **Other deductions.** Specify: | 5h.+ | $ 0.00 | + | $ N/A |
| 6. | **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ 0.00 | | $ N/A |
| 7. | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ 0.00 | | $ N/A |
| 8. | **List all other income regularly received:** | | | | |
| 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | | $ N/A |
| 8b. | **Interest and dividends** | 8b. | $ 0.00 | | $ N/A |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 2,500.00 | | $ N/A |
| 8d. | **Unemployment compensation** | 8d. | $ 0.00 | | $ N/A |
| 8e. | **Social Security** | 8e. | $ 0.00 | | $ N/A |
| 8f. | **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | | $ N/A |
| 8g. | **Pension or retirement income** | 8g. | $ 0.00 | | $ N/A |
| 8h. | **Other monthly income.** Specify: **Evangelia Andreone** | 8h.+ | $ 2,000.00 | + | $ N/A |
| 9. | **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ 4,500.00 | | $ N/A |

10. **Calculate monthly income.** Add line 7 + line 9.
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.
10. $ 4,500.00 + $ N/A = $ 4,500.00

11. **State all other regular contributions to the expenses that you list in *Schedule J*.**
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J*.
Specify: 11. +$ 0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income. Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies
12. $ 4,500.00
**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
- ■ No.
- ☐ Yes. Explain:

Fill in this information to identify your case:

Debtor 1 MARGARITA ONASSIS PARLIONAS

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: EASTERN DISTRICT OF NEW YORK

Case number 23-42029
(If known)

Check if this is:
☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

MM / DD / YYYY

# Official Form 106J
## Schedule J: Your Expenses

12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

### Part 1: Describe Your Household

1. **Is this a joint case?**

■ No. Go to line 2.
☐ Yes. **Does Debtor 2 live in a separate household?**
☐ No
☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?** ■ No

Do not list Debtor 1 and Debtor 2. ☐ Yes. Fill out this information for each dependent.............

Do not state the dependents names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |
| | | ☐ No ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?** ■ No ☐ Yes

### Part 2: Estimate Your Ongoing Monthly Expenses

**Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.**

**Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)**

| | | Your expenses |
|---|---|---|
| 4. | **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot. | 4. $ 0.00 |
| | **If not included in line 4:** | |
| 4a. | Real estate taxes | 4a. $ 0.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $ 0.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ 0.00 |
| 4d. | Homeowner's association or condominium dues | 4d. $ 0.00 |
| 5. | **Additional mortgage payments for your residence,** such as home equity loans | 5. $ 0.00 |

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number (if known) **23-42029**

| | | | |
|---|---|---|---|
| 6. | **Utilities:** | | |
| | 6a. Electricity, heat, natural gas | 6a. $ | **1,200.00** |
| | 6b. Water, sewer, garbage collection | 6b. $ | **0.00** |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | **100.00** |
| | 6d. Other. Specify: | 6d. $ | **0.00** |
| 7. | **Food and housekeeping supplies** | 7. $ | **650.00** |
| 8. | **Childcare and children's education costs** | 8. $ | **0.00** |
| 9. | **Clothing, laundry, and dry cleaning** | 9. $ | **110.00** |
| 10. | **Personal care products and services** | 10. $ | **75.00** |
| 11. | **Medical and dental expenses** | 11. $ | **0.00** |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. $ | **300.00** |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. $ | **75.00** |
| 14. | **Charitable contributions and religious donations** | 14. $ | **0.00** |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| | 15a. Life insurance | 15a. $ | **0.00** |
| | 15b. Health insurance | 15b. $ | **0.00** |
| | 15c. Vehicle insurance | 15c. $ | **0.00** |
| | 15d. Other insurance. Specify: | 15d. $ | **0.00** |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. $ | **0.00** |
| 17. | **Installment or lease payments:** | | |
| | 17a. Car payments for Vehicle 1 | 17a. $ | **0.00** |
| | 17b. Car payments for Vehicle 2 | 17b. $ | **0.00** |
| | 17c. Other. Specify: | 17c. $ | **0.00** |
| | 17d. Other. Specify: | 17d. $ | **0.00** |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18. $ | **0.00** |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. $ | **0.00** |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income*.** | | |
| | 20a. Mortgages on other property | 20a. $ | **0.00** |
| | 20b. Real estate taxes | 20b. $ | **0.00** |
| | 20c. Property, homeowner's, or renter's insurance | 20c. $ | **0.00** |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. $ | **0.00** |
| | 20e. Homeowner's association or condominium dues | 20e. $ | **0.00** |
| 21. | **Other:** Specify: | 21. +$ | **0.00** |
| 22. | **Calculate your monthly expenses** | | |
| | 22a. Add lines 4 through 21. | $ | **2,510.00** |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | $ | **2,510.00** |
| 23. | **Calculate your monthly net income.** | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. $ | **4,500.00** |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. -$ | **2,510.00** |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income*. | 23c. $ | **1,990.00** |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.
☐ Yes. Explain here:

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | MARGARITA ONASSIS PARLIONAS | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse if, filing) | | | |
| | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: EASTERN DISTRICT OF NEW YORK

Case number (if known) **23-42029**

☐ Check if this is an amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

**12/15**

**If two married people are filing together, both are equally responsible for supplying correct information.**

**You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Sign Below

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes. Name of person __________ Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

X **/s/ MARGARITA ONASSIS PARLIONAS**
**MARGARITA ONASSIS PARLIONAS**
Signature of Debtor 1

Date **June 14, 2023**

X __________
Signature of Debtor 2

Date __________

**Fill in this information to identify your case:**

Debtor 1 **MARGARITA ONASSIS PARLIONAS**
First Name Middle Name Last Name

Debtor 2
(Spouse if, filing) First Name Middle Name Last Name

United States Bankruptcy Court for the: EASTERN DISTRICT OF NEW YORK

Case number **23-42029**
(if known)

☐ Check if this is an amended filing

# Official Form 107
# Statement of Financial Affairs for Individuals Filing for Bankruptcy

**04/22**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

## Part 1: Give Details About Your Marital Status and Where You Lived Before

**1. What is your current marital status?**

■ Married
☐ Not married

**2. During the last 3 years, have you lived anywhere other than where you live now?**

■ No
☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|

**3. Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

■ No
☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

## Part 2 Explain the Sources of Your Income

**4. Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

■ No
☐ Yes. Fill in the details.

| Debtor 1 | | Debtor 2 | |
|---|---|---|---|
| **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) |

5. **Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Describe below. | **Gross income from each source** (before deductions and exclusions) | **Sources of income** Describe below. | **Gross income** (before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | **Alimony / Maintenance** | **$15,000.00** | | |
| **For last calendar year: (January 1 to December 31, 2022 )** | **Alimony / Maintenance** | **$30,000.00** | | |
| **For the calendar year before that: (January 1 to December 31, 2021 )** | **Alimony / Maintenance** | **$30,000.00** | | |

**Part 3: List Certain Payments You Made Before You Filed for Bankruptcy**

6. **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

■ No. **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $7,575* or more?

■ No. Go to line 7.
☐ Yes List below each creditor to whom you paid a total of $7,575* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

* Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.

☐ Yes. **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐ No. Go to line 7.
☐ Yes List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

■ No
☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

■ No
☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
|---|---|---|---|---|

**Part 4: Identify Legal Actions, Repossessions, and Foreclosures**

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☐ No
■ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| **Margarita Parlionas v Athanasios Parlionas<br>7217788/2020** | **Divorce** | **Supreme Court<br>Queens County<br>New York** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| **Christos Parlionas v. Margarita Parlions<br>707445/2022** | **Defamation** | **Supreme Court Queens County<br>Jamaica NY** | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| **Anthanasios Parlionas v Margarita Parlionas<br>707441/2022** | **Defamation** | **Supreme Court<br>Jamaica NY** | ■ Pending<br>☐ On appeal<br>☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

■ No. Go to line 11.
☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property<br><br>Explain what happened | Date | Value of the property |
|---|---|---|---|

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

■ No
☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

■ No
☐ Yes

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number (*if known*) **23-42029**

**Part 5: List Certain Gifts and Contributions**

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

■ No
☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person<br><br>Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

■ No
☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600<br>Charity's Name<br>Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|

**Part 6: List Certain Losses**

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

■ No
☐ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
|---|---|---|---|

**Part 7: List Certain Payments or Transfers**

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| **Dahiya Law Offices LLC<br>75 Maiden Lane Suite 606<br>New York, NY 10038<br>karam@dahiya.law** | | | **$15,500.00** |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

■ No
☐ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices.*)

■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

**Part 8:** **List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units**

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
**Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.**

■ **No**
☐ **Yes. Fill in the details.**

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of Financial Institution<br>Address (Number, Street, City, State and ZIP Code) | Who else had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of Storage Facility<br>Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it?<br>Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

**Part 9:** **Identify Property You Hold or Control for Someone Else**

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

■ **No**
☐ **Yes. Fill in the details.**

| Owner's Name<br>Address (Number, Street, City, State and ZIP Code) | Where is the property?<br>(Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

**Part 10:** **Give Details About Environmental Information**

**For the purpose of Part 10, the following definitions apply:**

■ ***Environmental law*** **means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or**

**toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.**

- ***Site*** **means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.**
- ***Hazardous material*** **means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.**

**Report all notices, releases, and proceedings that you know about, regardless of when they occurred.**

**24. Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of site Address (Number, Street, City, State and ZIP Code) | Governmental unit Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

**25. Have you notified any governmental unit of any release of hazardous material?**

■ **No**
☐ **Yes. Fill in the details.**

| Name of site Address (Number, Street, City, State and ZIP Code) | Governmental unit Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

**26. Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

■ **No**
☐ **Yes. Fill in the details.**

| Case Title Case Number | Court or agency Name Address (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

**Part 11:** **Give Details About Your Business or Connections to Any Business**

**27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

☐ **A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time**

☐ **A member of a limited liability company (LLC) or limited liability partnership (LLP)**

☐ **A partner in a partnership**

☐ **An officer, director, or managing executive of a corporation**

☐ **An owner of at least 5% of the voting or equity securities of a corporation**

■ **No. None of the above applies. Go to Part 12.**

☐ **Yes. Check all that apply above and fill in the details below for each business.**

| Business Name Address (Number, Street, City, State and ZIP Code) | Describe the nature of the business Name of accountant or bookkeeper | Employer Identification number Do not include Social Security number or ITIN. Dates business existed |
|---|---|---|

**28. Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

■ **No**
☐ **Yes. Fill in the details below.**

| Name Address (Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|

**Part 12:** **Sign Below**

**I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers**

**are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.**
**18 U.S.C. §§ 152, 1341, 1519, and 3571.**

| | |
|---|---|
| /s/ MARGARITA ONASSIS PARLIONAS | |
| **MARGARITA ONASSIS PARLIONAS**<br>**Signature of Debtor 1** | **Signature of Debtor 2** |
| **Date** June 14, 2023 | **Date** |

**Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?**

■ No
☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

■ No
☐ Yes. Name of Person ______. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

Fill in this information to identify your case:

Debtor 1 **MARGARITA ONASSIS PARLIONAS**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Eastern District of New York

Case number **23-42029**
(if known)

☐ Check if this is an amended filing

Official Form 122B

# Chapter 11 Statement of Your Current Monthly Income

**12/21**

**You must file this form if you are an individual and are filing for bankruptcy under Chapter 11 (other than Subchapter V). If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known).**

## Part 1: Calculate Your Current Monthly Income

1. **What is your marital and filing status?** Check one only.

☐ **Not married**. Fill out Column A, lines 2-11.

☐ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

■ **Married and your spouse is NOT filing with you.** Fill out Column A, lines 2-11.

**Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case.** 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | *Column A* **Debtor 1** | *Column B* **Debtor 2** |
|---|---|---|
| 2. **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ **0.00** | $ |
| 3. **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ **2,500.00** | $ |
| 4. **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3**.** | $ **0.00** | $ |

5. **Net income from operating a business, profession, or farm**

| | Debtor 1 | Debtor 2 | | Column A | Column B |
|---|---|---|---|---|---|
| Gross receipts (before all deductions) | $ **0.00** | | | | |
| Ordinary and necessary operating expenses | -$ **0.00** | | | | |
| Net monthly income from a business, profession, or farm | $ **0.00** | | **Copy here ->** | $ **0.00** | $ |

6. **Net income from rental and other real property**

| | Debtor 1 | Debtor 2 | | Column A | Column B |
|---|---|---|---|---|---|
| Gross receipts (before all deductions) | $ **0.00** | | | | |
| Ordinary and necessary operating expenses | -$ **0.00** | | | | |
| Net monthly income from rental or other real property | $ **0.00** | | **Copy here ->** | $ **0.00** | $ |

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number (*if known*) **23-42029**

| | *Column A* **Debtor 1** | *Column B* **Debtor 2** |
|---|---|---|
| 7. **Interest, dividends, and royalties** | $ **0.00** | $ |
| 8. **Unemployment compensation** | $ **0.00** | $ |
| Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here: | | |
| For you $ **0.00** | | |
| For your spouse $ | | |
| 9. **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act. Also, except as stated in the next sentence, do not include any compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If you received any retired pay paid under chapter 61 of title 10, then include that pay only to the extent that it does not exceed the amount of retired pay to which you would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title. | $ **0.00** | $ |
| 10. **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act; payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism; or compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If necessary, list other sources on a separate page and put the total below. | | |
| | $ | $ |
| | $ **0.00** | $ |
| Total amounts from separate pages, if any. **+** | $ **0.00** | $ |

11. **Calculate your total current monthly income.**
Add lines 2 through 10 for each column.
Then add the total for Column A to the total for Column B.

$ **2,500.00** **+** $ ______ **=** $ **2,500.00**

Debtor 1 **MARGARITA ONASSIS PARLIONAS** Case number (*if known*) **23-42029**

**Part 2:** **Sign Below**

By signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct.

**X** ***/s/* MARGARITA ONASSIS PARLIONAS**
**MARGARITA ONASSIS PARLIONAS**
Signature of Debtor 1

Date **June 14, 2023**
MM / DD / YYYY

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
## Eastern District of New York

In re **MARGARITA ONASSIS PARLIONAS** Debtor(s)

Case No. **23-42029**
Chapter **11**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept | $ | **650.00 an hour retainer** |
| Prior to the filing of this statement I have received | $ | **17,500.00** |
| Balance Due | $ | **0.00** |

2. The source of the compensation paid to me was:

☑ Debtor ☐ Other (specify):

3. The source of compensation to be paid to me is:

☑ Debtor ☐ Other (specify):

4. ☑ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
d. [Other provisions as needed]

6. By agreement with the debtor(s), the above-disclosed fee does not include the following service:

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

06/14/2023
*Date*

**/s/ Karamvir Dahiya**
**Karamvir Dahiya**
*Signature of Attorney*
**Dahiya Law Offices, LLC**
**75 Maiden Lane Suite 606**
**New York**
**New York, NY 10038**
**2127668000 Fax: 2127668001**
**karam@bankruptcypundit.com**
*Name of law firm*

# United States Bankruptcy Court
## Eastern District of New York

In re **MARGARITA ONASSIS PARLIONAS** Debtor(s)

Case No. **23-42029**
Chapter **11**

## VERIFICATION OF CREDITOR MATRIX

The above named debtor(s) or attorney for the debtor(s) hereby verify that the attached matrix (list of creditors) is true and correct to the best of their knowledge.

Date: **June 14, 2023**

**/s/ MARGARITA ONASSIS PARLIONAS**
**MARGARITA ONASSIS PARLIONAS**
Signature of Debtor

Date: **June 14, 2023**

**/s/ Karamvir Dahiya**
Signature of Attorney
**Karamvir Dahiya**
**Dahiya Law Offices, LLC**
**75 Maiden Lane Suite 606**
**New York**
**New York, NY 10038**
**2127668000 Fax: 2127668001**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

# STATEMENT PURSUANT TO LOCAL BANKRUPTCY RULE 1073-2(b)

**DEBTOR(S):** MARGARITA ONASSIS PARLIONAS **CASE NO.:** 23-42029

Pursuant to Local Bankruptcy Rule 1073-2(b), the debtor *(or any other petitioner)* hereby makes the following disclosure concerning Related Cases, to the petitioner's best knowledge, information and belief:

[NOTE: Cases shall be deemed "Related Cases" for purposes of E.D.N.Y. LBR 1073-1 and E.D.N.Y. LBR 1073-2 if the earlier case was pending at any time within eight years before the filing of the new petition, and the debtors in such cases: (i) are the same; (ii) are spouses or ex-spouses; (iii) are affiliates, as defined in 11 U.S.C. § 101(2); (iv) are general partners in the same partnership; (v) are a partnership and one or more of its general partners; (vi) are partnerships which share one or more common general partners; or (vii) have, or within 180 days of the commencement of either of the Related Cases had, an interest in property that was or is included in the property of another estate under 11 U.S.C. § 541(a).]

■ NO RELATED CASE IS PENDING OR HAS BEEN PENDING AT ANY TIME.

☐ THE FOLLOWING RELATED CASE(S) IS PENDING OR HAS BEEN PENDING:

1. CASE NO.:______ JUDGE:______ DISTRICT/DIVISION:______

CASE STILL PENDING (Y/N):______ [*If closed*] Date of closing:______

CURRENT STATUS OF RELATED CASE: ______________________
(Discharged/awaiting discharge, confirmed, dismissed, etc.)

MANNER IN WHICH CASES ARE RELATED *(Refer to NOTE above)*: ______________________

REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ("REAL PROPERTY") WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASE: ______

2. CASE NO.:______ JUDGE:______ DISTRICT/DIVISION:______

CASE STILL PENDING (Y/N):______ [*If closed*] Date of closing:______

CURRENT STATUS OF RELATED CASE: ______________________
(Discharged/awaiting discharge, confirmed, dismissed, etc.)

MANNER IN WHICH CASES ARE RELATED *(Refer to NOTE above)*: ______________________

REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ("REAL PROPERTY") WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASE: ______

3. CASE NO.:______ JUDGE:______ DISTRICT/DIVISION:______

CASE STILL PENDING (Y/N):______ [*If closed*] Date of closing:______

(OVER)

DISCLOSURE OF RELATED CASES (cont'd)

CURRENT STATUS OF RELATED CASE: ____________________
(Discharged/awaiting discharge, confirmed, dismissed, etc.)

MANNER IN WHICH CASES ARE RELATED *(Refer to NOTE above)*: ____________________

REAL PROPERTY LISTED IN DEBTOR'S SCHEDULE "A" ("REAL PROPERTY") WHICH WAS ALSO LISTED IN SCHEDULE "A" OF RELATED CASE: ______

*NOTE:* Pursuant to 11 U.S.C. § 109(g), certain individuals who have had prior cases dismissed within the preceding 180 days may not be eligible to be debtors. Such an individual will be required to file a statement in support of his/her eligibility to file.

TO BE COMPLETED BY DEBTOR/PETITIONER'S ATTORNEY, AS APPLICABLE:

I am admitted to practice in the Eastern District of New York (Y/N): __**Y**__

CERTIFICATION (to be signed by pro se debtor/petitioner or debtor/petitioner's attorney, as applicable):

I certify under penalty of perjury that the within bankruptcy case is not related to any case now pending or pending at any time, except as indicated elsewhere on this form.

**/s/ Karamvir Dahiya**
**Karamvir Dahiya**
Signature of Debtor's Attorney
**Dahiya Law Offices, LLC**
**75 Maiden Lane Suite 606**
**New York**
**New York, NY 10038**
**2127668000 Fax:2127668001**

Signature of Pro Se Debtor/Petitioner

Signature of Pro Se Joint Debtor/Petitioner

Mailing Address of Debtor/Petitioner

City, State, Zip Code

Area Code and Telephone Number

Failure to fully and truthfully provide all information required by the E.D.N.Y. LBR 1073-2 Statement may subject the debtor or any other petitioner and their attorney to appropriate sanctions, including without limitation conversion, the appointment of a trustee or the dismissal of the case with prejudice.

NOTE: Any change in address must be reported to the Court immediately IN WRITING. Dismissal of your petition may otherwise result.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------X
IN RE: **MARGARITA ONASSIS PARLIONAS**

Debtor(s)
--------------------------------------------X

Chapter **11**

Case No.: **23-42029**

STATEMENT PURSUANT TO LOCAL RULE 2017

I, **Karamvir Dahiya**, an attorney admitted to practice in this Court, state:

1. That I am the attorney for the above-named debtor(s) and am fully familiar with the facts herein.
2. That prior to the filing of the petition herein, my firm rendered the following services to the above-named debtor(s):

| Date\Time | Services |
|---|---|
| | Initial interview, analysis of financial condition, etc. |
| | Preparation and review of Bankruptcy petition |

3. That my firm will also represent the debtor(s) at the first meeting of creditors.
4. That all services rendered prior to the filing of the petition herein were rendered by my firm.
5. That my usual rate of compensation of bankruptcy matters of this type is $ **0.00** .

Dated: **June 14, 2023**

**/s/ Karamvir Dahiya**

**Karamvir Dahiya**
Attorney for debtor(s)
**Dahiya Law Offices, LLC**
**75 Maiden Lane Suite 606**
**New York**
**New York, NY 10038**
**2127668000 Fax:2127668001**
**karam@bankruptcypundit.com**

# EXHIBIT 4

Order Remanding Case, dated December 4, 2023 and
entered December 5, 2023
Adv. Pro. No. 23-01067-jmm, ECF No. 19

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X Chapter 11
In Re:

MARGARITA ONASSIS PARLIONAS, Case No. 1-23-42029-jmm

Debtor.
-----------------------------------------------------------------X
MARGARITA ONASSIS PARLIONAS,

Plaintiff,

-against- Adv. Case No. 1-23-01067-jmm

ATHANASIOS PARLIONAS,

Defendants.
-----------------------------------------------------------------X

**ORDER REMANDING CASE**

**WHEREAS** Athanasios Parlionas filed a motion for an Order remanding the pending divorce action, titled *Parlionas v. Parlionas*, to the Supreme Court State of New York, County of Queens, Index No. 012636/2015 (the “Divorce Action”), heretofore removed from said court **(the “State Court”) (JMM)** to this court by the Debtor [ECF No. 6], pursuant to 28 U.S.C. §1452(b) on equitable grounds and/or requesting that the Bankruptcy Court voluntarily abstain from hearing such proceeding(the “Motion”) [ECF No. 8], and

**WHEREAS**, the Court held a hearing on the Motion on September 27, 2023,

**NOW THEREFORE**, for the reasons set forth on the record of the September 27, 2023 hearing and the decision of the Court read into the record on November 20, 2023, it is hereby;

**ORDERED**, that the Motion is granted to the extent set forth herein, and it is further

**ORDERED**, that the State Court may proceed with the Divorce Action as to the

dissolution of the marriage and the establishment of domestic support obligations in the Divorce Action, and it is further

**ORDERED**, that the State Court may proceed with the Divorce Action as to the equitable distribution of the estate property, and it is further

**ORDERED**, that the trial in the Divorce Action may proceed, and it is further

**ORDERED**, that the automatic stay is hereby declared and confirmed as being in effect as to the enforcement of claims adjudicated in the Divorce Action against assets of the Bankruptcy Estate.

Dated: December 4, 2023
Brooklyn, New York

United States Bankruptcy Court ★ Eastern District of New York ★

Jil Mazer-Marino
United States Bankruptcy Judge

# EXHIBIT 5

Decision and Order (Motion Sequence No. 23),
dated January 3, 2024 and entered January 4, 2024
NYSCEF Doc. No. 837

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS: PART 63**

FILED
1/4/2024
COUNTY CLERK
QUEENS COUNTY

Present: **WILLIAM A. VISCOVICH**
Justice

Seq.: 23

Index No.: 721778/2020

**MARGARITA PARLIONAS,**

**Plaintiff,**

**- against -**

**ATHANASIOS PARLIONAS,**

**Defendant.**

**DECISION AND ORDER**

The following papers were read on this motion made by defendant, brought by Order to Show Cause dated August 19, 2022, for an order issuing a warrant for the arrest of plaintiff and for other related relief, is as follows:

| PAPERS | NUMBERED |
|---|---|
| Order to Show Cause, Affidavit & Exhibits Attached............. | E561 - 567, 578, 581, 582, 587 |
| Affirmation in Opposition & Exhibits Annexed...................... | E568 - 573 |
| *Final Order filed June 21, 2022 (Motion Sequence # 16)......* | *E461* |

Upon the foregoing papers and after multiple in person and virtual appearances at which plaintiff and her attorney appeared, then, thereafter, plaintiff *pro se* appeared, then thereafter, plaintiff and her attorney appeared, then thereafter, plaintiff appeared *pro se,* then thereafter, the matter was stayed pursuant to a bankruptcy filing and, thereafter, the issues of the dissolution of the marriage and the issue of the establishment of domestic support obligations were remanded back to this Court by Decision of the U.S. Bankruptcy Court, defendant's motion is decided as follows:

Defendant Athanasios Parlionas moves for an order granting the following relief:

1. Pursuant to the Order of this Court dated and entered June 21, 2022, issuing an Immediate warrant for the arrest and commitment for a period of incarceration of Plaintiff due to her non-compliance with said Order; and
2. Pursuant to DRL § 244 and the Order of this Court dated and entered June 21, 2022, granting Defendant a money judgment against Plaintiff for the sum of $252,500.00 inclusive of interest; and
3. Pursuant to DRL § 244 and the Order of this Court dated and entered June 21, 2022, granting Defendant's attorneys, Coffinas & Lusthaus, P.C., a money judgment against Plaintiff for the sum of $5,000.00 inclusive of interest; and
4. Granting Defendant such other and further relief as the Court deems just and proper.

This action for a judgment of divorce was commenced on October 21, 2015. Prior to the bankruptcy filing, by Final Order dated June 16, 2022, plaintiff Margarita Parlionas was adjudged in civil contempt of Court, pursuant to Judiciary Law § 772, for violating the automatic orders in this matter and transferring or dissipating a marital asset, valued at $252,500.00, out of her name during the pendency of this action. As part of that adjudication, plaintiff was fined the amount of the actual loss and attorney's fees of $5,000.00. Plaintiff was given the opportunity to purge the contempt by either paying the fine of $250.00 and counsel fees in the amount of $5,000.00 and placing $252,500.00 in her attorney's escrow account or by posting a bond in said amount. In this regard, plaintiff was also given the opportunity to demonstrate, through competent admissible evidence that she was unable to pay the attorney's fees and fine or post a bond in the amount of the fine (Judiciary Law §§ 772 and 773). At several Court appearances, a warrant for plaintiff's arrest and commitment was to be issued but, based on settlement negotiations and the belief by all parties that a resolution was at hand, no warrant was issued.

Preliminarily, the Court notes that the decision of the U.S. Bankruptcy Court of the Eastern District of New York dated October 12, 2023 (Jil Mazer-Marino, J.) remanded to this Court the issue of the dissolution of the marriage and the issue of the establishment of domestic support obligations in the Divorce Action. The Order Remanding Case further ordered that "the automatic stay is hereby declared and confirmed as being in effect as to the enforcement of claims adjudicated in the Divorce Action against assets of the Bankruptcy Estate.

The Final Order further provided that in the event plaintiff failed to timely purge herself of the civil contempt and comply with the timely payment of attorney's fees to the satisfaction of the Court, and after trial, comply with the timely payment of the fine, upon submission of an Affirmation of Non-Compliance, the Court will enter a money judgment for any amount owed and any other disposition the Court, in its discretion shall make. In this application made prior to the bankruptcy filing, defendant submits an affidavit on non-compliance stating that at no time did plaintiff make any attempt to purge or demonstrate that she was unable to purge the contempt such that she should not be incarcerated for her contumacious behavior.

In light of the Bankruptcy Court's remand such that certain issues can now move forward in this eight (8) year old divorce action, the Court must determine whether plaintiff's contemptuous conduct and the punishment therefor can proceed.

In opposition to the motion seeking the issuance of the warrant and money judgment, plaintiff argues that she has submitted adequate documentation demonstrating that she does not have the financial means to pay to defendant or deposit into her then attorney's account the sum of $252,500.00 plus $5000.00 in counsel fees. Plaintiff has filed numerous exhibits demonstrating her alleged inability to purge her contempt.

Based on the foregoing and based on plaintiff's bankruptcy filing, the motion for the issuance of a warrant of arrest and for a money judgment is denied as stayed by plaintiff's bankruptcy filing.

It is not known whether the fine of the actual loss of $252,500.00 and the related costs of $5,000.00 are included as part of plaintiff's bankruptcy estate. As the Order Remanding Case indicates that the bankruptcy automatic stay is confirmed as being in effect as to the enforcement of claims adjudicated in this action for a judgment of divorce, notwithstanding the remand of certain issues, based on the entwined nature of the contempt findings and plaintiff's bankruptcy estate, the motion is denied at this time.

This constitutes the Decision and Order of the Court.

Dated: January 3, 2024

E N T E R:

**WILLIAM A. VISCOVICH, J.S.C.**

FILED
1/4/2024
COUNTY CLERK
QUEENS COUNTY

# EXHIBIT 6

Decision and Order (Motion Sequence No. 33),
dated January 3, 2024 and entered January 4, 2024
NYSCEF Doc. No. 838

FILED
1/4/2024
COUNTY CLERK
QUEENS COUNTY

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS: PART 63**

Present: **WILLIAM A. VISCOVICH**
Justice

Seq.: 33
Index No.: 721778/2020

**MARGARITA PARLIONAS,**
**Plaintiff,**
**- against -**

**ATHANASIOS PARLIONAS,**
**Defendant.**

**DECISION AND ORDER**

The following papers were read on this motion made by defendant, brought by Order to Show Cause dated May 31, 2023, for an order terminating defendant's pendente lite support obligations, is as follows:

| PAPERS | NUMBERED |
|---|---|
| Order to Show Cause, Affidavit & Exhibits Attached............. | E762 - 770, 822 |

Upon the foregoing papers, after conferences at which plaintiff was self-represented, upon the decision of the U.S. Bankruptcy Court of the Eastern District of New York dated October 12, 2023 (Jil Mazer-Marino, J.) remanding to this Court the issue of the dissolution of the marriage and the issue of the establishment of domestic support obligations in this action, and upon plaintiff's default in opposing the motion in admissible form, defendant's motion is decided as follows:

By Order to Show Cause dated May 31, 2023, defendant Athanasios Parlionas moves for an order granting the following relief:

1. Terminating and/or suspending Defendant's pendente lite support obligations as of March 1, 2023; and
2. Directing Plaintiff to make the payments each month for the three Wells Fargo Prime Equity Lines effective March 1, 2023; and
3. Terminating and/or suspending Defendant's obligation to pay Plaintiff's automobile insurance effective March 1, 2023; and
4. Terminating and/or suspending Defendant's obligation to pay Plaintiff's health insurance coverage effective March 1, 2023; and
5. Terminating Plaintiff's exclusive occupancy of the marital residence effective March 15, 2023 at 5:00 p.m.; and
6. Awarding Defendant exclusive occupancy of the marital residence effective March 15, 2023 at 5:00 p.m.; and
7. Pursuant to 22 NYCRR § 130-1.1 (a) awarding Defendant counsel fees in the sum of $15,600.00 as Plaintiff's sanctions; and
8. Granting Defendant such other and further relief as may seem just and proper.

Pursuant to the May 31, 2023 Order, the following injunctive relief was granted:

1. Defendant's pendente lite support obligations are suspended as of March 1, 2023.
2. Plaintiff shall make the payments each month for the three Wells Fargo Prime Equity Lines as of March 1, 2023.
3. Defendant's obligation to pay Plaintiff's automobile insurance is suspended as of March 1, 2023.
4. Defendant's obligation to pay Plaintiff's health insurance is suspended as of March 1, 2023.
5. Plaintiff's exclusive occupancy of the marital residence is terminated effective March 15, 2023 at 5:00 p.m.
6. Defendant is awarded exclusive occupancy of the marital residence effective March 15, 2023 at 5:00 p.m.
7. Plaintiff shall pay to Defendant's attorney the sum of $15,600.00 as and for Defendant's counsel fees. Said payment shall be made within fourteen days.

This action for a judgment of divorce was commenced on October 21, 2015. As above stated, defendant's domestic support obligations were terminated on May 31, 2023 retroactive to March 1, 2023, based an appearance on that earlier day.

On June 7, 2023, a date after defendant's domestic support obligations were terminated, plaintiff filed a voluntary petition for bankruptcy staying this proceeding.

By decision of the U.S. Bankruptcy Court of the Eastern District of New York dated October 12, 2023 (Jil Mazer-Marino, J.), two issues were remanded to this Court: (1) the dissolution of the marriage, and (2) domestic support obligations. To the extent that the motion seeks relief related to domestic support obligations, it will be addressed herein.

Pursuant to an Order dated March 30, 2016, defendant's support obligations included making payments on behalf of and directly to plaintiff including *inter alia* temporary maintenance in the monthly amount of $2,000.00, the home equity loans which defendant claims have a combined balance of more than one million dollars, utilities and cable for the marital home, and plaintiff's automobile and health insurance.

Defendant avers that since the commencement of this action, he has lived in a modest apartment while plaintiff remained in the marital residence. Defendant claims that plaintiff has had the benefit of exclusive occupancy in the marital home during the pendency of this eight year old case, without having to pay the monthly payments for the two equity loans that encumber the home. Furthermore, defendant alleges that plaintiff set up dividers on the main floor of the home, creating additional rooms that she has rented out to various tenants. In addition, defendant contends that a business known as United Steps Therapy is operating out of the marital home. Defendant further claims that plaintiff has failed to disclose this rental income in this action. It is defendant's position that the condition of the home is in jeopardy while it remains in plaintiff's control and the condition will have a negative impact on the home's fair market value.

In addition to the termination of his domestic support obligations, defendant seeks sanctions and legal fees. Defendant contends that due to plaintiff's actions, which have extensively delayed this litigation, including her contemptuous conduct, he has been extremely prejudiced. Further, according to defendant, those actions caused him to incur substantial attorneys fees and costs.

During the course of this litigation, plaintiff has filed tens of motions and cross motions in which she submitted at least thirty affidavits. In opposition to this motion, plaintiff submitted a letter and documents. Plaintiff's submission has not been considered. Accordingly, based on the above and upon defendant's default, the motion is granted as follows:

**ORDERED** that defendant's support obligation to pay plaintiff *pendente lite* maintenance is terminated as of March 1, 2023; and

**ORDERED** that unless and until defendant is in possession of the marital residence, defendant's support obligation to pay any household utilities is terminated as of March 1, 2023; and

**ORDERED** that defendant's support obligation to make the payments each month for the three Wells Fargo Prime Equity Lines is terminated as of March 1, 2023 and plaintiff is responsible for those payments until such time as plaintiff vacates the marital residence as she was directed to do by Order dated May 31, 2023. In the event defendant is in exclusive of use and occupation of the marital residence, he is directed to pay the home equity loans on the property; and it is

**ORDERED** that defendant's support obligation to pay plaintiff's automobile insurance is terminated as of March 1, 2023; and

**ORDERED** that defendant's *pendente lite* support obligation to pay plaintiff's health insurance coverage is terminated effective March 1, 2023; and

**ORDERED** that plaintiff's exclusive occupancy of the marital residence is terminated effective March 15, 2023; and

**ORDERED** that defendant is awarded *pendente lite* exclusive use and occupancy of the marital residence effective March 15, 2023; and

**ORDERED** that defendant's motion for an award of counsel fees in the amount of $15,600.00 was granted pursuant to the May 31, 2023. Enforcement of that Order, if the amount was not paid, is stayed pursuant to plaintiff's bankruptcy filing.

This constitutes the Decision and Order of the Court.

Dated: January 3, 2024

FILED
1/4/2024
COUNTY CLERK
QUEENS COUNTY

E N T E R:

**WILLIAM A. VISCOVICH, J.S.C.**

# EXHIBIT 7

Order Converting Case to Chapter 7, entered March 18, 2024
Bankr. E.D.N.Y. Case No. 23-42029-jmm, ECF No. 95

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------X

IN RE: Chapter 11
Case No. 23-42029-jmm

MARGARITA ONASSIS PARLIONAS,

Debtor.
-----------------------------------------------X

ORDER CONVERTING CASE

Upon (i) the motion of Richard A. Klass, Esq., attorney for Creditor Athanasios Parlionas (the "Creditor") for an Order Converting the Debtor's Chapter 11 case to Chapter 7 dated December 20, 2023 (the "Motion") [ECF No. 74]; **(ii) the affirmation in opposition to the Motion [ECF No. 77] and affidavit in opposition to the Motion [ECF No. 78] of Karamvir Dahiya, attorney for Margarita Onassis Parilonas (the "Debtor"); (iii) Creditor's reply in affirmation of the Motion [ECF No. 79] (JMM)**; and upon notice of all parties [ECF No. 75];

**WHEREAS**, the Court having found that appropriate notice of the Motion was given and no other or further notice was required under the circumstances; and the Court having conducted a hearing on the Motion on March 13, 2024; and objections to the relief sought in the Motion having been overruled at the hearing; and the Court having found that cause exits for converting the Bankruptcy Case to a case under chapter 7; and the Court having found that conversion of the Bankruptcy Case is in the best interests of creditors and the estate; now therefore it is hereby,

**NOW THEREFORE**, for the reasons set forth on the record of the March 13, 2024 hearing, it is hereby

**ORDERED**, that the Bankruptcy Case is converted to cases under chapter 7 of the Bankruptcy Code pursuant to 11 U.S.C. § 1112(b); and it is further

**ORDERED**, that the United States Trustee is directed to appoint a chapter 7 trustee for the Bankruptcy Cases; and it is further

**ORDERED**, that, (i) within 14 days after the date of entry of this order, the Debtor shall file schedules of unpaid debts incurred after the filing of the petition and before conversion of the case, including the name and address of each holder of a claim, and (ii) not later than 30 days after the date of entry of this order, file and transmit to the United States trustee a final report and account; and it is further

**ORDERED**, not later than five (5) business days after the appointment of a chapter 7 trustee for the Bankruptcy Case, the Debtor shall turnover to the trustee all records and property of the estates in her possession and provide an accounting of all property held by or any behalf of the Debtor since the petition date.

Dated: March 18, 2024
Brooklyn, New York

United States Bankruptcy Court
Eastern District of New York

Jil Mazer-Marino
United States Bankruptcy Judge

# EXHIBIT 8

Certified Transcript of Proceedings, May 18, 2026
Supreme Court, Queens County, Part 63
Index No. 721778/2020

COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS : CIVIL TERM : PART 63

-----------------------------------------X

MARGARITA PARLIONAS,

Plaintiff,

Index No. 721778/2020

-against-

BENCH TRIAL

ATHANASIOS PARLIONAS,

Defendant.

-----------------------------------------X

Supreme Courthouse
88-11 Sutphin Boulevard
Jamaica, New York 11435
May 18, 2026

B E F O R E:

THE HONORABLE WILLIAM A. VISCOVICH,

SUPREME COURT JUSTICE

A P P E A R A N C E S:

For the Plaintiff:
MARGARITA PARLIONAS
11 The Hemlocks
Roslyn, New York 11576
BY: MARGARITA PARLIONAS (PRO SE)

For the Defendant:
COFFINAS & LUSTHAUS, P.C.
186 Joralemon Street, Ste 701
Brooklyn, New York 11201
BY: MARIA COFFINAS, ESQ.

MONICA JENKINS
SENIOR COURT REPORTER

THE CLERK: All rise. Queens Supreme Court Part 63 is now in session with the Honorable William A. Viscovich presiding.

This is a continued trial on Index Number 721778 of 2020, Margarita Parlionas versus Athanasios Parlionas. Let the record show that plaintiff is pro se.

Counsel your appearance for the record?

MS. COFFINAS: Maria Coffinas of Coffinas & Lusthaus, 186 Joralemon Street, Brooklyn, New York representing Defendant Athanasios Parlionas.

Good afternoon.

THE CLERK: Party's, please raise your right hand. Do you solemnly swear or affirm to tell the truth, the whole truth and nothing but the truth?

MRS. PARLIONAS: I do.

MR. PARLIONAS: Yes, I do.

THE CLERK: Starting with plaintiff, please state your full name and address in a loud and clear voice for the record?

MRS. PARLIONAS: Margarita Parlionas, 11 The Hemlocks, Roslyn.

THE CLERK: Your zip code?

MRS. PARLIONAS: 115 something, I don't remember.

THE CLERK: Your full name and address for the record?

MR. PARLIONAS: Athanasios Parlionas, 154-63 Powells Cove Blvd, Whitestone, New York 11357.

THE CLERK: Thank you. You maybe seated.

THE COURT: Okay. Real quickly. Just as a matter of housekeeping. I believe I made a finding of contempt against Mrs. Parlionas in this matter, correct?

MS. COFFINAS: You did, Your Honor.

THE COURT: Has that contempt with cured or purged yet?

MS. COFFINAS: It has not.

THE COURT: What's your client's position on that?

MRS. PARLIONAS: It's been held at the bankruptcy court, Your Honor.

MR. PARLIONAS: I'm looking to stand with the Court.

MS. COFFINAS: Judge, my client is relying on the Court, whatever the Court decides.

THE COURT: How much does she owe, what was the judgment for, what was the amount?

MS. COFFINAS: Your Honor, found the value of Yoyo Lip Gloss, the plaintiff's interest in it to be $252,500 and you had ordered that that amount be restored and it was not, no part of that amount was restored.

THE COURT: Have you filed an Affidavit of Non-Compliance?

MS. COFFINAS: Your Honor, I can't recall if I did or not to be honest with you. There were further proceedings.

There was even a point where Your Honor had indicated that --

THE COURT: I'm pretty sure you did. I can't remember everything going on. Please see if you did. And I will consider incarceration or judgment on the next date.

Mrs. Parlionas I want you to be aware of what may happen. You have been found to be in contempt in this matter.

The Court ordered you to return $250,000 to at least be in escrow or a trust account. It's been at least a year now as far as I can remember.

That why I do not remember the specifics off the stop of my head. But quite frankly it's gone on long enough.

Quite frankly there's probably very little, um, there's probably very little value in filing, entering a judgment against you for $252,000 because you have declared bankruptcy.

You may wind up getting that judgment discharged. As such, my only alternative maybe to have you incarcerated. So, depending on what's going on Mrs. Parlionas, you should be prepared at some future date once

I reviewed the paper to be incarcerated.

Do you understand that, yes or no, without having a discussion?

MRS. PARLIONAS: I understand absolutely.

THE COURT: Unless the bankruptcy court, if you can show me an order where the bankruptcy court stayed my contempt proceedings, you may very well be incarcerated shortly.

MRS. PARLIONAS: If Your Honor remembers they did and Ms. Coffinas told this Court that it was held in the bankruptcy court.

Is that correct, Ms. Coffinas?

THE COURT: Do you know if the bankruptcy court has in any way, shape or form or any other court of higher jurisdiction in any way, shape or form stayed my contempt order and my ability to move on it?

MS. COFFINAS: I'm not aware of that, Your Honor.

THE COURT: Just so you know, if I recall, the only reason I did not lock up Mrs. Parlionas earlier is because her husband did not want her locked up.

That is what I remember.

MS. COFFINAS: That is correct. There was an initial stay issued when Mrs. Parlionas first filed the bankruptcy.

To my knowledge, there is no order currently in

effect which prevents the Court from following through with the contempt finding.

THE COURT: Has the stay been lifted?

MS. COFFINAS: As far as I know, yes.

THE COURT: You will confirm that?

MS. COFFINAS: I will confirm that.

THE COURT: Mrs. Parlionas, I'm going to say it again --

MRS. PARLIONAS: If I may say something.

THE COURT: No you may not. You're already in contempt. I already didn't lock you up once because your husband didn't want you locked up.

MRS. PARLIONAS: That's not true, Your Honor.

THE COURT: The second time the Court stayed it. I am telling you now, Mrs. Parlionas, if the Court did not stay further my contempt ruling in some form, you will be getting locked up.

MRS. PARLIONAS: Yes. I understand. I will be more than happy to surrender. I am in bankruptcy court, Your Honor, you already know and I can't --

THE COURT: Mrs. Parlionas, I don't think you understand because I have tried to explain things to you throughout these proceedings.

Okay. And you continue to go on with what you want me to hear. I know what you want me to hear but the

only official thing I have right now is that I have found you in contempt.

I ordered you to take certain actions. You haven't taken them. So, this Court reserves the right, once it's all clarified, to issue an order of incarceration for up to 6 months.

We will bring you back every couple months before that to see if you purged the contempt, if not, you maybe incarcerated again for a further period of time.

I want you to understand that because I want it to be on the record very clearly that, again, this Court has warned you and again, this Court has warned you that the lack of being incarcerated is only through quite frankly the patience of this Court, the desire of your husband to not lock you up and finally there was a stay at some point in these proceedings.

Apparently your husband is no longer taking a position that I should not lock you up. I'm being told that there's no longer a stay in effect but we're going to confirm that because if there is, I would not dare lock you up.

Now, it is becoming more and more my sole discretion on what I want to do. Entering a judgment of you against you for the amount in question will apparently do nothing other than would result in more delay.

So, I'm being left more and more, as much as I tried to avoid it, I'm being left more and more with only one option and the day of reckoning on that option is coming.

Ms. Coffinas, I'm going to ask you to confirm. I'll check the records as well. I'll ask you to confirm if you can by tomorrow, whether or not there is a stay on my order from the bankruptcy court.

And B, whether you filed an Affidavit of Non-Compliance. I believe you did.

MS. COFFINAS: I think so.

THE COURT: But I want to confirm. I will check my paperwork as well. Mr. Parlionas, please take the stand.

(Whereupon, the witness took the stand.)

Mrs. Parlionas, if you want to say anything before you start questioning?

MRS. PARLIONAS: Yes, I do, Your Honor. First of all, the bankruptcy court reading your order and everything you said about Yoyo Lip Gloss has confirmed that it's only 25 percent.

I'm trying to write a motion, to get somebody to write a motion on it.

THE COURT: Mrs. Parlionas, they have law libraries in prison.

MRS. PARLIONAS: That's fine but I'm telling you that the bankruptcy court has affirmed that the Yoyo Lip Gloss and what MSG said was totally wrong.

It's 25 percent. It's docket 209. I filed it in this court.

THE COURT: Can you bring it to me in writing tomorrow, you can bring a copy no problem. We will consider it.

MRS. PARLIONAS: I'll bring you a copy, Your Honor. It's in the court.

THE COURT: Mrs. Parlionas, I'm now very serious, very serious --

MRS. PARLIONAS: I don't have the money to pay it because I'm in bankruptcy.

THE COURT: Mrs. Parlionas, then you will remain in jail until you pay it.

MRS. PARLIONAS: I have been threatened for three years. I don't know what to tell you. I don't have money.

THE COURT: Ma'am, again, you haven't been threatened for three years.

MRS. PARLIONAS: Three years.

THE COURT: It's been held off for three years. The threat is not a threat. It's an issue of law. You have been found to be in contempt.

This Court has held back on the incarceration because it does very little good to lock people up. However, there is a place and time for everything.

And I would say to you that that place is going to be here and that time is quickly approaching. Start asking questions.

MRS. PARLIONAS: I just want to be clear, you want me to bring the paperwork from the bankruptcy tomorrow, Sir?

THE COURT: Ma'am, again, I would like to see evidence that my ruling and my remedy on the contempt has been stayed.

And Ma'am, even if, let me explain something to you, even if there is some sort of determination that binds me. For instance, that it's $250,000 instead of, that its 125 instead of 250, okay, then I will reduce the purge amount to 125 instead of 250.

Okay. So I hope you have 125.

MRS. PARLIONAS: I don't have nothing.

THE COURT: Go ahead. Let's go.

MRS. PARLIONAS: I have nothing. Your Honor, the last time I was in this court Mr. Parlionas and Ms. Coffinas was unable to be here.

I'm talking about Motion Number 36 that was granted. I just want to go through some of the stuff that

was stayed.

MS. COFFINAS: I don't know what Mrs. Parlionas is referring to.

THE COURT: He's your witness. He's your witness. Ask him questions or introduce evidence.

MS. COFFINAS: I just want the record to reflect, Your Honor, that I've been here at every single court appearance since the commencement of this case.

MRS. PARLIONAS: Ms. Coffinas, I'm sorry, one time you weren't when I put this motion forward.

THE COURT: Mrs. Parlionas, ask a question.

DIRECT-EXAMINATION

BY MRS. PARLIONAS:

Q Mr. Parlionas, how much life insurances do you have?

A Right now one and that's borrowing to pay the state charges.

Q And the other one, Sir?

A They were cancelled. They were term insurance after 20 years they died.

Q The third one, Sir?

A Excuse me?

Q The third one?

A The third one, it was for $250,000 and is still active but we borrow on that 200 to pay the state and now it's minus.

Q And how much --

THE COURT: Now it's what?

THE WITNESS: Minus.

Q And how much is in there, it's minus 200, the one that but your son repaid that for you, the 300,000, didn't he?

MS. COFFINAS: Objection.

THE COURT: What's your objection?

MS. COFFINAS: The question doesn't make sense.

THE COURT: Sustained.

Q Did you sign the paperwork for the social security office, Sir?

THE COURT: What paperwork, Ma'am?

MRS. PARLIONAS: For Motion 36?

MS. COFFINAS: Objection. I don't know -- again, that question doesn't make sense.

THE COURT: Is there a Sequence 36, Glenda? Has it been decided? Let's see if there's a Sequence 36. Apparently Motion 36 was decided.

There's a decision somewhere. Let's see what it is. You have a copy of the decision, Mrs. Parlionas?

MRS. PARLIONAS: No, I don't, Your Honor. I just went on your word that day. I didn't look or do anything. I'm sorry.

THE COURT: Motion Number 36 is still pending but I haven't signed it yet. You have a copy?

MRS. PARLIONAS: When I was here that day, Your

Honor, you said you were going to sign it. I never questioned that you weren't.

I sent the paperwork to Ms. Coffinas email and I think I and I followed up with a text message, with an email hoping that my children were okay.

THE COURT: Off the record.

(Whereupon a discussion was held off the record.)

THE COURT: Sir, you are going to cooperate to make sure she gets her social security benefits?

MS. COFFINAS: Can we just ask Mr. Parlionas in what name he receives his social security payment because if he receives, if he receives --

THE COURT: He's got to confirm. He has to do what social security, whatever it takes for them to believe and understand she's the wife and she gets certain benefits.

I don't know what they want. I can't solve every problem. They'll have to go down to social security and do what has to be done.

I can't tell them how to do, when to do. Go down to social security find out what needs to be done. Make sure she gets her benefits.

MRS. PARLIONAS: Your Honor, I'm also -- Your Honor, I'm also going to --

THE COURT: I want to clarify Motion 36 was never

officially decided. There is a proposed order. The Court will review the proposed order today.

Basically it's compliance with the automatic orders, do not transfer life insurance policies and cooperate so that Mrs. Parlionas can get her share of the marital social security payments. Now what Mrs. Parlionas?

MRS. PARLIONAS: Your Honor, I may also need something written from you because there are other things that I have to do.

THE COURT: Mrs. Parlionas, I will give you whatever is appropriate in writing at the end of this trial.

I am not in the business of doing letters of recommendation or letters of reference or anything like that.

MRS. PARLIONAS: No. No. It's just.

THE COURT: Bring a motion.

MRS. PARLIONAS: It's in there, Your Honor.

THE COURT: Bring a motion. Go.

MRS. PARLIONAS: It's in there.

THE COURT: Ask a question, Mrs. Parlionas.

MRS. PARLIONAS: Thank you.

Q So, Mr. Parlionas, am I your beneficiary on your life insurances?

A Yes.

MS. COFFINAS: Objection.

THE COURT: Overruled.

MS. COFFINAS: She's asking about life insurances. The testimony was there's only one.

THE COURT: Are we talking about life insurance policies, Ma'am?

MRS. PARLIONAS: Yes, Sir.

THE COURT: Is she the named beneficiary on all your life insurance policies, Sir?

THE WITNESS: Yes.

THE COURT: Have you changed her name at all or removed her name at all?

THE WITNESS: No.

THE COURT: Okay. Go ahead.

Q Mr. Parlionas, I'm going to show you, this is a brokerage --

THE COURT: You know what, I have to get my staff out of here. I'm sorry. We'll continue this tomorrow. Mrs. Parlionas, one thing I'm going to insist and I want this on the record.

You have to be prepared. This Court cannot sit here and wait for you five minutes between every question trying to find what paper you want to talk about.

And this Court is going to consider having you pay part of Mr. Parlionas' legal fees just because every

question seems to be on a 5-minute break and explanation where I have to try to assist you with something so we get something done.

We cannot proceed this way forever. If you do not improve the manner in which you're asking questions, if you do not pick up the tempo or if I detect you are unprepared, I reserve the right to perhaps take over some of the questions to try to get to the points you're trying to make but I'm going to take over to try to make these things quicker.

We'll see everyone tomorrow 2:00. Please be here at 2. Thank you. Bye bye.

(Whereupon, the trial was adjourned to Tuesday, May 19, 2026 at 2:00 p.m.)

# EXHIBIT 9

Certified Transcript of Proceedings, May 19, 2026
Supreme Court, Queens County, Part 63
Index No. 721778/2020

COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS : CIVIL TERM : PART 63
-----------------------------------------X
MARGARITA PARLIONAS,

Index No. 721778/2020

Plaintiff,

-against-

BENCH TRIAL

ATHANASIOS PARLIONAS,

Defendant.
-----------------------------------------X

Supreme Courthouse
88-11 Sutphin Boulevard
Jamaica, New York 11435
May 19, 2026

B E F O R E:

THE HONORABLE WILLIAM A. VISCOVICH,

SUPREME COURT JUSTICE

A P P E A R A N C E S:

For the Plaintiff:
MARGARITA PARLIONAS
11 The Hemlocks
Roslyn, New York 11576
BY: MARGARITA PARLIONAS (PRO SE)

For the Defendant:
COFFINAS & LUSTHAUS, P.C.
186 Joralemon Street, Ste 701
Brooklyn, New York 11201
BY: MARIA COFFINAS, ESQ.

MONICA JENKINS
SENIOR COURT REPORTER

THE CLERK: All rise. Queens Supreme Court Part 63 is now in session with the Honorable William Viscovich presiding.

This is a continued trial on Index Number 721778 of 2020, Margarita Parlionas versus Athanasios Parlionas. The Court is back on the record and all appearances remain the same.

Party's please raise your right hand. Do you solemnly swear to tell the truth, the whole truth and nothing but the truth?

MR. PARLIONAS: Yes, I do.

MRS. PARLIONAS: I do.

THE CLERK: Thank you. You maybe seated.

THE COURT: Okay. Just a little housekeeping quickly. We're not proceeding today on anything regarding the contempt motion or the contempt finding as the Court has chosen to appoint Mr. Terrence Worms as attorney for Mrs. Parlionas on this issue.

Mr. Worms needs some time to look at the records, review the file, etcetera. The Court is much more comfortable if it's going to incarcerate somebody, the Court really prefers they have an attorney and has been informed of the issue.

We don't want any surprises. We want to make sure if we're going to do that, that everything is going to be

done by the book.

As such, any movement on the contempt issue is going to be slowed until at least allowing Mr. Worms to obtain necessary information.

With that said, he does not represent her on any of the other issues in this matter. So, the trial will continue and the dates have been given.

First of all, we'll be here today. We'll be here tomorrow afternoon. We'll be here Thursday afternoon. So that's three days this week.

Then the matter -- please write this down, Mrs. Parlionas.

MS. COFFINAS: She was handed the dates.

THE COURT: I understand you have been handed in writing the following dates of the trial: August 10th, August 12, 2:00 to 4:30.

MRS. PARLIONAS: 10/12, Your Honor?

THE COURT: Yes.

MS. COFFINAS: August 10th, 11th and 12th?

THE COURT: August 10th, 11th and 12th 2026, 2:00 to 4:30. August 17th and August 18th, 2:00 to 4:30. August 24th, August 25th, August 26th and August 27th 2:00 to 4:30.

Do you understand that, Mrs. Parlionas?

MRS. PARLIONAS: I understand. I have to rewrite

them then. I'm sorry. This is like, every time I come here I'm in total confusion because it's brought up the contempt every time so I'm like, I didn't understand.

So, I'm looking for a pen now. I'm looking for --

THE COURT: Mrs. Parlionas, I told you yesterday if you did not come to court prepared --

MRS. PARLIONAS: I'm prepared.

THE COURT: I'll have to take appropriate action. A pen is the most basic thing you can be prepared with.

MRS. PARLIONAS: I was, Your Honor. Every time I come here I'm emotionally stressed. It's like, okay, I understand.

Thank you so much. I appreciate that, Ma'am. I almost feel like they don't want this trial to continue or I don't know.

I just don't understand it and I didn't understand why I had an attorney. If you can explain it to me, Your Honor?

THE COURT: Mrs. Parlionas, I appointed you an attorney because you may get locked up. Before I lock anybody up I want to make sure that they have legal counsel, competent legal counsel who is explaining the possibilities to them, explaining possible defenses to them, advising them on what the right move might be for their own benefit on that issue.

I can't make it any clearer than that. That is why you have an attorney. If you have any further questions, you can talk to Mr. Worms.

Mr. Parlionas, take the stand.

(Whereupon, the witness took the stand.)

MRS. PARLIONAS: Will this attorney be looking at my forensics of everything of this contempt charge?

THE COURT: He does not represent you on the divorce. He only -- Ma'am, you wanted an explanation and I'm giving it to you.

You will not speak over me. He only represents you on the issue of the contempt. He will have access to anything he deems necessary to defend you properly on that contempt.

MRS. PARLIONAS: He'll have a chance to go through all the records?

THE COURT: Ma'am, that's why we're doing it perhaps in August and not this week because I just appointed Mr. Worms today.

I want to give him time to gather the materials that are necessary for him to conduct a proper defense on your behalf.

No more discussion of the contempt today. Mr. Worms is not here. You are represented on that issue. I will not address that issue anymore without your attorney

being here.

Go head. Next question.

MRS. PARLIONAS: May I address the court for what my bankruptcy attorney said?

THE COURT: No. No. No. No. You may ask Mr. Parlionas questions.

MRS. PARLIONAS: Okay. So now I have to go find --

THE COURT: Mrs. Parlionas, I told you to be ready.

MRS. PARLIONAS: Your Honor, please, I come here and I'm automatically put in jail all the time. I'm totally stressed right now.

THE COURT: First of all, you've never been put in jail yet because this Court has tried not to do it but now we're getting close which is why I appointed an attorney.

MRS. PARLIONAS: I wish you could give me an attorney for this, Your Honor. I don't have the money.

THE COURT: Mrs. Parlionas, you had attorney's on this case, I believe, according to the bankruptcy that you keep talking about.

They're both listed as creditors. You owe them money or allegedly owe them money. You had attorney's on this case, Ma'am.

MRS. PARLIONAS: Maybe I should give in some

evidence. May I proceed in giving exhibits?

THE COURT: Ma'am, you do what you got to do.

MRS. PARLIONAS: Thank you. Your Honor, I move to admit Exhibit 822 in evidence. This exhibit consists of trial proceedings dated March 1, 2023.

THE COURT: What are we up to in terms of ID?

MRS. PARLIONAS: I backtracked everything, Your Honor. I had to do it again, yeah. This one is pretty much in order, Ma'am.

MS. COFFINAS: Um, Your Honor, the exhibits thus far put in by plaintiff are out off sequential order. So, the records can be very muddled by way of these exhibits that she's putting in evidence.

MRS. PARLIONAS: I was asked to start from 795 by Mr. Ken and that's exactly what I'm doing.

THE COURT: This will be marked as Plaintiff's 795?

MRS. PARLIONAS: No, sir because we have given in other exhibits also.

THE COURT: So what number are you up to, Ma'am?

MRS. PARLIONAS: I'm going to start now with these exhibits which is 822. I didn't -- nobody told me I have to give them in order. I didn't know this.

I went, Mr. Sipsis (ph) has given all his stuff that he did. I had to go around Mr. Sipsis, renumber all

my exhibits and now I'm just doing what I was told.

THE COURT: What number do you have, Mrs. Parlionas?

MRS. PARLIONAS: I am so sorry, Your Honor, what was this?

THE COURT: What number do you have this as?

MRS. PARLIONAS: Right now it's 822.

THE COURT: Mark it 822 for ID. That's only for identification.

(Whereupon, the document was marked for identification as Plaintiff's Exhibit 822.)

COURT OFFICER: Plaintiff's 822 has been marked for identification.

MS. COFFINAS: May I see it? Your Honor, to speed this along I have no objection. It's a transcript of this proceeding dated March 1, 2023.

THE COURT: You want it in evidence, Mrs. Parlionas?

MRS. PARLIONAS: Yes, please, Your Honor.

THE COURT: Okay. 822 in evidence and is a transcript. Is there a, what's the date of the transcript?

MS. COFFINAS: March 1, 2023.

THE COURT: March 1, 2023, okay. That's how we are ID'g it in evidence.

(Whereupon, the document was marked in evidence as

Plaintiff's Exhibit 822.)

COURT OFFICER: Plaintiff 822 received in evidence.

MRS. PARLIONAS: Can I continue? I would like to move in evidence, Your Honor, Exhibit 823.

THE COURT: ID first, 823 for ID.

(Whereupon, the document was marked for identification as Plaintiff's Exhibit 823.)

COURT OFFICER: Plaintiff's 823 marked for ID.

MRS. PARLIONAS: I would like to move in evidence.

THE COURT: Hold on.

MS. COFFINAS: Your Honor, I have no objection. This is a transcript in these proceedings held on May 31, 2023.

THE COURT: May 31st transcript in evidence, 823, Plaintiff's 823, go ahead.

COURT OFFICER: Plaintiff's 823 marked and received in evidence.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 823.)

THE COURT: Next, Mrs. Parlionas, how many of these do you have?

MRS. PARLIONAS: How many? I have plenty. I have a whole -- so we can move things along.

THE COURT: What are they?

MRS. PARLIONAS: These are all transcripts at one point or another. I'm going to be using them in questioning either today, tomorrow or the next day.

THE COURT: Go ahead.

MRS. PARLIONAS: Exhibit, sorry, I'm going to be going backwards. 819, this is a transcript with John Sipsis (ph) trial proceeding dated September 23rd.

THE COURT: Transcript of John Sipsis (ph).

(Whereupon, the document was marked for identification as Plaintiff's Exhibit 819.)

COURT OFFICER: Plaintiff's 819 marked for ID.

THE COURT: What's the date of this transcript for ID?

MS. COFFINAS: September 23, 2022, it's a transcript.

THE COURT: No objection. In evidence.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 819.)

COURT OFFICER: Plaintiff's 819 marked and received in evidence.

MRS. PARLIONAS: Exhibit 818, this is a trail transcript with Mr. Sipsis September 20, 20th.

MS. COFFINAS: I have no objection. This is a transcript in this proceeding dated September 20, 2022.

THE COURT: What number is that, Ma'am, did you

say? 818 in evidence.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 818.)

COURT OFFICER: Plaintiff 818 marked and received in evidence.

MRS. PARLIONAS: Exhibit 813, move to move this in evidence, Your Honor. This is a transcript.

THE COURT: 813 for identification, what is it?

MRS. PARLIONAS: This is a transcript of August 14, 2024, testimony of Mr. Parlionas.

THE COURT: Please show it to Ms. Coffinas.

MS. COFFINAS: Your Honor, no objection. This is a transcript in these proceedings dated August 14, 2024.

THE COURT: In evidence.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 813.)

COURT OFFICER: 813 marked and received in evidence.

MRS. PARLIONAS: May I give in evidence tax returns that were never given by Mr. Sipsis?

THE COURT: Please identify them and what number do you want them to be?

MRS. PARLIONAS: This is a tax return. I'd like to put into evidence Exhibit 918.

THE COURT: 918 for identification.

MRS. PARLIONAS: I'm sorry, 915, Your Honor, my eyes.

THE COURT: 915 for identification. What tax return, what year?

MS. COFFINAS: This is 915.

THE COURT: Whose tax returns are they?

MS. COFFINAS: You can't read this document.

MRS. PARLIONAS: I will redo this one.

THE COURT: Are we marking it for ID, Mrs. Parlionas, are we marking 915?

MRS. PARLIONAS: No. I'm going to reprint them and bring them, Your Honor. It's very, very light.

THE COURT: She can take it back, 915, do it tomorrow.

MS. COFFINAS: I'm not going to take it because I can't read it.

MRS. PARLIONAS: Okay. 916, 916 for ID.

THE COURT: If it's not readable let's not waist time.

MRS. PARLIONAS: It's not readable. I'll redo it. So sorry. 884, tax return.

THE COURT: What number?

MRS. PARLIONAS: 884.

THE COURT: Make sure we don't have another 884, 884 for ID.

(Whereupon, the document was marked for identification as Plaintiff's Exhibit 884.)

COURT OFFICER: Plaintiff's 884 marked for ID.

THE COURT: What is it exactly?

MS. COFFINAS: I need a moment please.

THE COURT: We have to ID it. What is it, Mrs. Parlionas?

MRS. PARLIONAS: It's a tax return.

THE COURT: Whose tax return?

MS. COFFINAS: This is the state, federal tax return for Athanasios Parlionas, Margarita Vekrakos, that's Vekrakos V-E-K-R-A-K-O-S.

THE COURT: What year, Counsel?

MS. COFFINAS: 2010.

THE COURT: 2010. Any objection?

MS. COFFINAS: No objection.

THE COURT: 2010 tax return for the party's, correct, joint tax return?

MS. COFFINAS: I would ask that Mrs. Parlionas acknowledge the name on this tax return is associated with her?

THE COURT: What is the name?

MS. COFFINAS: Vekrakos.

MRS. PARLIONAS: That is my maiden name, Your Honor.

THE COURT: 2010 tax return of the party's in evidence, whatever the number is.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 884.)

COURT OFFICER: Plaintiff 884 marked and received in evidence.

MRS. PARLIONAS: Exhibit 885, the tax return for 2011 of Athanasios Parlionas, Margarita Vekrakos.

THE COURT: Who again?

MRS. PARLIONAS: Margarita Vekrakos, yes, that's my maiden name, Your Honor.

THE COURT: 885, any objection, Ms. Coffinas?

MS. COFFINAS: No objection. Um, just note it's the federal tax return.

THE COURT: Federal tax return. What year?

MS. COFFINAS: 2011.

THE COURT: Federal tax return 2011, 885 in evidence. Go ahead.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 885.)

COURT OFFICER: Plaintiff's Exhibit 885 in evidence.

THE COURT: Take a break. Anybody have to use the bathroom, go use it. Mrs. Parlionas, if you don't have to go to the bathroom, please keep up with your paperwork so

we can keep this thing going.

(Whereupon, a recess was taken.)

THE COURT: We're back on the record. Continue, Mrs. Parlionas.

MRS. PARLIONAS: Exhibit 886.

THE COURT: For identification.

MRS. PARLIONAS: It's 2012 US individual income tax return Margarita, Athanasios and Margarita Vekrakos.

THE COURT: Any objection, Ms. Coffinas?

MS. COFFINAS: Your Honor, this is the federal tax return. No objection. It's for year 2012.

THE COURT: In evidence.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 886.)

COURT OFFICER: Plaintiff's 886 in evidence.

THE COURT: Next Mrs. Parlionas.

MRS. PARLIONAS: Exhibit 887, Athanasios and Margarita Vekrakos 2013.

MS. COFFINAS: Federals, Your Honor, no objection. It's the federal return.

THE COURT: Federal return in evidence.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 887.)

COURT OFFICER: Plaintiff's Exhibit 887 marked and received in evidence.

MRS. PARLIONAS: Exhibit 888.
THE COURT: For ID.
MRS. PARLIONAS: Federal income taxes for Margarita Vekrakos and Athanasios Parlionas.
THE COURT: Federal or federal and state?
MS. COFFINAS: Federal only, Your Honor, 2014.
THE COURT: Any objection?
MS. COFFINAS: No objection.
THE COURT: In evidence.
(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 888.)
COURT OFFICER: Plaintiff's 888 marked and received in evidence.
MRS. PARLIONAS: Exhibit 889, 2015 Athanasios Parlionas.
THE COURT: For identification.
MS. COFFINAS: I need a moment, Your Honor, please. No objection.
THE COURT: In evidence.
MS. COFFINAS: This is the federal tax return of Mr. Parlionas, 2015.
THE COURT: Joint or?
MS. COFFINAS: No, individual.
THE COURT: Okay.
(Whereupon, the document was marked in evidence as

Plaintiff's Exhibit 889.)

COURT OFFICER: Plaintiff's Exhibit 889 marked and received in evidence.

THE COURT: Anything else, Mrs. Parlionas?

MRS. PARLIONAS: Yup. Exhibit 890 Athanasios Parlionas 2016.

THE COURT: For identification.

MS. COFFINAS: No objection, is the federal tax return for Mr. Parlionas, individual return for 2016.

THE COURT: Individual return 2016 defendant in evidence.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 890.)

COURT OFFICER: Plaintiff's 890 marked and received in evidence.

MRS. PARLIONAS: Exhibit 891, 2017 Athanasios Parlionas.

THE COURT: For ID.

MS. COFFINAS: No objection. This is Mr. Parlionas federal tax return for the year 2017.

THE COURT: In evidence.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 891.)

COURT OFFICER: Plaintiff's 891 in evidence.

MRS. PARLIONAS: Exhibit 892, 2018 Athanasios

Parlionas.

THE COURT: For identification.

GRAND JUROR: On consent, Your Honor, for 2018 the federal return.

THE COURT: In evidence.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 892.)

COURT OFFICER: Plaintiff's 892 in evidence.

MRS. PARLIONAS: Exhibit 893, Athanasios Parlionas, 2019.

MS. COFFINAS: I have no objection. This is Mr. Parlionas's federal tax return for the year 2019.

THE COURT: In evidence.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 893.)

COURT OFFICER: Plaintiff's 893 marked and received in evidence.

MRS. PARLIONAS: Exhibit 894, 2020 Athanasios Parlionas.

THE COURT: Tax return in evidence.

MS. COFFINAS: No objection it's the federal tax return for 2020.

THE COURT: 2020 federal tax return in evidence plaintiff's.

(Whereupon, the document was marked in evidence as

Plaintiff's Exhibit 894.)

COURT OFFICER: Plaintiff's 894 marked and received in evidence.

MRS. PARLIONAS: Exhibit 896.

THE COURT: 896 for ID. Can we identify that please, Mrs. Parlionas?

MS. COFFINAS: I want to identify what this exhibit is. I don't object to it being admitted in evidence but it consists of the following:

Modern Contracting Inc W-2 wage statement issued to Athanasios Parlionas for the year 2015. C&J Sheet metal Corp W-2 wage statement issued to Athanasios Parlionas for the year 2015.

C&J Sheet Metal Corp W-2 wage statement issued to Athanasios Parlionas for the year 2016. Modern Contracting Inc W-2 wage statement issued to Athanasios Parlionas for the year 2016.

CAJ Construction Corp 1099 issued to Athanasios Parlionas for the year 2020. CAJ Construction Corp 1099 for the year 2019 issued to Athanasios Parlionas.

CAJ Construction Corp 1099 issued to Athanasios Parlionas for the year 2018.

THE COURT: Any objection?

MS. COFFINAS: No objection.

THE COURT: In evidence.

(Whereupon, the documents were marked in evidence as Plaintiff's Exhibit 896.)

COURT OFFICER: Plaintiff's 896 received in evidence.

THE COURT: Mrs. Parlionas, anything else?

MRS. PARLIONAS: That's it.

THE COURT: Next question.

MRS. PARLIONAS: Exhibit 999, it is affidavit of Athanasios Parlionas.

THE COURT: Is it in evidence already?

MRS. PARLIONAS: Well, it's um, Ms. Coffinas has filed it.

THE COURT: I'm asking you if it's in evidence already?

MRS. PARLIONAS: No, it's not.

THE COURT: I thought you were done with your evidentiary stuff? Mrs. Parlionas, I thought you were done?

MRS. PARLIONAS: We're going to question Mr. Parlionas now with this.

THE COURT: Okay.

MRS. PARLIONAS: I'm going to hand this to Ms. Coffinas.

THE COURT: I'm asking you now, is this document that you are using in evidence, I just need to know?

MRS. PARLIONAS: Okay.

THE COURT: What number would it be?

MRS. PARLIONAS: This is Exhibit 999. This --

THE COURT: Wait. Can we first see, Officer, if there is a 999 either for identification or in evidence?

COURT OFFICER: There is not.

MRS. PARLIONAS: So this exhibit consist of an affidavit of Mr. Parlionas --

THE COURT: Do you want it ID'd first?

MRS. PARLIONAS: Yes, I do.

THE COURT: Please, is it the whole binder?

MRS. PARLIONAS: The whole binder, Sir.

THE COURT: Let my court officer and my court reporter do what they have to do and we'll take it from there.

This is Exhibit 999 for identification.

(Whereupon, the document was marked for identification as Plaintiff's Exhibit 999.)

COURT OFFICER: Plaintiff 999 marked for identification.

THE COURT: Now, can you give me a short version of what 999 is, Mrs. Parlionas and then I'll ask Ms. Coffinas if she has any objection.

MRS. PARLIONAS: This exhibit consist of an affidavit of Mr. Parlionas in opposition to Sequel 1.

THE COURT: What is the date?

MRS. PARLIONAS: It was signed January 19, 2016.

THE COURT: Okay. Hold on. Identify this, please, as affidavit of defendant, what date?

MRS. PARLIONAS: January 19, 2016.

THE COURT: January 19th Sequence 1 or Motion Sequence 1, MS 1. Okay. Now, let Ms. Coffinas exam it to see if she is objecting to it or not.

MS. COFFINAS: I have no objection.

THE COURT: In evidence.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 999.)

COURT OFFICER: Plaintiff 999 marked and received in evidence.

MRS. PARLIONAS: Can we give it to Mr. Parlionas, please?

THE COURT: Can you please show the witness number 999. Go ahead, Mrs. Parlionas.

DIRECT-EXAMINATION

BY MRS. PARLIONAS:

Q Mr. Parlionas, can you open to Page 1.

A I did.

Q It says on the top Athanasios Parlionas being duly sworn deposes and says?

A Yeah.

Q Would you like me to read it or can I come a little closer?

A You didn't ask me.

Q Would you like me to read it or would you like to read your affidavit, Sir?

THE COURT: Hold on. Hold on. Hold on. We're not going to read the whole affidavit. Is there something in there you wish to question him about?

Please point it out to him. Let's get some stuff out of the way. Mr. Parlionas?

THE WITNESS: Yes.

THE COURT: Is that your signature at the end of that affidavit?

THE WITNESS: I didn't go to the end, Your Honor.

THE COURT: Please take a look.

Q After Page 10.

A After Page 10 you say?

Q Yes. Says Mrs. Maria Coffinas and your signature right on top of that?

A That's my signature, Your Honor.

THE COURT: Sir, did you read that affidavit before you signed it?

THE WITNESS: I believe so, Your Honor.

THE COURT: Okay. Go head. Mrs. Parlionas, ask your questions. Please direct him to what you want. He's

not going to read the whole thing into evidence.

It's in evidence. You have any questions, point out what you want to point out.

MRS. PARLIONAS: We're on Paragraph 2 where it says --

THE COURT: Take a look at Paragraph 2, please, Mr. Parlionas and read it to yourself.

THE WITNESS: To myself.

THE COURT: Let me know when you are done.

THE WITNESS: Done with Paragraph 2.

Q Mr. Parlionas, you said here plaintiff with the assistance of her daughter have removed corporate records, corporate books, bank statements and business records; have you offered any proof of this?

A Any proof of this?

Q Yeah, any proof?

A Actually it's a pictures that, um, you took that corporate documents and you went to Connie's house and you did not know the video tape was taking you and you were posting all the documents on the floor that's in evidence.

Q Sir, do you know what I was copying?

THE COURT: Ma'am he answered your questions. Objection sustained.

Q Sir, did you know they were not corporate books, they books were bank statements, Sir?

A Well, corporate books before your daughter and you moved out of the office you took all the corporate books including the driver from the computers server because you were worrying about somebody finding what is on the server.

Q Do you have proof of that, Sir?

A Just my eyes.

Q Just your eyes. Sir, do you have proof that I took the corporate books, me and Angie from your office?

A Yes, you did and you stated you did and your son catch you in the basement altering the corporate documents in a house.

Q Does he have proof?

MS. COFFINAS: Objection.

Q We could say whatever you want. Do you have document proof and pictures?

THE COURT: Sir, do you have any documentation of this?

THE WITNESS: Documentation, Your Honor, it's my eyes whatever I see and my son's eyes he seen you.

THE COURT: You've answered the question. The objection is overruled. That's the proof he has. Go ahead.

Q We would like to have Chris Parlionas come in for a witness. Thank you, Sir?

THE COURT: Ma'am, get a subpoena. Do whatever you want.

Q Thank you. Mr. Parlionas, did you see me, like you said here in your affidavit take corporate books from your office?

MS. COFFINAS: Objection.

THE COURT: Overruled.

A Margarita, you were taking corporate documents from the office and altered it, you and your daughter every day of the week and twice on Sunday.

Q How do you know that, you saw me?

A Okay. Um, I saw you, no but the signatures on those documents appear your daughter's and you know when corporate document has one name or two names and without any transaction of money or signatures, all of a sudden the corporate, the income taxes returns come in with different names, that is altering.

Q What year are you talking about Mr. Parlionas?

A Well, let's talk about it. Let's talk about the document that comes to my mind very quick. Your daughter create a partner name Saldi Camillo (ph) Saldi Camillo invested in your daughter's company.

I have possession of Saldi Camillo's SK1's and the income taxes from Yoyo that indicating Saldi Camillo to be a partner holder.

Miraculously after three years he execute himself. Miraculously in 2013 his name disappear and no income taxes, no

name of Saldi Camillo on SK-1.

His wife is not been bought. His children has not been bought and there is no signature of the Camillo's because he's dead.

How does his name disappear. So, that the evidence I have. I have the evidence the same way this Camillo disappear out of Yoyo Lip Gloss is the same way Angie put her name inside there.

And you know it very well. The way the same way our son Jimmy walk out of the corporation just like that for a little statement to your accountant oh Jimmy doesn't belong no more inside.

THE COURT: Strike anything about Jimmy at this point. He's not part of this question. Go ahead.

A Yes, you're right, Your Honor, but it's um --

MRS. PARLIONAS: This is unbelievable.

Q Mr. Parlionas, are you aware that subpoena, that we are in confrontation with her or lawsuit and that every question and everything you said has been documented and what you just said is absolutely wrong?

A Are you also aware is a tape conversation with you trying to convince Abina Camillo (ph) in the tape conversation that you give her the money because I ask for it and she says I don't know nothing about that.

Q That's not what the tape says, Sir? Did you hear that

tape?

A Well --

Q Did you hear that tape?

A I hear that tape.

Q How and who gave you that tape?

THE COURT: Let him answer.

Q Who gave you that tape?

A Sabina D'Camillo (ph).

MS. COFFINAS: Objection.

THE COURT: Hold on.

MS. COFFINAS: What does Mrs. Parlionas' question about who gave Mr. Parlionas a tape have to do with this case, where is the relevancy?

THE COURT: Well --

MRS. PARLIONAS: There is.

THE COURT: Stop. I'm going to give her a little leeway here because I want to see if there's a connection. If there's not, I will disregard it.

MS. COFFINAS: There is a pending lawsuit from what I understand where Ms. D'Camillo is suing Mrs. Parlionas for monies that were not returned.

THE COURT: What is your question exactly about this, Mrs. Parlionas?

Q In this pending lawsuit, Your Honor, Mrs. Sabina has testified something totally different about Mr. Parlionas?

THE COURT: Objection sustained. The question and answer is stricken. Go ahead. She's not here to testify and I'm not going to take testimony from another trial.

Go ahead.

Q I'll just continue. So, the proof is you never saw me, that you just assumed what you just said?

MS. COFFINAS: Objection.

Q You never saw me. Did you see me, yes or no, take corporate books and alter the records?

THE COURT: Hold on. Overruled. Answer the question, Sir, did you actually see her doing what you claim you saw her do?

THE WITNESS: Taking the documents from the office and hiding it and also make them disappear, yes. Actual frauding the documents, no.

THE COURT: Thank you, Sir.

Q Taking the documents, you did see me?
A Yes.
Q Where?
A In our office.
Q When?
A As long as --
Q You were there. You let me take --

THE COURT: Let him answer the question.

A As long as I can remember, Mrs. Parlionas, you were

hiding. You even take the copy of the checks.

Q What checks, Sir?

A From all the corporations.

Q Mr. Parlionas, how do you know I did that? Were you there at that time or were you in China?

A If I was in China I didn't see you. I only talk about the times that I see you and that's for me to see you I was there.

Q So obviously I wasn't hiding, I took them in front of you, Sir?

A No, you took it from fear.

Q Did I take it in front of you?

A Yes.

Q And you did what?

A Mrs. Parlionas, when you were taking these things thi is the same it was the tax.

Q It's not the same thing, Mr. Parlionas?

THE COURT: Can you let him answer.

Q Go, ahead, answer?

A When you find out that CAJ on April 2015 has tax issues and I raise flags, you exactly caught when I say I'm going to close the company down, caught.

Let them survive. Let them have a life. They need to have a life. Let them make some money. You recall those words?

Q No, sir.

A And then you did --

Q You are being questioned, Sir, when I'm on the stand --

THE COURT: Woe, Woe, Woe. Answer the question, Mr. Parlionas, don't expand on it. Your lawyer will be able to ask you questions about these events when she presents her case.

A When I refuse, you offer to open a CAJ sheet metal installation and fabrication so you can take over so I won't have to close them and you did open the company.

Q Who opened those companies, Mr. Parlionas?

A I opened CAJ. You opened the C&J Sheet metal and installation fabrication to take over.

Q What corporation are you --

THE COURT: Let him answer the question.

A On 2015 and shame on me I conspire with you to do that.

Q Mr. Parlionas, you have a great imagination, don't you?

MS. COFFINAS: Objection.

THE COURT: Sustained. Stricken.

Q Great imagination.

THE COURT: Mrs. Parlionas. Mrs. Parlionas, you make one more joke like that I may sanction you.

MRS. PARLIONAS: All right. So sorry.

Q Okay. Mr. Parlionas, what corporation are you talking about so I could note this? What corporation was that, that I said shut it down?

Which corporation are you talking about?
A What is that question?
Q You just answered something?
THE COURT: Mr. Parlionas, what corporation did she allegedly shut down?
THE WITNESS: I didn't say shut down. I said I wanted to shut down CAJ, Your Honor, the corporation that has balance sale taxes with the state.
When I find out on April 15th the taxes was not paid, my house was upside down and her things, let them leave, let them take care of it.
I'm going to take over for you so you won't be responsible because her daughter and son-in-law was doing it and she create the company named CAJ Sheet Metal Installation and Fabrication in her name to take over the business because I didn't want to have nothing to do with it.
Q So, Mr. Parlionas, you knew that there were sales taxes due and you send it in, you filed a lawsuit?
A Mrs. Parlionas, let's stop playing games in this court. I will not consider lieing in this courtroom. Yes, we did.
Q We did what?
A We did Mrs. Parlionas.
Q What did we do?
A We did not correct it. We did in April 15th.



MJ

Q So, you're telling me you put a lawsuit against Angie and Chris knowing that you owned sales taxes to the government?

A Oh, I put a lawsuit in Angie for the money she stole from all my companies including my private accounts and it has the state all the money to the state has nothing to do with Angie stole from us.

Q So, you knew, again, I'm asking you, you knew that there was sale taxes due?

A April 15 after your son-in-law got caught, after your son-in-law got caught in the business changing the books.

Q Who saw him change the books, Sir?

A I saw him and I came to you, he's changing the books.

Q Okay. You're saying you saw him?

A Yeah.

Q Change the books?

A Sunday. Sunday. The only Sunday he was ever there.

Q Tell us what Sunday that was, Sir?

A Oh I don't recall what Sunday. I recall it was April 15th.

THE COURT: What year, Sir?

THE WITNESS: 15th, Your Honor.

THE COURT: Thank you.

Q April 15, 15 my son-in-law was there changing books?

A I don't know April 15, 15, it was on April 15th.

THE COURT: Sir, wait. Wait. I asked you what

year, Sir?

THE WITNESS: 2015, Your Honor.

THE COURT: April 15, 2015?

THE WITNESS: I don't know if it was April 15th.

THE COURT: So, it was April 2015, is that what you're saying, Sir?

THE WITNESS: Yes. It was a Sunday, Your Honor.

THE COURT: All right. Fine. Go ahead.

Q Mr. Parlionas, when Angie beat up, when Christo (ph) beat up Angie, did not Angie leave the office and never come back again?

MS. COFFINAS: Objection.

THE COURT: Assumes facts not in evidence. Sustained.

Q Mr. Parlionas, are you aware for the lawsuit that the government has every single email of what you're saying and corresponded everything together?

MS. COFFINAS: Objection.

THE COURT: Sustained. I don't understand the question.

Q All emails of all of the lawsuit that you gave concerning CAJ, all the orders that you gave, everything that you looked at went to the government?

MS. COFFINAS: Objection.

THE COURT: Is he aware of it?

Q In other words, is what he's saying, Your Honor, a lie?

THE COURT: Sir, are you aware of this, yes or no?

MS. COFFINAS: Judge, may I be heard?

THE COURT: Go ahead.

MS. COFFINAS: I don't understand the question at all and what's the timeframe and what government is she talking about?

THE COURT: You will have to, Mrs. Parlionas, Ms. Coffinas is asking. You have to narrow what items you're talking about during what period of time during to what government agency.

So what specific items are you asking him about?

Q I'm asking him about CAJ and the lawsuit?

THE COURT: What?

MS. COFFINAS: CAJ Sheet Metal Company, his company --

THE COURT: Listen to me. What are you asking him about, emails or what are you asking him about?

MRS. PARLIONAS: I'm asking him --

THE COURT: Listen to me. You said something about is he aware that the government has all of this. What does the government supposedly have according to you to ask him about?

Be specific as to the date and the item. Do not make a general statement.

MS. COFFINAS: I'm sorry, Your Honor, I didn't mean to interrupt you. A couple of things. First of all, for purposes of clarity of the record, there are different entities with very similar names and I don't want the reporter to be confused by it.

So, I want, I would ask that my client make that clear. And I would also ask that the court strike Mrs. Parlionas; statement on the record that Mr. Parlionas owns CAJ Construction and have him speak to the two similar companies and which one and the ownership interest to the best of his knowledge?

THE COURT: My understanding is there's CAJ Construction and CAJ Sheet Metal and Fabrication, correct?

MS. COFFINAS: I'd ask my client to be specific on that, Your Honor.

THE COURT: Okay. Since there are two corporations apparently. Without any acknowledgement of ownership or any determination by me or anybody about what the ownership interest are at this point.

Sir, what is your understanding of each corporation?

THE WITNESS: CAJ Sheet Metal and CAJ Construction is two different companies.

THE COURT: Okay. What is your understanding about who owns CAJ Sheet Metal?

THE WITNESS: I used to own CAJ Sheet Metal and it closed down.

THE COURT: What about CAJ Construction?

THE WITNESS: Is owned by Jimmy and my son Christo.

THE COURT: One is Jimmy and one is Christo. Your position is that two of them own that?

THE WITNESS: Correct, 50-50.

THE COURT: Your position is that you have no ownership?

THE WITNESS: I have no ownership.

THE COURT: Does that clarify the record for you, Ms. Coffinas?

MS. COFFINAS: Yes, Your Honor.

THE COURT: Go ahead, Mrs. Parlionas. Now understand, I just want to clarify what his position was. That does not mean I'm accepting his position.

I just want to the clarify that we're talking about two different corporations and I'm going to ask you to clarify your questions in the same way.

Identify which corporation you're talking about when you ask a question. Go ahead.

Q Mr. Parlionas, we're talking about C and it's N, it's N CNJ, CNJ is the corporation the one that you filed a lawsuit against Angie and Chris?

MS. COFFINAS: Objection. Again, Your Honor, what does that lawsuit whether he filed it or not have to do with this proceeding?

THE COURT: I don't know.

MS. COFFINAS: Well, I'm objecting on relevance.

MRS. PARLIONAS: This is the sales tax, Your Honor.

THE COURT: What's the relevance of this lawsuit against C&J Construction, is that who the lawsuit is against, Sir?

THE WITNESS: CAJ used to be my corporation.

MS. COFFINAS: Use the full name because it's going to be confusing for the reporter, C&J Sheet Metal, use the full name, please.

THE WITNESS: C&J Sheet Metal used to be my corporation. Close down.

THE COURT: Who are you supposedly suing she's talking about?

THE WITNESS: I did not sue anybody from that corporation.

THE COURT: Okay. Ma'am, what lawsuit are you talking about?

Q The lawsuit that you were fined $750,000?

A The lawsuit that I'm fined for?

Q You were found guilty for $750,000. He filed a lawsuit

and your tax return --

THE COURT: Ma'am, can you identify the lawsuit? Ma'am, can you identify the lawsuit by an Index Number, what court is it in, please?

MRS. PARLIONAS: Yes. He filed a lawsuit, Your Honor, and he brought it here to the court that he owes $750,000 in taxes and I'm supposed to be --

THE COURT: Ma'am, what Index Number is that lawsuit as you understand?

MRS. PARLIONAS: I have it right here.

THE COURT: And what county is it in?

MRS. PARLIONAS: Sure. Index Number 700339.

MS. COFFINAS: Of what year?

MRS. PARLIONAS: 2016, Queens, against Athanasios Parlionas.

THE COURT: 700339, what year?

MRS. PARLIONAS: 2016.

THE COURT: Hold on. Glenda. 700339 of 16.

MRS. PARLIONAS: Would you like to see mine, Your Honor?

THE COURT: Nope.

MRS. PARLIONAS: This is from --

THE COURT: Nope.

MS. COFFINAS: It's marked disposed in 2019.

THE COURT: What's the name of the case?

MS. COFFINAS: Athanasios Parlionas against Evangelia Parlionas.

THE COURT: It's marked Athanasios Parlionas and C&J Sheet Metal Corp against's Evangelia Parlionas, Christopher Andrione (ph) Yoyo lip Lip Gloss Incorporated and XYZ Corp.

Okay. That is the one it is Index Number 700339 of 16. That matter apparently was disposed of in 2019. Correct, that lawsuit is no longer pending?

MS. COFFINAS: That's correct.

THE COURT: That's the lawsuit. If you're going to ask questions, be specific about that lawsuit for now. Go ahead.

First of all, in terms of relevance, Ma'am, what is the relevance of this lawsuit because there was an objection.

What is the relevance of this action to this divorce?

MRS. PARLIONAS: I'm confused CNJ, did they not find him guilty on sales taxes?

THE COURT: What does that have to do with this lawsuit?

MS. COFFINAS: Your Honor, I would note for the record, the lawsuit was discontinued by stipulation of the party's.

THE COURT: Okay.

MS. COFFINAS: And that's entered as Document 62 on September 27, 2018.

THE COURT: So, in other words, all party's discontinued this lawsuit?

MS. COFFINAS: Yes.

THE COURT: Okay. The lawsuit was discontinued with the agreement of all party's. Go ahead.

THE WITNESS: Something else.

THE COURT: Nope. Nobody's asking you.

THE WITNESS: Okay.

THE COURT: What's your question.

Q I'm glad we clarified that. So, you filed a lawsuit in January 12th, actually there's a lawsuit previous to this against Yoyo Lip Gloss; did you have permission from the judge to do that?

A What judge?

Q Your Honor.

A On my corporate documents, I didn't know that I had to get permission from my divorce judge to file a lawsuit to regain money.

Q Who is Yoyo Lip Gloss at the time, was I not on the corporate documents?

A Yoyo Lip Gloss when they took the money that I complained, you were on the documents too but it was stolen by

your daughter and I'm attacking your daughter, not you.

Q Sir, do I not have to protect Yoyo Lip Gloss? Did you ask the judge permission to sue my corporation and me?

A I don't know what my lawyer did. I give the evidence to the lawyer and the lawyer decide the lawsuit.

Q So, you went against this Court and put a lawsuit on me?

MS. COFFINAS: Objection.

THE COURT: Excuse me. Did I ever order him not to file a lawsuit.

MS. COFFINAS: You did not.

MRS. PARLIONAS: You did, Your Honor.

MS. COFFINAS: And you were aware that there was commercial litigation which was actually initiated by Evangelia Parlionas.

She's the first one who filed a civil action and that lead to multiple actions being filed.

THE COURT: I don't recall any order of this Court prohibiting either party from commencing ancillary litigation.

The only order I recall is the automatic order saying nobody can transfer their interests. You can sue each other to the high heavens unless you show an order that prohibit somebody from suing.

Do you have anything, Mrs. Parlionas, before you

make a statement like that, I'm serious. This case has been going on for years. I could be wrong.

Maybe I forgot. Do you have an order from me of some sort indicating that he was prohibited from commencing a lawsuit?

MRS. PARLIONAS: Yes and --

THE COURT: Show me.

MRS. PARLIONAS: I will have to show you, Your Honor.

THE COURT: Ma'am, don't ask a question about it until you show me.

MRS. PARLIONAS: Your Honor, his own statement says it.

THE COURT: Ma'am, do not ask me a question until you show me. Do not ask him a question about him violating my order until you show me an order.

You can ask him your questions but not until you show me there's nothing to indicate here that he violated my order by commencing any particular lawsuit.

Go ahead.

Q Mr. Parlionas, can you go to Page 2?

A Go ahead.

Q Can you read to yourself 6, Paragraph 6, please?

MS. COFFINAS: To himself, correct, Your Honor?

MRS. PARLIONAS: Yes, of course.

THE COURT: Yes. Are you asking him about his affidavit?

MRS. PARLIONAS: Yes.

Q Did you -- it says here you were imprisoned prior to the marriage?

A That's not -- that's a misstatement.

Q That a misstatement?

A Yes.

Q You never did prison time or you were never arrested prior to our marriage?

A I was arrested prior to the marriage.

Q How many times were you arrested?

A I don't remember, two.

Q When you were in prison you were in prison for 6 years?

A Inside, no.

Q How many years were you inside, Sir?

A 4 and a half.

Q In those 4 and a half years, did you pay anything for your son? Yes or no? Just yes or no?

A From prison?

MS. COFFINAS: Objection.

THE COURT: Sustained. Relevance? Why is this relevant, Ma'am?

Q For 4 years --

THE COURT: Don't answer. Ma'am, why is this

relevant? You're not looking for child support, are you?

MRS. PARLIONAS: I'm not but this is money owed to me.

THE COURT: Why is this relevant, Ma'am?

MRS. PARLIONAS: He owes me for those 4 and a half years, Your Honor.

THE COURT: Ma'am, do you have a court order or judgment saying he owes you money for those 4 and a half years?

MRS. PARLIONAS: I never filed, Your Honor. I have initial he is 60 years old I think. Anyway.

THE COURT: Strike that from the record.

MRS. PARLIONAS: Yes, I'm sorry.

Q Prior to the indictment, you met me at a night club?

A Yes.

Q Whose night club was it?

THE COURT: What are we talking about? When are we talking about?

MRS. PARLIONAS: In, um, I don't really remember the year, Your Honor. He knows Zorbas (ph) what year was that?

THE COURT: Ma'am, you can't tell him what he remembers and obviously if you don't remember, you can't expect him to remember.

MRS. PARLIONAS: Oh he remembers dates and times.

THE COURT: Ma'am, let me ask you this question. What night club are you talking about?

MRS. PARLIONAS: The night club that I owned, that's where I met him?

THE COURT: Okay. Where was that night club?

MRS. PARLIONAS: Hallandale Beach Boulevard in Florida?

THE COURT: What's the name of the night club, Ma'am?

MRS. PARLIONAS: Zorbas (PH).

THE COURT: Sir, to get this thing going, did you meet your wife at Zorbas Night Club in Florida?

THE WITNESS: I see her there and we got into a fight for the first time that I met the lady. Yes, I did meet her there.

Q Was it my night club, Sir?

A No.

Q Whose was it?

A It was Gus.

Q I was not partners with Gus?

A No.

Q Did you not give me the $10,000 balance that he owed me, Sir?

A I give you money because you put money to get it but was never yours.

Q I'm sorry, Sir, did you give me the balance of the $10,000 that Zorbas owed me?

MS. COFFINAS: Objection.

THE COURT: Sustained.

MS. COFFINAS: Are we talking about over 30 years ago?

THE COURT: Sustained.

MS. COFFINAS: 40 years.

THE COURT: It's totally irrelevant. Sustained. Move on, Ma'am. We're not going to revisit --

MRS. PARLIONAS: Well, it's his affidavit. This is his affidavit that's where he met me, what he did. I will continue, Your Honor. Please, I'm sorry.

Q Okay. Read number 9, Sir, of your affidavit?

A You want me to state it?

Q I'm asking you did you read it?

THE COURT: Read 9. Tell me when you finish.

THE WITNESS: I finish, Your Honor.

THE COURT: And your question, Ma'am.

Q Mr. Parlionas, who is Jerry Blumberg?

A You ask me to read Paragraph 8.

Q I'm asking you who Jerry Blumberg is?

A Jerry Blumberg like I don't know is maintenance supplies Forest Hills.

Q Who brought you that job, Sir?

A The job?
Q Yeah, who give you that job?
A You recommend me to Jerry.
Q Exactly. Sir, who did the job for you?
A I did.
Q Who did the roof job in Mamaroneck Country Club?
MS. COFFINAS: Can we get a time frame and relevance of this question?
Q Mr. Parlionas --
THE COURT: When?
Q In 2000 and I would say 2000?
THE COURT: Don't just say, when?
Q 2000 and, um --
THE COURT: Sir, do you remember the year of this?
THE WITNESS: Yes, I do.
THE COURT: What year was it, Sir?
THE WITNESS: '93.
THE COURT: We are not going back to 1993. Sustained.
MRS. PARLIONAS: Mr. Parlionas' affidavit says that I never worked. I took the roof down, me and Rosa Mina (ph)?
THE COURT: Ma'am, you can testify to that when it's your turn.
Q Is that right or wrong?

A You are total liar.

THE COURT: Ma'am he said I think he said you brought him the work, not that you did the work.

Q Did I ever work on any of your job sites?

A You spend time, yes.

Q Did I work physically at any of your job sites?

A Yes, you did.

MRS. PARLIONAS: Thank you.

Q When I said in my statement you laundered secretly marital money, was that a lie?

A What, I did what?

Q In 10, in the year 2015 you said, you -- I saying you Laundered, that I, that you laundered marital money?

MS. COFFINAS: Objection.

THE COURT: Is that supposedly in the affidavit?

MRS. PARLIONAS: Yes, it is. It's Number 10.

THE COURT: Can you give it to me, please, Paragraph 10.

MRS. PARLIONAS: Number 10.

THE COURT: Contrary to her false allegation in Paragraph 13 of her affidavit I have not been laundering or secreting marital money nor have I kept the plaintiff financially dependent and in the dark.

Quite the opposite is true. I've always used the plaintiff as my marital partner and as such she had

financial autonomy throughout our marriage.

Only recently I discovered that plaintiff had been conspiring with her daughter and her daughter's husband to secret and steal business assets and marital funds.

After confronting plaintiff with my discovery, I recognized that I should retain an attorney. That is what the paragraph says, Ma'am.

I have no idea what your questioning has to do with that paragraph.

Q My question is, in 2015 did you not take modern technology's money that you admitted here in court, 50,000 which you paid for your girlfriends?

A I took money from model contracting, yes.

Q Technology?

A Modern technology did not exist in 2015.

Q Exactly, Sir.

A Let me answer the question. You opened the door. If you would be patient enough without interrupting me. Modern technology in 2015, it was the solo owner of the credit lines that I was guarantee and yes, we were constantly using the credit Line including your daughter.

Q In 2015, Sir?

A She took 200.

Q Did you give her the 200, Sir?

A No. She took it with her own signature.



MJ

Q Did you allow her, you said it in --
A It wasn't my knowledge.
Q It was your knowledge?
A Also your knowledge is not to return it don't give it back to him.

MRS. PARLIONAS: That is not true, Sir. Don't speak for me. Ms. Coffinas, tell your client not to speak for me.

THE COURT: Sir, were you aware the young lady is the lady that's her daughter took $2,000,000 from the company?

THE WITNESS: Your Honor.

THE COURT: I'm asking you, yes or no?

THE WITNESS: If I was aware, yes, Your Honor.

THE COURT: Did you demand it back?

THE WITNESS: Yes.

THE COURT: What was her response.

THE WITNESS: The response was dead. My broker want me to keep it in bank account so I could look good to buy a house.

Instead of returning in 20 and 30, she left 105 unpaid. I put my foot down, return the money and Mrs. Parlionas behind the scene say, don't give it to him.

Q Who told you that? Did you hear me?
A I hear you with my own ears.

Q You heard me, what day was that Sir and where was it?
A I don't care.
Q Where was it, Sir?
A In my office. In our office.
Q In your office Me and Angie said that to you?

THE COURT: One at a time. The reporter has to take it down. Where and when?

THE WITNESS: It's on 1517 126th Street on the 3rd floor. We had our office, my office, Angie office, Chris office, everybody was open area like this courthouse except some file cabinets separating the other things and I did hear her, don't give it to him.

Q When was that, Sir?
A Oh, the date?
Q Yeah, what month was it?
A I don't remember.

THE COURT: Around when?

Q Around when?
A Well, Your Honor.

THE COURT: Give me a year?

THE WITNESS: A year? I will say it was 15, 17 end of April, June. I don't know, Your Honor. It's all with transactions so I don't know.

And this, her daughter did not start in 15. She started on 14. Even on the hospital she tried to make me

incapable to my signature.
Q Say that again, Sir?
A Yeah.
Q Say that again?
THE COURT: I'm going to strike that. That is not responsive to the question at all. Anything about his signature and him being in the hospital, strike that.
That's not responsive to the question. Go ahead.
Q So, did you take $400,000 out of Modern Tech, Modern Contracting?
A Yes, I did.
Q Did you ask your partner Angie?
A Don't have to.
Q You don't have to?
A I have was the one own it.
THE COURT: You were the one who what?
THE WITNESS: Earning it, Your Honor. I work two years.
Q You didn't take any pay, Sir?
A No.
Q You never took pay from that? Was that -- was that $400,000 from an AIA contract you were doing in the hospital?
A That's correct.
Q That account?
A Yeah but Mrs. Parlionas was speak about lawyers before

over here.

Q I don't know?

A If you don't remember --

Q Excuse me, Sir.

THE COURT: We're going to stop there. We'll be back tomorrow. We have to get out of the courthouse. Mrs. Parlionas, please start packing up.

I'll see everybody here tomorrow at 2:00. Thank you. We're off the record.

(Whereupon, the trial was adjourned to Wednesday, May 20, 2026 at 2:00 p.m.)

# EXHIBIT 10

Certified Transcript of Proceedings, May 20, 2026
Supreme Court, Queens County, Part 63
Index No. 721778/2020

COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS : CIVIL TERM : PART 63
----------------------------------------X
MARGARITA PARLIONAS,

Index No.
Plaintiff, 721778/2020

-against-

BENCH TRIAL

ATHANASIOS PARLIONAS,

Defendant.
----------------------------------------X

Supreme Courthouse
88-11 Sutphin Boulevard
Jamaica, New York 11435
May 20, 2026

B E F O R E:

THE HONORABLE WILLIAM A. VISCOVICH,

Supreme Court Justice

A P P E A R A N C E S:

For the Plaintiff:
MARGARITA PARLIONAS
11 The Hemlocks
Whitestone, New York 11576
BY: MARGARITA PARLIONAS (PRO SE)

For the Defendant:
COFFINAS & LUSTHAUS, P.C.
186 Joralemon Street, Ste 701
Brooklyn, New York 11201
BY: MARIA COFFINAS, ESQ.

MONICA JENKINS
SENIOR COURT REPORTER

THE CLERK: Queens Supreme Court Part 63 is now in session with the Honorable William Viscovich presiding. This is a continued trial of Index Number 721778 of 2020, Margarita Parlionas versus Athanasios Parlionas.

The Court is back on the record. All appearances remain the same. Party's, please raise your right hand. Do you solemnly swear to tell the truth, the whole truth and nothing but the truth?

MRS. PARLIONAS: I do.

MR. PARLIONAS: Yes, I do.

THE CLERK: Thank you. You maybe seated.

THE COURT: Okay. So, we are here to continue. Please take the stand, Sir.

(Whereupon, the witness returned to the witness stand.)

MS. COFFINAS: Your Honor, may I make a record before we proceed?

THE COURT: Sure. Why not.

MS. COFFINAS: I want to the make a record of the days that plaintiff has been conducting her direct-examination of the defendant.

She began on April 25, 2024. She then continued on July 31, 2024. August 6, 2024, August 14, 2024. August 14, 2025. August 15, 2025. August 16, 2025. May 18, 2026. May 19, 2026 and today.

That makes a total of, at the end of today that will be 10 days that plaintiff has been afforded the opportunity to conduct the direct-examination of the defendant.

The court has issued as of yesterday, 9 additional trial dates in August. I respectfully ask the Court to set the date certain by when plaintiff has to conclude her direct-examination of the defendant so that this case can move on to a conclusion considering plaintiff commenced this action in October of 2015.

THE COURT: Counsel, I hear what you are saying. I understand your position but there are two things here.

Number 1, the way these Party's conducted their assorted lives over the years, conducted their businesses over the years, the tax liens, the contracts, the assorted companies, the contempt, um, the reality is that as difficult as it has been, Mrs. Parlionas has not really asked any questions that are out of bounds.

Of course I reserve the right to move things along if I think she is but I can't say that she is acted or questioned unreasonably.

I mean, the long-term marriage. They had a lot of businesses together. They can't agree that the sky is blue. There's going to be a lot of questions.

I can only limit it so much. I'm very conscious

of the fact how long this is taking. That's why I gave you nine days in August because I want to move this thing as quickly as possible.

I do not look forward to this any more than your client does but in terms of her questioning, given the length of the marriage, given the, what's the name, a few issues, bankruptcy, tax liens, contempt, the fact she's pro se, this is just going to be a slow, slow, process.

MS. COFFINAS: Your Honor, but there's nothing in the Domestic Relations Law or the New York Civil Practice Law and Rules that allows any extra time or any extra courtesy for a pro se litigant.

She elected to be pro se. She was represented. The issues you're raising, the tax liens, the contempt, what I specifically put on the record are days that she's been conducting a direct-examination.

The Court has the power and the authority to direct the manner in which this case is presented and the manner in which it should reach a conclusion.

THE COURT: And Counsel, I'm aware of that and when she goes into left field, if she does, in my mind I'll move it along but right now the questions she's asking are not out of Line.

You've made your objections. I upheld a number of objections. I overruled a number of objections. And quite

honestly, I've seen some attorney's take just as much time to get a question out unfortunately.

So, it would be, at this point, Mrs. Parlionas should know that I'm conscious of your problem. I understand your problem but I'm not ready to put a time limit on her yet.

Okay. Mrs. Parlionas, continue.

MS. COFFINAS: You will note my exception.

THE COURT: So noted, counsel.

DIRECT-EXAMINATION

BY MRS. PARLIONAS:

MRS. PARLIONAS: May I approach, Your Honor?

THE COURT: You may.

Q Mr. Parlionas, I just want to remind you, you are currently under oath.

MS. COFFINAS: Objection.

THE COURT: We know that, Mrs. Parlionas. You don't have to remind him.

MS. COFFINAS: I move to strike, Your Honor.

THE COURT: So stricken.

Q Everything you say is part of an official court record?

THE COURT: So stricken. Move on. And your question?

MRS. PARLIONAS: Move on? Okay. Oh, I'm sorry. I need Exhibit 999. We were using it yesterday. It's a

booklet like this.

Q Mr. Parlionas, can you turn to Page 5.

THE COURT: Exhibit 999 Page 5, right?

MRS. PARLIONAS: Page 5D.

THE WITNESS: Opened.

Q Can you please read it to yourself if you would like and continue on?

THE COURT: Did you find it, Sir.

THE WITNESS: I find it. She told me to continue and continue.

Q To read it, in other words, if you would like all the way to the next Page, the top paragraph only?

THE COURT: Ask him questions about it, then he will read it.

Q Mr. Parlionas, this talks about Prime Importing International, correct?

A It does.

Q What does Prime Import, what did Prime Import do for a business?

A It was importing materials from over seas.

Q What kind of materials?

A Various materials.

Q Can you say a few?

A Aluminum, stainless, stainless steel.

MS. COFFINAS: Can Mr. Parlionas be directed to

speak in the microphone.

THE COURT: Stainless steel. Go ahead.

A Glass, some machinery, I don't recall anything else.

Q Copper?

A No copper.

Q Sheet metal, steel, all gages?

A But I stated is aluminum and I stated.

Q You are saying it's including all that? Continue. Who owned that corporation, Sir?

A I owned that corporation and you guys were inserted yourself.

THE COURT: Mr. Parlionas, you're going to have to talk louder.

Q Can you please read your statement on Page 5, what you said here, Sir?

MS. COFFINAS: What statement is she referring to?

Q D, bottom Prime Import International, it's very short?

MS. COFFINAS: I'm going to object. This isn't evidence. This is not a reading test.

THE COURT: Sustained. Go ahead. What do you want to ask him about that?

Q I want to ask him who the shareholders are and who he said were the shareholders; do you agree with your statement that 50 percent was yours, 25 percent was Evangelia's and 25 percent was mine?

A If that was the last income taxes then I agree.

Q That was all the income taxes, Sir, from the day the corporation opened.

THE COURT: Ma'am, ask a question.

MRS. PARLIONAS: Can you -- okay. Sorry.

THE WITNESS: Let's not make chaos over here.

THE COURT: Okay. Mr. Parlionas.

THE WITNESS: Yes, Sir.

THE COURT: Please, your attorney wants to move this along. I want to move it along. Answer the question. If it's a problem question, your attorney will object and I will make a ruling.

Do not comment on the questions. Answer the questions. Go ahead.

THE WITNESS: You're right.

Q Prime Import International was opened by from day one by who?

A I don't recall.

Q Mr. Parlionas, did you have any knowledge of importing any sheet metal or anything having to do with that?

A What year was that?

Q When the day it opened?

A What year it's opened, I have to make sure?

Q I will let you know. Answer the question, did you have knowledge of anything in the sheet metal business when that

corporation was opened?

A Well, I own a sheet metal company from 2009, 2008.

MS. COFFINAS: Can I stress, Your Honor, can I stress to Mr. Parlionas he has to speak in the microphone. I cannot hear his full sentence.

THE COURT: Mr. Parlionas, this is not --

THE WITNESS: Let me come closer to the mic. I will come closer. Is that better?

MS. COFFINAS: That's better, thank you.

Q Mr. Parlionas, may I give this for him to see this is when the corporation was opened?

THE COURT: Is it an exhibit?

MRS. PARLIONAS: Not yet.

THE COURT: Nope. Do you want it as an exhibit?

MRS. PARLIONAS: I would like to have it an exhibit but I'm not prepared to give Ms. Coffinas a copy.

THE COURT: Then don't talk about it.

MRS. PARLIONAS: Prime Import was opened on April 28, 2010.

THE COURT: Is that a statement or a question?

MRS. PARLIONAS: That's a statement.

THE COURT: You are not testifying, Ma'am, you're questioning.

Q Can you verify that?

A I said I don't recall.

Q You said what year did you say?
A I don't recall.
Q Okay. When you open, when this corporation was opened and you decided to open it, who had knowledge of the sheet metal business?
A Well, I opened a CAJ 2008. I brought my son-in-law and my daughter who run it and I got some experience of sheet metal.
Q Mr. Parlionas, you had, you sure you had experience with sheet metal?
A Well, I own the company since 2008 CAJ Sheet Metal.
Q Is that why you brought Chris Andrione (ph) in is to teach you the business of the sheet metal?

MS. COFFINAS: Objection.

THE COURT: Relevance?

THE WITNESS: I did not bring Chris --

THE COURT: Hold on. Hold on. Mrs. Parlionas, what's the relevance?

MRS. PARLIONAS: The relevance is, Your Honor, that both Evangelia Parlionas and Chris Andrione and especially for Prime Importing, my daughter had complete knowledge of the sheet metal company.

That's why she owned shares in it. She was the first one to push to go get sheet metal from out of the country. She worked for B and B --

THE COURT: I wanted to know what the relevance

was. Okay. Answer the question, Mr. Parlionas?

MS. COFFINAS: Your Honor, just note my objection as to a recitation of facts that are not in evidence.

THE COURT: Exactly. I will ignore that. I just wanted to know what the relevance was. Let her ask Mr. Parlionas the question.

She established some relevance here. Let him answer the question, Mr. Parlionas.

A I did not bring Christopher and Angie to open and teach me sheet metal. You beg me to open, Mrs. Parlionas beg me to open the company for them.

This is why the name C and J. It's Christopher and Jimmy and I supposed to trust to them --

MRS. PARLIONAS: That's enough, Mr. Parlionas. I asked you simple question.

THE WITNESS: You want to hear the questions, the whole question or it's enough?

THE COURT: It's responsive to your question. Go ahead, Mr. Parlionas. Mr. Parlionas, go ahead.

A Yes and we supposed to trust her the company to Christopher because when I put it in my name, he was on unemployment from B and B and Angie brought him into our house so I can open a business for him.

And that's what I did. And I got some experience with the sheet metal. Absolutely. Angie and Chris had a lot more

experience than me on the sheet metal business in US.

And, yes, according to Margarita's question, Angie went to Taiwan to do some kind of thing and she comes back and say, go to China.

And I went to China and I see how cheap was the metal and I begin to import metals from China. Originally I import them under my company's name, my construction name.

Then we create the Prime. I don't know when the Prime got created. I don't recall but all the investments was come Athanasios Parlionas investment, not Chris and Angie.

Q Are you done, Mr. Parlionas, with your story?

A I'm done.

Q Okay. Mr. Parlionas, when you brought Chris and Angie into the Prime Import, did you know Angie and Chris were not together?

A I did not bring Chris Andrione to Prime Import and I never knew to today that you mention that Chris had to do something with Prime.

Mrs. Parlionas, you ask me if I know.

Q C and J, when you brought him into C and J?

A I did not bring him on into C and J.

Q All right. Is that your statement, Sir, you did not know?

A Me and Chris we agreed to go to C A J and he could not be on the books because he was on unemployment. If you go back

to the corporate time, you will find that he was on unemployment and he refused to be an officer of the corp.

Q Mr. Parlionas, are you saying he was supposed to be an officer of this corporation?

A Yes.

MS. COFFINAS: Objection.

THE COURT: Overruled.

Q Why did you not make him an officer of the corporation?

A Because your daughter split with Chris and to make up with her old drug dealer Yolamonica (ph) and Chris still stick around.

And then she, your guy puts the breaks on me, standing up, this is a family business I don't know want --

Q Mr. Parlionas, Chris Andrione and Angie came together when you bought him to the company?

THE COURT: Mrs. Parlionas, you are not going to -- you're going to ask questions.

Q Correct. I will have the time to do the same. Mr. Parlionas, you had many years to put Chris Andrione on the books and give him the corporation, why you did not do it?

MS. COFFINAS: Objection.

THE COURT: Sustained.

Q Why?

THE COURT: Sustained.

Q How many years do you need, Sir?

THE COURT: Sustained. Don't answer the question. It's irrelevant. Ma'am, no, it's not -- Ma'am, this is to divide your property, if any, with Mr. Parlionas.

If he was supposed to give somebody property who didn't get it, let them come to court and sue him and let them figure that out.

MRS. PARLIONAS: No. No. That's not why I said it.

THE COURT: I want to make sure, you're basically acknowledging that half of that company belongs to your daughter.

MRS. PARLIONAS: No. Yes, it's Prime Importing, Sir, 25 percent Sir.

THE COURT: Ma'am, that's your position and I understand it. All right.

MRS. PARLIONAS: Right.

THE COURT: Were you to get your way, you would get that much less because if it's your daughter's property it's your daughter's property.

You would only split what you have with Mr. Parlionas. I want you to understand that. And I don't know if this company has any value now any way but you're not here to represent your daughter.

You're here to represent your interest as to property you may or may not have with Mr. Parlionas. Go

ahead.

MRS. PARLIONAS: I agree.

Q Mr. Parlionas, is your statement saying what we own, you already did it, Mr. Parlionas can you continue on the next paragraph and read it. It's just 2 sentences?

A Give me is the paragraph number?

Q Page 6 top of the paragraph?

A Paragraph E, you mean?

Q Top of the Page?

A Well, I got to read the whole paragraph. I can't read only the bottom.

Q It's only a little bit, top of the paragraph, when you finish.

A Yes, I got it.

Q What does it say, Sir?

A What it says? It says CAJ sheet metal purchase the metal and fabric fabricates from prime and prime and it's primary customer at the current time on prime approximately 450,000.

Q Did you ever pay Prime Import the 450,000 you owed him?

A No because CAJ never got collected the money from outside from Chris Andrione.

Q Mr. Parlionas, did you collect, did you -- when did you start collecting money in 2015?

A Collecting money from where?

Q For CAJ?

A CAJ is in debt to Prime for 450,000. That's what the books says. That's what we trusted CAJ Chris departed, business stop and bills was unpaid.

Q So what bill weren't paid?

A $450,000 to CAJ from Prime.

Q Did you do the work, Sir, for CAJ?

A No, I did not.

Q And for your customers?

A No, I did not.

Q So, you did not, you used $450,000 in material and owe it to Prime Importing and you did not collect from your customers?

A Well, Prime Import is seldom to CAJ.

Q Correct?

A Both companies was a family companies.

Q No family, Sir. This is what's written down on the corporate and the tax returns, you owned C&J, correct?

A Correct.

Q And who owned Prime Import on the records from the day it was opened?

A I owned Prime and you guys put your names inside.

Q That's what the tax returns say, Sir?

A That's not what the tax returns says. That's what we did inside in our office as a corporate resolution.

Q We're going back to the tax returns. Is that okay with you, Sir?

A That's okay.

Q Okay. Wonderful. So you took from Prime Import $450,000 in material. You started receiving checks from your clients we're talking own in 2015 --

A Lot of --

Q Excuse me. In 2015 you collected over a half a million dollars in that year and you still didn't have money to pay for Prime Importing; is this correct?

MS. COFFINAS: Objection. I don't even understand the question.

THE COURT: Neither did I.

Q The question is, he was collecting from the people that he did the jobs for in C and J? Simple.

A Let me understand it so I cannot --

Q He gave it as discovery even to Mr. Black all the checks he was getting but not from the beginning but from a certain amount of time?

THE COURT: Ma'am, you're not testifying. What's the relevance of this?

MRS. PARLIONAS:

The relevance is Your Honor, that he owed that money to Prime Importing which was mine and my daughter.

THE COURT: I guess it's CNJ might have owed the

money to Prime Importing. He did not owe the money, is one company owed another company money.

MRS. PARLIONAS: Correct.

THE COURT: Now, I don't know what happened to that money but he did not owe the money. It's clear in this was one corporation receiving the money and may or may not have paid another corporation money. I don't know.

MRS. PARLIONAS: I agree.

THE COURT: So, what's the relevance?

MRS. PARLIONAS: The relevance is that his company, Your Honor, who got taxed --

Q What happened with CNJ, you tell us?

MS. COFFINAS: I'm going to object and I want to note.

THE COURT: Sustained.

MS. COFFINAS: I would like to note for the record, Mrs. Parlionas refuses to acknowledge that any interest that either Mr. Parlionas or Mrs. Parlionas took in a corporation during the marriage is a marital property under Domestic Relations law 236.

THE COURT: The only one that has to remember that is me right now.

MS. COFFINAS: Yes but --

THE COURT: I understand. That's why I'm sustaining your objection.

MS. COFFINAS: It's very frustrating, Judge.

MRS. PARLIONAS: I understand but there is a reason for this.

THE COURT: Ma'am, apparently you don't. Let's make that clear.

MRS. PARLIONAS: So, I'm starting to learn, Your Honor.

THE COURT: It presumptively a marital asset as stated by Ms. Coffinas. Go ahead. Assets, I remained you again, assets, any debts are marital period presumptively if they are, if they arise during the course of the marriage.

So, in a nut shell, if you and he owned a company and there is a debt from that company, presumptively you are both responsible for it.

Now there are ways around it. No decision is made but those are the presumptions, the burden is on you. Continue.

Q What happened with your company C and J, and J?

THE COURT: First of all, Sir, was C&J your company or was it -- were both of you members of that company or were there other people in that company?

Was C&J just your company?

THE WITNESS: It was only in my name, Your Honor, yes.

THE COURT: Okay. Was it acquired during the marriage?

THE WITNESS: Yes.

THE COURT: Okay. Go ahead.

Q What happened to that company?

A After Chris and Angie departed and business stopped coming in, we were taking the receivables and it was instructed by the lawyers, Ms. Coffinas and your attorney, every month we getting copies of the checks that were coming into the corporation and where the money was going.

Till the day of the closure of the company, Ms. Coffinas, this Court, and your attorney had all copies.

Q What happened to C&J? What happened after that, did you file lawsuits?

A File lawsuit?

Q Did you file lawsuits for anything?

A Please ask me direct questions?

THE COURT: That is a direct question. Did C&J file any lawsuits?

THE WITNESS: I don't remember, Your Honor. You know it's so many things in my head. I don't remember. I don't remember if C&J file lawsuit.

Q What happened to Prime Importing, the company?

A Since the prime customer was CAJ and C&J did not pay back the debt on to Prime, Prime was terminated after we exhaust

money was inside there in Mrs. Parlionas car payments.

Q How about your car payments, Sir, were they being paid from this corporation also?

A Maybe, I don't remember.

Q And you came to Judge Viscovich and said that you made the car payments in this and put in a motion that you paid the car payments instead of saying Prime Importing, my company and yours paid?

MS. COFFINAS: Objection.

Q Did you or did you not?

THE COURT: Overruled.

A If you follow the deposits and if you follow the payments of bank statements surrendered to your bank and lawyer, you will see that every month I was depositing money to Prime to make your car payments.

Q But you were also taking sheet metal, Sir, from the company to the day it closed?

A That's not correct.

Q And did not pay, is that correct?

A The sheet metal, the sheet metal, whatever was left over at the building were sold to an auction and Me, You decided and we sold it to our sons and you took the remedies.

Q Sir, how much material was that that I surrendered for my son Jimmy?

A According to the free materials you took and you give

it to your friends, when you calculate it $10 a sheet and you give them the most expensive materials for $2,000. My sons over pay you by $25,000.

MRS. PARLIONAS: I have inventory and we'll talk about that later.

Q Sir, did you continued using inventory, did you 3, 4 days before the auction, take material to your new warehouse?

A No, I did not.

Q Did your son Jimmy tell you that I have him on recorder that he apologized for stealing material?

MS. COFFINAS: Objection.

THE COURT: Sustained.

Q Did Jimmy tell you I was at your warehouse?

MS. COFFINAS: Objection. Hearsay.

THE COURT: No, he can answer if that's what Jimmy told him.

MS. COFFINAS: That would be hearsay, Your Honor.

THE COURT: Not if it's not introduced for the truth of what's stated therein. Answer the question.

A No, Your Honor.

Q So, your statement is you did not move material 3 days before the auction and send it to your warehouse in Astoria?

A Number 1, I don't have a warehouse in Astoria.

Q Yes, you do.

A Number 1, I have no warehouse in Astoria. Your son has

warehouse in Astoria. Number 2, he never mentioned to me and no, I don't know.

The only thing materials was moved is the statement from your brother that your son-in-law took 3 pallets of copper. That's the only materials I know about.

Q Is that what my brother told you, Sir?

A Actually it's in a written statement.

MRS. PARLIONAS: I would like to call my brother as a witness, Your Honor.

THE COURT: Do whatever you want, Ma'am.

MRS. PARLIONAS: Thank you.

Q Sir, did you ever give my brother money and drugs during that time in 2015?

A Your brother, I don't know if he was using drugs in 2015. But me and your brother had serious drug trafficking when me and you and your brother are together.

Q Sir, can I ask you a question. How did you do your drug trafficking? Did you buy it?

THE COURT: How did he do what?

Q How did he do it, did you steal it from the drug dealers?

MS. COFFINAS: Can we get a time frame?

THE COURT: Sustained.

Q He said we did serious -- let's see how we did it. Did you pull cons and switch suitcases to pick up drugs and rob drug

dealers?

THE COURT: Sustained.

Q Mr. Parlionas, let's go back to the corporations that you say I opened up. Who opened up the corporation for you?

MRS. PARLIONAS: I'd like to submit this into evidence, Your Honor.

THE COURT: Hold on. You asked him a question. Do you have an answer to that question? Who opened up the corporations for you?

Q The new corporations that he was talking about?

THE COURT: Which corporation?

Q He's talking about C and J Sheet Metal Fabrication, Vigorous Equipment, Cutting Edge Contracting Unlimited?

THE COURT: Okay. One at a time, Sir.

THE WITNESS: Which one first, please?

Q C&J Sheet Metal Fabrication and Installation?

THE COURT: Sir, who opened that corporation for you, if anybody?

THE WITNESS: That's funny. Mrs. Parlionas did.

THE COURT: Okay.

Q Vigorous Equipment?

A I don't know what Vigorous Equipment is something that I believe my son started and I started for him and never continue.

Q Is it in your name the corporation?

A I think originally it was in my name, Vigorous, yes.
Q And when did it switch over, Sir?
A Switch over to where?
Q When did you switch that corporation?
A What you mean?
Q It was in your name and I'm going to present that as evidence, Your Honor?
A I never switch anything.
Q Cutting Edge Contracting Unlimited?
A I don't know anything about it. It doesn't draw me.

MRS. PARLIONAS: Your Honor, I would like to submit this into evidence. This is Exhibit 102 informing Mr. Parlionas who opened up these corporations and he knew?

THE COURT: For ID only please. What is it, Ma'am? Don't tell me what it says. What is it?

MRS. PARLIONAS: It is an email from Caroline Miller.

THE COURT: Okay. That's all. What's the date?

MRS. PARLIONAS: October 1, 2015. It was addressed to --

THE COURT: Hold on. 102 for ID.

MS. COFFINAS: Is this my copy?

MRS. PARLIONAS: Yes, Ma'am.

THE COURT: Email from who?

MRS. PARLIONAS: Caroline Miller.

THE COURT: And what is the date?

MRS. PARLIONAS: October 1, 2015.

THE COURT: Okay. That's it. Thank you. It's not in evidence yet, Sir.

(Whereupon, the document was marked for identification as Plaintiff's Exhibit 102.)

MS. COFFINAS: It has to be identified, Your Honor.

THE COURT: I just did.

MS. COFFINAS: By Mr. Parlionas.

THE COURT: Mr. Parlionas, can you identify this document?

THE WITNESS: I'm total confused here. Over here says cutting edge.

THE COURT: Don't tell me what it says.

THE WITNESS: No, I don't recognize the cutting edge.

THE COURT: Do you recognize the document?

THE WITNESS: No. No. I don't remember the document. It's not directed to me. Angie Parlionas --

THE COURT: You can't -- okay. Okay. That's it. Go ahead. Are you objecting, Ms. Coffinas?

MS. COFFINAS: I am, Your Honor.

THE COURT: Not in evidence. Objection sustained.

Q Mr. Parlionas, did you trust your accountant Andy

Conturas (ph)?

A He was a good accountant.

Q How long has he been working for you?

A He's working for all our corporations since I say, I don't know. I don't remember now but I believe it was close to 2000. I don't recall exactly.

Q Long time for an accountant to be working for somebody; is that correct?

MS. COFFINAS: Objection.

THE COURT: Sustained.

Q So, Mr. Parlionas, this is one was addressed to Andy Conturas (ph) I would like to recall Andy Conturas. We have a few things to, you know, that he needs to --

THE COURT: Ma'am, he already testified, right?

MRS. PARLIONAS: No. I have the, Your Honor, the transcript of that day --

THE COURT: Hold on.

MRS. PARLIONAS: And he was asked to leave and come back. I can submit it tomorrow as evidence.

THE COURT: Fine. Bring him back. He better show up because we're not going to wait for him.

MRS. PARLIONAS: This, Your Honor, is from Motion Number 36, Exhibit D?

THE COURT: How do you want it marked, Mrs. Parlionas. Give it a number. It better not be a number we

have already.

MRS. PARLIONAS: Does it --

THE COURT: Ma'am, I'm not going to tell you how to do this.

MRS. PARLIONAS: Can I submit the whole booklet, the whole motion?

THE COURT: Ma'am, I'm not telling you anything else.

MRS. PARLIONAS: I don't know how to. I'll submit it separate. I will submit it separate, no problem. Exhibit 100 -- no, 1006.

THE COURT: Do we have 1006 here? 1006 for ID.

MRS. PARLIONAS: Ms. Coffinas already has a copy.

THE COURT: Show it to the witness, please.

MRS. PARLIONAS: No this was from the motion that was sent to Ms. Coffinas.

THE COURT: I'm not doing it. I told you, make sure you have copies of everything. It's not coming in.

MRS. PARLIONAS: I will send a copy tomorrow.

THE COURT: Remove the markings, please. Never identified. Let's remove the marking. I'm not considering anything where Ms. Coffinas has not been provided a copy.

Q Mr. Parlionas, do you own vigorous equipment?

A Like I stated before, I started some vigorous company for my son and his little partner at that time to do work

together Johnny Devito (ph).

I don't know what happened. I believe Christo give up and Vitox is running the vigorous.

Q Mr. Parlionas, when did you sign over your corporate papers to --

A I don't remember.

Q This was your company that you asked your Caroline Miller to open vigorous and it's in 2015 that it was open and you closed the corporation?

MS. COFFINAS: Objection.

THE COURT: Sustained.

Q Where is the corporation? What business does it do?

A Sustain means don't answer, right?

THE COURT: This is another question now, right. Sir, where is the business? Where is vigorous today?

THE WITNESS: I don't know, Your Honor.

Q But it was yours before we filed divorce?

A I keep saying I believe so, I put it in my name.

Q Okay. Thank you.

MRS. PARLIONAS: I'd like to submit this into evidence. This is Exhibit 105, 1,005.

THE COURT: Hold on. 1005 for ID.

MS. COFFINAS: Mrs. Parlionas, you have something here. Do you want it?

MRS. PARLIONAS: Let me see, I'm sorry.

THE COURT: Mrs. Parlionas, what are we doing?

MRS. PARLIONAS: Should I give one to --

THE COURT: 1,005 for ID.

MRS. PARLIONAS: So, for ID. This, Your Honor, is a Chinese bank account that --

THE COURT: Let the witness identify it.

MRS. PARLIONAS: Sure.

(Whereupon, the document was marked for identification as Plaintiff's Exhibit 1,005.)

COURT OFFICER: Exhibit 1,005 marked for identification.

THE WITNESS: Not recognize this one but how do I know what bank is that? What account is that? Doesn't say my name and it doesn't say any bank account.

MS. COFFINAS: So, Your Honor, I object. Mr. Parlionas can not identify the document; moreover, there are other documents mixed in with this purported bank account.

THE COURT: I just have to identify it because I have to have a record of it. I will sustain your objection but I'm going to identify it as alleged Chinese bank account.

MRS. PARLIONAS: It's a Bank of China.

THE COURT: Ma'am, I'm doing it just because I want to have a record of what it purports to be. It's not

in evidence. Her objection is sustained.

It's not in evidence. Give it back to Mrs. Parlionas please.

MRS. PARLIONAS: Thank you. Should I continue?

THE COURT: Yes.

Q Mr. Parlionas, how many bank accounts are affiliated with Prime Importing?

A Your question clear?

Q How many -- I'm sorry.

THE COURT: Hold on. Off the record.

(Whereupon a discussion was held off the record.)

Q How many accounts are affiliated with Prime Import?

A I only recall Bank of America.

Q Accounts are in there, you write checks with them, you send money, what is it 3 accounts, 4 accounts?

MS. COFFINAS: Can we ask for a period of time for these businesses?

Q Yes, from the time the corporation opened?

MS. COFFINAS: I'm not done making my record. These are various LLC's all related to the construction company that were in existence for many years during the marriage.

THE COURT: Understood. So, be very specific as to which company you're talking about and what dates you're talking about.

Q Prime Import International, how many accounts are, how many bank accounts are within that corporation?
A I only recall Bank of America I say.
Q Bank of America?
A Oh, how many accounts in bank of America.
Q No, not in all of Bank of America, only in Prime Importing where you imported the sheet metal and imported products from China, Taiwan, everything, this was an importing company?
MS. COFFINAS: She still hasn't identified the time frame.
MRS. PARLIONAS: From 2010.
THE COURT: Until when?
MRS. PARLIONAS: Until 2015.
THE COURT: So, from 2010 to 2015, how many bank accounts did Prime Importing having, if you know.
THE WITNESS: I will talk to the Courts. It's easier. Bank of Prime had Bank of America. That's the only bank I recall.
Inside on Bank of America it should be two accounts, one for exporting money, one for domestic money. That's all I remember.
THE COURT: Okay. Go ahead Mrs. Parlionas.
MRS. PARLIONAS: May I give Exhibit 939 and 940. This has to do with Prime Importing International?

THE COURT: Are these in evidence?

MRS. PARLIONAS: They're not. I would like to submit them in evidence.

THE COURT: Show Mrs. Parlionas and identify them as -- Ma'am, we're going to do this the right way the best we can.

What numbers do you want them identified as?

MRS. PARLIONAS: 939 and the checks are 941.

THE COURT: Give the officer 939.

MRS. PARLIONAS: This one is combined. This one is for Tommy. I can give them separate also.

THE COURT: Give the officer the way you want them identified. Are you looking to put them all in?

MRS. PARLIONAS: Yes, Sir because I want to give a copy to Ms. Coffinas and copy --

THE COURT: So, this is what we're going to do. We're going to identify this as, we'll handle one objection at a time because it's all in one binder.

We're going to identify this as 939, 940 and 941 are going to be marked for identification. Now, make sure Ms. Coffinas has a copy of these to look at.

Make sure the witness has a copy and we will they'll be identified and maybe moved into evidence one at a time.

(Whereupon, the documents were marked for

identification as Plaintiff's Exhibit 939, 940, 941.)

COURT OFFICER: Exhibits, Plaintiff's 939, 940 and 941 marked for identification.

THE COURT: Can you please hand them to the witness, please.

MRS. PARLIONAS: These are, I forgot to say, Your Honor, these are subpoenaed documents.

THE COURT: Counsel, Ma'am, ask the questions.

MRS. PARLIONAS: So, okay --

THE COURT: Ma'am, are they subpoenaed documents, I'll make this simple.

MRS. PARLIONAS: Yes.

THE COURT: Do they have the appropriate authentication?

MRS. PARLIONAS: Yes.

THE COURT: Ms. Coffinas, do these items, do you have any objections to these items to any reason and I'll have to look to see if they have the proper authentications and then we have to identify them by name on each one.

MS. COFFINAS: Your Honor, it's a huge book. I do not see a subpoena nor do I see a certification.

THE COURT: Oh, okay. Okay. That answers it.

MRS. PARLIONAS: I do have one.

MS. COFFINAS: It's not part of this book.

THE COURT: It has to be there.

MRS. PARLIONAS: They're here.

THE COURT: It has to be attached to the exhibit or they have to be with the exhibit.

MRS. PARLIONAS: It's right here. It's after Exhibit 939. I can give it to Ms. Coffinas.

THE COURT: Don't separate anything. Don't separate anything. Ms. Coffinas, can you please look at what she's trying to show you and then I will take a look at it but I want Ms. Coffinas to see it first.

Ma'am, there are only -- there's only one thing I'm looking for right now. I want you to show Ms. Coffinas if they are business certifications.

Don't take them out.

MS. COFFINAS: Just let me look. I do see a certification Bank of America Prime Importing Account 9301.

THE COURT: Okay. That will would 939?

MS. COFFINAS: 939.

THE COURT: Okay. And what is that described as in the certification?

MS. COFFINAS: It's actually calmed a declaration which is the same as a certification. I'll accept it. It's Prime International LLC account 9301.

It says statement pages, signature card, wires.

THE COURT: Prime International LLC. What's the account number?

MS. COFFINAS: Your Honor, it also includes other accounts, the certification does. I'm not saying the exhibit does but the certification includes accounts in the name of Athanasios Parlionas.

There's a whole list of other account names.

THE COURT: Ma'am, don't write on that.

MRS. PARLIONAS: I'm sorry. It's just that I can't see.

THE COURT: Ma'am.

MS. COFFINAS: So, Your Honor, to make this process smooth, any account statements Mrs. Parlionas is going to introduce for Bank of America in any name is covered by this certification.

THE COURT: Okay. So would that cover as far as you can tell 939, 940 and 941?

MS. COFFINAS: Yes. And other accounts that she may try and introduce just to make it easier.

THE COURT: So, 939, 940, and 941 are in evidence. Mrs. Parlionas, just to make this easy, what is 939?

MRS. PARLIONAS: 939 is I believe 3042.

THE COURT: Account 3042?

MRS. PARLIONAS: Yup.

THE COURT: Okay. And what is 940?

MS. COFFINAS: No, she's wrong. She's wrong.

THE COURT: Ms. Coffinas, to be honest with you,

you've gone above and beyond here. I will take your representation as to what 939 is otherwise we will be here all day.

MS. COFFINAS: I'm only doing this in my client's interest.

THE COURT: I understand that, Counsel, I do.

MS. COFFINAS: Not to assist the defendant. Um, so 939 is account ending 9301.

THE COURT: What's the number?

MS. COFFINAS: 9301.

THE COURT: 9301.

MS. COFFINAS: Which is the account for Prime Importing International LLC.

THE COURT: What is 940, Ms. Coffinas?

MS. COFFINAS: This isn't tabbed so I don't know where it changes.

MRS. PARLIONAS: 3042.

THE COURT: I'm going let Ms. Coffinas do this, Ma'am. Okay. Because it will move quicker. It's coming into evidence because there's a certifications but I want to move this along.

Ms. Coffinas, take your time.

MS. COFFINAS: I have no way of knowing. There's no division in this.

THE COURT: I'm going to put down here assorted

bank accounts. It doesn't mean, it just means they were provided by the business.

There's no admission as to anything.

MS. COFFINAS: Right.

THE COURT: So, I'm going to put --

MS. COFFINAS: There are checks and the checks are, yeah, so there another account Prime Importing 3042.

THE COURT: 3042.

MS. COFFINAS: 3042 but these are checks. They're not statements.

THE COURT: Okay. Assorted checks account 3042. That's how we'll identify 940. What is 941?

MS. COFFINAS: I don't know because there's still assorted checks now for C&J Sheet Metal Corp and that's account 3331.

THE COURT: And that's it. That's how we're identifying it's 3331, account 3331. That's it. Now, they're in evidence.

Ms. Coffinas is not going to do any work for you. That was just to get an identification on the record. Show the witness. Ask your questions.

MRS. PARLIONAS: If I could just clarify what Ms. Coffinas --

THE COURT: No, you don't get to do anything for Ms. Coffinas that she's already done. Ma'am, your lucky

I'm letting you continue this. You're totally unprepared.

Ms. Coffinas is doing the Court a favor, not you.

MRS. PARLIONAS: Yes. Thank you.

THE COURT: Thank you, Ms. Coffinas.

MS. COFFINAS: Your welcome, Judge.

Q Mr. Parlionas, did you have a moment to look at the book?

A No. I need days to look at that book.

Q Start, Ms. Coffinas, because it was, I started if you open up the book from Page 1 you will be able to see that's where we're going to be starting from Page 1.

Mr. Parlionas, just open the book. Can you tell me about these statements, Sir?

A What do you want me to tell you?

Q Tell me about these accounts, Sir?

THE COURT: Sustained. Ask a specific question.

MRS. PARLIONAS: I've got the wrong book. I'm sorry.

THE COURT: You know what, you can't have the wrong book any more. We're done with this.

MRS. PARLIONAS: I just did it to make it easier to move right along.

MS. COFFINAS: So let's switch again okay.

THE COURT: Officer, let's make sure that the right book is marked. The book you have in your hand now,

Ms. Coffinas, I mean Mrs. Parlionas.

MS. COFFINAS: We're switching again.

THE COURT: Did she just switch again? The book you have in your hand, Mrs. Parlionas, are you going to listen to me?

MRS. PARLIONAS: Yes.

THE COURT: The book you have in your hand, is that Plaintiff's 939, 940 and 941 and is it identical to the book the witness has and Ms. Coffinas has?

MS. COFFINAS: Identical.

THE COURT: This is your last chance. If you have the wrong book you are done. Go. Go.

Q You can open up to Page 1. From the beginning, Sir, Page 1. January, what month are you looking at, Sir?

A Page One.

THE COURT: Please show him what you want.

Q January 1, 2015, correct?

A Let me find the date first. I don't see the date January 1, '25, yes, 15, yeah, I find it.

Q If you look at what account was this for, this is Prime Importing?

A It says Prime Importing.

Q Okay. If you turn to Page 3?

A Page 3.

Q You'll see wires that were transferred, Sir, it's

account 3042, ending 3042?

MS. COFFINAS: What Page?

THE COURT: Okay. Would you please show him exactly where you're pointing to?

THE WITNESS: I got number 3.

MS. COFFINAS: Can I see because I'm on Page 3 and I don't see wires.

THE COURT: Show Ms. Coffinas as well. No. Show her in her book because if her book is not the same we're not going any further with this.

MS. COFFINAS: You said the third Page, right?

THE COURT: Show her in her book.

MRS. PARLIONAS: This one has the checks only.

THE COURT: If it's not the same book, we're done with this exhibit. Move on. Move on.

MRS. PARLIONAS: Your Honor, please, I can't see. It's somewhere here. I can't see it.

THE COURT: Move on. Again, for the record, I've warned you and I've warned you and I've warned you. We're not doing this anymore.

Ma'am, you are missing the point. You are not taking out another book and remarking it. You are stuck with what you have.

MRS. PARLIONAS: It is the correct book but Ms. Coffinas binder only has the checks. So, it is the correct

book. I'll just continue. I'll just continue.

THE COURT: Mrs. Parlionas, get yourself organized. Off the record.

(Whereupon a discussion was held off the record.)

MRS. PARLIONAS: Can I clarify what happened?

THE COURT: No. Mrs. Parlionas, they're the same or they're not. Show Ms. Coffinas in her book where the documents you are asking about exist.

MS. COFFINAS: Mrs. Parlionas during the break handed me yet another book that says 939 and she's now telling me I have two books.

MRS. PARLIONAS: Yeah, they're just separate her checks. Yeah. Ms. Coffinas checks are separate.

MS. COFFINAS: So, this, these two binders, I'm asking if it's okay if I ask. Mrs. Parlionas, these two binders are mine?

MRS. PARLIONAS: Yes.

MS. COFFINAS: They're 939, 940 and 941 but it looks like double the amount of paper from the other binders.

MRS. PARLIONAS: So, what happened was I had -- what happened is, one of them got printed double-sided. That's why it looks more.

THE COURT: Okay. So, I'll ask you again, show Ms. Coffinas the exact page that you are showing the

witness in her book, not yours.

MRS. PARLIONAS: Right here this is what I'm showing Mr. Parlionas.

MS. COFFINAS: Is his numbered the same way?

MRS. PARLIONAS: Yes exactly I put it in the front.

MS. COFFINAS: May I just approach my client?

THE COURT: Please. Go ahead Ms. Coffinas. Ms. Coffinas, have you got a sense of what's happening here?

MS. COFFINAS: Yes. So, there are double-sided pages on the book that Mr. Parlionas is now looking at. Also there are, Mrs. Parlionas or someone apparently numbered at least some of the pages on the bottom left but only some pages.

So, I don't know if that's going on help us but.

THE COURT: Okay.

MRS. PARLIONAS: We're only going to go to 192.

MS. COFFINAS: What Page are we on now?

MRS. PARLIONAS: We're on Page 1.

THE COURT: Okay. Mrs. Parlionas, we've been 20 minutes asking one question. Either ask it or move on.

MRS. PARLIONAS: Okay.

THE COURT: It's not funny anymore, Mrs. Parlionas.

MRS. PARLIONAS: I feel so stupid but I can't see

well. I don't know what to do.

Q We're looking at January 1st, Mr. Parlionas, you saw that please go to Page 3?

A I'm on page 3.

Q And you could see that's account 3042?

A Yeah. I don't see the account number on that page.

Q On the top middle?

A Yes.

Q Bank of America?

A 3042.

Q Do you see check numbers, do you see checks written out, John Keenan (ph)?

A Yes.

Q Mary Zarella (ph)?

A Yes.

Q Who is Mary Zarella, Sir?

A Your mother's friend.

MS. COFFINAS: Wait. We're on Page 3?

MRS. PARLIONAS: Yes.

MS. COFFINAS: Wait. Wait. Wait. What checks are you referring to? May I ask what check is Mrs. Parlionas referring to?

MRS. PARLIONAS: Check 1246, 1247, 1250.

THE COURT: Can you show Ms. Coffinas in her book where those checks are and they better be there.

MS. COFFINAS: That's not my Page 3 though. Okay but this is handwritten?

MRS. PARLIONAS: Yeah, but just the check numbers are correct.

MS. COFFINAS: Well, I'm going to move to strike.

THE COURT: What do you mean, the checks are handwritten?

MS. COFFINAS: Next to -- I want the Court to look at it. I don't know whose handwriting that is.

MRS. PARLIONAS: That's my handwriting. I did it so it won't be any delay. I'm going to hand him the checks and he could verify if those are the checks.

THE COURT: I understand what you did. So, in other words there's handwriting here. That's your handwriting, correct?

MRS. PARLIONAS: That is mine, Sir.

THE COURT: That is who you are alleging the checks were written to, correct?

MRS. PARLIONAS: That's correct, Your Honor.

THE COURT: We do not have those checks in evidence right now, do we?

MRS. PARLIONAS: Yes. Well but Your Honor --

THE COURT: Where are they?

MRS. PARLIONAS: Right here.

THE COURT: What exhibit are they in?

MRS. PARLIONAS: This is from this book, Your Honor, in here.
THE COURT: Don't take the book apart. If it's in evidence or an exhibit, do not take it apart. Are those checks in evidence yet?
MRS. PARLIONAS: These are checks --
THE COURT: Are those checks in evidence yet?
MRS. PARLIONAS: I thought they're part of this, Your Honor, Prime Importing.
THE COURT: Part of what?
MRS. PARLIONAS: Prime Importing.
THE COURT: Are they in this binder?
MRS. PARLIONAS: I put them in the binder.
THE COURT: Where are they in this binder?
MRS. PARLIONAS: I don't know if I included it.
THE COURT: We're done. Here you go. These are in evidence. You can direct me to them in your closing statements. I'll take a look. Move on.
MRS. PARLIONAS: I would also like to say that this was not a complete --
THE COURT: You will not say anything about anything that is not in evidence or has been Id'd. I will allow you because they're in evidence.
In your closing statement you can direct the Court to look at what you want me to look at and I will consider

it but you're obviously not prepared to ask any questions. Move on.

MRS. PARLIONAS: I am prepared.

THE COURT: No, you're not.

MRS. PARLIONAS: I'm going to ask him about what bank accounts are within this bank account. I'm prepared.

THE COURT: Sir, what bank accounts are within that book. If you look at 939, 940 and 941, to the best of your ability what bank accounts are covered there and for who?

THE WITNESS: Can we go to the page with the bank accounts.

Q Page 30.

A Page 30.

Q Um, hum?

A What is Page 30?

THE COURT: Can you show him Page 30.

A This is all statements please going up to Page 6 or 7.

THE COURT: Ma'am, show him what page you are looking at. Okay. Don't move a page. Sir, leave it there.

THE WITNESS: That's 23, Your Honor.

THE COURT: Show him Page 30.

MRS. PARLIONAS: All right.

THE COURT: Stop there. He's looking at it now.

Ask him your question.
Q Can you see those wire transfers there, Sir?
A Yes, I do.
Q Can you tell us about those bank accounts?
THE COURT: Where are the wire transfers from and where are they to?
THE WITNESS: Okay. The wire from 9301 Prime Importing and I can't see an account over here.
THE COURT: Give it to me. I don't know what you can't see here, Sir, it's all very clear. Okay. There was a wire transfer on April 3, 2015 in the amount of $11,119.
Sir, where was that money transferred to?
THE WITNESS: I don't recall.
THE COURT: Okay. Let's here for the record it's Bank of China. Citibank. Okay. Then there's a wire dated 4/3/15 as well in the amount of $4,606.21.
Sir, do you remember where that went to?
THE WITNESS: The only expenses in China was the offices we have and the rental we pay.
THE COURT: Sir.
THE WITNESS: I don't remember.
THE COURT: The record indicates it went to shanghai Pudon and trade related. Sir, there's a wire of April 8th in amount of $2,000 Bank of China, trade related.
Do you know what that was for?

THE WITNESS: Nope. I don't recall.

THE COURT: There's another one April 8th in the amount of $4,889.13 wire transferred out Bank of Shanghai Pudon. Do you know what that was for; it says trade related?

THE WITNESS: No, Your Honor, I don't recall.

THE COURT: There was another wire dated April 13th out in the amount of $2,000 to the Bank of China, trade related; do you know what that was for?

THE WITNESS: Nope, not off my head.

THE COURT: April 24th another wire $2,000 Bank of China trade related; do you know what that was for?

THE WITNESS: Not from my head.

THE COURT: That was from Prime Importing International LLC. Who was the owner of that company, Sir?

THE WITNESS: It was in the last --

THE COURT: Who was the owner of the company at that time April 3, 2015?

THE WITNESS: I tried to reply, Your Honor.

THE COURT: April 3, 2015?

THE WITNESS: Me, Margarita and Angie.

THE COURT: Okay. You were all shareholders of that company, Sir?

THE WITNESS: Yes.

THE COURT: Thank you, Sir. Go ahead.

Q I'm trying to make a distinction that it was all trade related. Now, if you go to Page 73 so we don't --

A One second. The court view that. I did not view that. And I reply to him that I don't recall. So, I maybe able to give a more clear understanding this Court if I was allowed the time.

MS. COFFINAS: If you were allowed what?

THE WITNESS: Time.

THE COURT: If he was allowed the time. So, Sir, now that we've know what they are, take a look at them and if you can tell me what they were for, please do?

THE WITNESS: Your Honor, $11,119, it looks like a vendor. So, I will, a vendor. So, I need to look on the Prime quick books to see what we log for what vendor because through this letters over here, you can't tell except bank of China.

Okay. The 4,606.21 also looks like a vendor. 4,889 looks like a vendor. I would say the 2000 but very close to make payroll.

4/08, 4/13 and 4/20 Mrs. Parlionas was in China at that time and we wire money to Jack Lee, employee we had working over there to give it to her.

And I will have the Prime quick books recorded.

THE COURT: Okay.

THE WITNESS: This explanation I cannot remember

after 10 years where they went, what they went but it is Quick Books log this that we can produce.

Q Mr. Parlionas, I think I said Page 78. Can you go to Page 73?

THE COURT: Please show him instead of having him flip through. Please show him.

MRS. PARLIONAS: Sure.

A Okay. I look at it.

Q Which you is your bank account, private bank account to China?

A I don't recall from a number right now this account.

Q It has your name on it. If you look at 917, what does that say?

A Excuse me, Mrs. Parlionas, you allow proper time. Correct, that's going to my bank.

Q Is that a private bank account that you had in China?

A Yes, it was.

Q Did you ever report it to the IRS?

MS. COFFINAS: Objection.

THE WITNESS: I never have over $10,000.

THE COURT: Overruled.

MS. COFFINAS: Can I hear the answer, I'm sorry, Judge, I didn't hear the answer?

THE COURT: He said it never had over $10,000.

Q Well, Sir, can you go down this Line to 9/16 the date

9/17, 9/18 and 9/21 and tell me how much money you sent to your private bank account?

A I don't have a calculator with me.

THE COURT: Give it to me. I'll take judicial notice of the math. Let's go. What are the dates, Ma'am?

MRS. PARLIONAS: 9/16/15.

THE COURT: Okay. 9/16, $4,000. What else?

MRS. PARLIONAS: 9/15?

THE COURT: $6,000 that equals 10. Go ahead.

MRS. PARLIONAS: 9/18.

THE COURT: $5,000 we're up to 15.

MRS. PARLIONAS: 9/21.

THE COURT: Now we're up to 25 that's $10,000.

MRS. PARLIONAS: This account.

THE COURT: 4, 10, 15, 25 go ahead. What else, Ma'am, anything else?

MRS. PARLIONAS: For now, Your Honor, that's all I want to --

THE COURT: $25,000 on this page reflects going into the personal account of Mr. Athanasios Parlionas Bank of China all for have a reference of either family support or myself family report thereon. Here you go.

Q So, was there 25,000 in this account that you should have reported?

MS. COFFINAS: Objection.

THE COURT: Overruled.

A The money did not stay in my account. It was distributed. $7,000 was rent that we paid. No, it was more than $7,000 rent. It was --

MRS. PARLIONAS: I have the calculations, Sir, if you look above --

MS. COFFINAS: Can he finish his answer.

THE COURT: Sir, it says family support. It says -- I'm asking the questions. It says family support and self support.

THE WITNESS: Your Honor, in order to send money to China, you need to record China family support.

Q Can you look on 9/10/15 and tell me who that money was sent to?

THE COURT: Hold on a second. Sir, no. No. Sir, you just said in order to send money to China you have to record family support but yet there's other account statements there that where you clearly recorded trade.

So, why sometimes can you put trade and sometimes family support?

THE WITNESS: Private names. Private names is family support. Is an employee but says private support.

THE COURT: That's fine, Sir, go ahead.

Q On that, on 9/10/15, who was that money sent to, Sir?

A Li Hi Long (ph).

Q Who is this?
A That's a guy that a hired from 2009 to work in China for us and you know very well who he is.
Q I'm asking you. And so you sent him on 9/10/15 $2,000?
A I may not send it. Your daughter may send it.
Q On 9/11/15 family support $2,000, correct?
A What day?
Q 9/11/2015?
A Li Hi Long (ph) again.
Q How much did you send?
A $2,000.
Q On 9/14?
A One second. Correction. I may don't send. You may send it too.
Q 9/14/15, how much money was sent to Mr. Li Hong?
A 2000 again. That's all we was sending him any way.
Q Did Mr. Li How Low (ph) ever send you from the -- he worked for you in China; is that correct?
A Yeah.
Q Did he ever send you an itemized bill of everything he was paying, Sir?
A Yes, he does, he was.
Q Would you like me to show it to you?
A I don't know if you have it.
Q When things went in this account, Mr. Parlionas, before

I show you, did you get, did the bank notify you that you were, that wires were being sent, that what was being done in this account?

A I don't recall.

Q Is it true you asked him to first send you an original to send you and disregard, it says here, Sir --

THE COURT: Ma'am, it's not in evidence. You're not going to read from anything until it's in evidence.

Q Did you ever wire him money for your girlfriend Jenny?

A I don't remember. I don't remember.

Q Did you send him $2,000 for Jenny?

A Like I said just reply I don't remember.

Q Did you send him $3,000 for Jenny?

A Again, I don't remember 3,000, 4,000, 5,000.

Q How much money did you send him for Jenny your girlfriend?

A I don't remember.

Q You should have because you did an analysis here I was not here during that time. You should know exactly how much money you spend sending Jenny money to China?

A I say I do not remember.

Q Do you remember the total amount that you told the Judge that you sent?

A I don't remember if I sent Jenny money. The only money I give Jenny is and I don't remember how much was.



MJ

Q Mrs. Parlionas, let's go back to the 25,000 you sent to China?

A Go for it.

Q There's three different accounts; is that correct?

A Three different accounts.

Q Within this, one is your account, Sir?

A Yeah.

Q Private account that nobody has access to?

A No, nobody has access to.

Q Did you report it to the government?

A Like I told you, I don't have to report the government because I never remain more than $10,000 inside.

Q On that month you had never reported it?

A Well, that month went out immediately. It was just --

Q Did you ever give us accounting for that account in China or to this Court?

A No because you guys didn't give me accounting how much money pay for Yoyo.

Q We gave you all the accounting. Ms. Coffinas subpoenaed everything. We never stopped her.

MS. COFFINAS: I'm going to object to arguing.

THE COURT: Sustained. Sustained.

THE WITNESS: Okay. Do not say what you give Ms. Coffinas. I say --

MRS. PARLIONAS: Ms. Coffinas --

THE COURT: Stop. I said no more arguing. Ask a question. Answer questions.

Q So, Mr. Parlionas, on that day that you sent the $25,000 to China in your private account, what's the difference when we send it to trade?

A Trade?

Q Yeah, what does it mean when it's your sending money to trade?

A It's not trade. It's the commercial bank that you buy something.

Q Exactly.

A Yeah.

Q And Jack's account was for everything else that was being paid, correct?

A Jack's account was private account.

Q And he distributed and paid the electric and everything else that was --

A No. That was separate. That was his pay.

Q On the accounting that he sent you, he tells you exactly what he paid with that money. Is it not true that he was paying the electric and he was paying everything else because he could not access your account in China?

A No. He could not access my account and sometimes he of paying electric, some other things we ask him and if you break the lease over here this least this court can see how much money

was your Yoyo.

Q Mr. Parlionas, did you take this check and in evidence, Your Honor, this is check --

THE COURT: What number is it?

Q This is check --

THE COURT: What number is it?

MRS. PARLIONAS: 4842.

THE COURT: What number is it in evidence?

MRS. PARLIONAS: Oh. In exhibit the one with the --

MS. COFFINAS: 939?

MRS. PARLIONAS: Yes. Here's a copy.

MS. COFFINAS: You are giving me a copy of what I already have?

MRS. PARLIONAS: Yes, for the sake of not looking, you know.

THE COURT: Can you show Mr. Parlionas that check. I want to make sure it's in evidence. Don't worry about me.

MRS. PARLIONAS: You want me to find it in the book, Sir.

THE COURT: Yes, that's where the evidence is.

MRS. PARLIONAS: Okay. I can find it. I'm going to have to look at Mr. Parlionas' book to find it. I just took it out of the book to use it just for the sake of the

court to move quickly.

THE COURT: Show him.

THE WITNESS: From the reference of that check tell me so I can find it for you. I help you.

Q This was deposited $50,000 from the Home Equity Line of Credit. Actually on the bottom it shows that this is Wells Fargo's response 9, 1492.

It was deposited on 10/15 -- 10/15/2015 it was deposited.

A No.

Q It's in the back?

THE COURT: Please go approach the witness and show him in the book where that is.

MRS. PARLIONAS: Sure.

MS. COFFINAS: Judge, I have to make a record about this. This is a check issued by Modern Technology Contracting Corp to Prime Importing International and the bottom of the pages it says Wells Fargo response.

And I know subpoenas were served on Wells Fargo but Mrs. Parlionas said that this Exhibit 939 was Bank of America subpoena response.

So, I don't know how this is mixed in.

THE COURT: Can I see what you're saying? We definitely have to have a certification; otherwise, it's -- hold on. Not there. The certification is from whom?

MS. COFFINAS: I don't know. The bottom says Wells Fargo but this exhibit is supposed to be Bank of America.

MRS. PARLIONAS: It was deposited into Bank of America.

THE COURT: It's a Wells Fargo account.

MRS. PARLIONAS: That's the Home Equity Line of Credit.

THE COURT: It makes sense. Wells Fargo got this cancelled check, copy of the cancelled check and they provided it even though it's a Wells Fargo check and the certification is from Wells Fargo. Right.

MS. COFFINAS: No. This Exhibit 939 the certification is Bank of America.

THE COURT: Bank of America took over Wells Fargo?

MS. COFFINAS: No. They're two separate banks so I don't know why it's in this exhibit.

MRS. PARLIONAS: It is because it was deposited into this exhibit I may have told the wrong one but it was in here.

THE COURT: No. No. No. Mrs. Parlionas, if your stuff is not in the right order we're not going to wait for you to put it in the right order.

MRS. PARLIONAS: Okay.

THE COURT: You don't have to look at it. Mr.

Parlionas, Mrs. Parlionas, move on. There will be no questions regarding this document.

MRS. PARLIONAS: Wait a minute.

THE COURT: Next question.

MRS. PARLIONAS: Mr. Parlionas, I have to find the check now for him. This doesn't even have a check number on it. Okay. Okay.

THE COURT: Okay. We're done for today. Ms. Coffinas, are we back here tomorrow?

MS. COFFINAS: Yes.

THE COURT: Mrs. Parlionas.

MRS. PARLIONAS: I will have this ready.

THE COURT: Listen to me. I want to make this clear on the record. I'm reconsidering Ms. Coffinas' initial application today.

We have tomorrow and we have 9 days in August.

MRS. PARLIONAS: I found it.

THE COURT: Listen to me.

MRS. PARLIONAS: I found it.

THE COURT: Tomorrow. Tomorrow, I'll give you the same leeway I have given you today. Then you have almost two months to get your ducks in order.

If we come back in September -- if we come back in August and it's more of the same, I'm going to limit your questioning of Mr. Parlionas to two more days, two more

sessions thereafter.

If you're not better organized, your questioning with Mr. Parlionas will end. After you question him tomorrow and then two more days in August.

We will not have more of the same. We're done for today. We're done because I'm giving you an opportunity to try to get yourself organized.

Ma'am, I'm not looking at anything else today. I can't run a courtroom this way. You get yourself organized. Get yourself a lawyer. Do something.

And keep in mind, I strongly recommend you talk to Mr. Worms because there's a real risk that you might not even be taking testimony in August.

You may, you may, you have the potential of finding yourself trying to get a meal on Rikers. Okay. Bring your toothbrush on the next date just in case and that's it.

We're done. I will see you tomorrow. I will see you tomorrow. We are done for the day. You can step down, Mr. Parlionas.

Ms. Coffinas, you can pack up. We'll be back here tomorrow. Remember, you are now on the clock, Mrs. Parlionas. We cannot have more of this. Thank you.

(Whereupon, the trial was adjourned to Thursday, May 21, 2026 at 2:00 p.m.)

# EXHIBIT 11

Certified Transcript of Proceedings, May 21, 2026
Supreme Court, Queens County, Part 63
Index No. 721778/2020

COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS : CIVIL TERM : PART 63
----------------------------------------X
MARGARITA PARLIONAS,

Plaintiff,

Index No. 721778/2020

-against-

BENCH TRIAL

ATHANASIOS PARLIONAS,

Defendant.
----------------------------------------X

Supreme Courthouse
88-11 Sutphin Boulevard
Jamaica, New York 11435
May 21, 2026

B E F O R E:

THE HONORABLE WILLIAM A. VISCOVICH,

Supreme Court Justice

A P P E A R A N C E S:

For the Plaintiff:
MARGARITA PARLIONAS
11 The Hemlocks
Whitestone, New York 11576
BY: MARGARITA PARLIONAS (PRO SE)

For the Defendant:
COFFINAS & LUSTHAUS, P.C.
186 Joralemon Street, Ste 701
Brooklyn, New York 11201
BY: MARIA COFFINAS, ESQ.

MONICA JENKINS
SENIOR COURT REPORTER

THE CLERK: Queens Supreme Court Part 63 is now in session. The Honorable William Viscovich presiding. This is a continued trial of Index 721778 of 2020, Margarita Parlionas versus Athanasios Parlionas.

The Court is back on the record and all appearances remain the same. Both party's please raise your right hand.

Do you solemnly swear or affirm to tell the truth, the whole truth and nothing but the truth?

MR. PARLIONAS: Yes, I do.

MRS. PARLIONAS: I do.

THE CLERK: Thank you. You maybe seated.

THE COURT: Let's continue I guess.

MR. PARLIONAS: In my favorite seat.

(Whereupon, the witness returned to the witness stand.)

THE COURT: At 4:15 we are stopping today, not going to be one more question, can I finish, no, 4:15 on the nose.

I'm standing up, calling it for the day and walking off the bench. Just to let everybody know. Mrs. Parlionas, go ahead.

DIRECT-EXAMINATION

BY MRS. PARLIONAS:

MRS. PARLIONAS: Your Honor, I would like to

submit into evidence it's a subpoena document.

THE COURT: You want to ID it, give us a number, what do you want it to be?

MRS. PARLIONAS: Exhibit 1005.

THE COURT: Thank you. 1005 for identification.

(Whereupon, the document was marked for identification as Plaintiff's Exhibit 1005.)

COURT OFFICER: Plaintiff's 1005 marked for ID and being shown to the witness.

MS. COFFINAS: Your Honor, I'm going to object.

THE COURT: Let's get it ID'd first.

MRS. PARLIONAS: This is --

THE COURT: What is it, Ma'am?

MRS. PARLIONAS: This is a subpoenaed document. This account was not voluntarily disclosed.

THE COURT: What is it?

MRS. PARLIONAS: It's the check that belongs to the Bank of China that proves that Mr. Parlionas --

THE COURT: Ma'am, can I see it? I just want to identify it.

MRS. PARLIONAS: Sure.

THE COURT: Ma'am, there's a lot of stuff here. I don't see a check.

MRS. PARLIONAS: I could give you mine, Your Honor. It's open to it. May I approach?

THE COURT: Ma'am, I told you starting today I told you to have copies.

MRS. PARLIONAS: I have copies. I have three copies, Your Honor.

THE COURT: There's not a single check here.

MRS. PARLIONAS: Docket --

THE COURT: There's not a single check there. What is 1005 allegedly?

MRS. PARLIONAS: This is a subpoenaed document from the Bank of China referring to the account we talked about yesterday Athanasios Parlionas.

THE COURT: Ma'am, I do not see a certification from the Bank of China here. Please strike it all from the record.

That's not a check, Ma'am.

MRS. PARLIONAS: It never was a check, Your Honor.

THE COURT: Where is the certification?

MRS. PARLIONAS: Maybe I don't know what you're asking for. I'm not an attorney, I'm sorry. This is a subpoena that you authorized.

THE COURT: Ma'am, where's the certification. I'm going to say alleged check from Bank of China identified alleged check from --

MRS. PARLIONAS: It was a wire.

THE COURT: From Bank of China is how you

described it, Ma'am. It's not in evidence. There's no certification. Account is sustained. Move on.

Q Mr. Parlionas, can you go to Page 73?

MS. COFFINAS: I'm objecting, Your Honor.

THE COURT: Of what?

MS. COFFINAS: Wait.

THE COURT: Page 73 of what? Ma'am, Page 73 of what?

MRS. PARLIONAS: Would you like me to help, Exhibit 939.

THE COURT: Okay. That is in evidence. Go ahead.

Q Mr. Parlionas, are you looking at Page 73?

A I am.

Q The account number, Sir?

A The account number of this, the New York account or the account they went?

Q The New York account?

A 9301.

Q Thank you. The account that your name is under, the private account, Sir?

A I can't tell which is the account I'll be honest with you.

Q If you look at 9/16/15 you will be able to look at the account I can point it out to you if you like?

A Pull out. I don't recognize account. It's a bunch of

numbers. You just say could you identify account.

Q It's right here, Sir.

A I don't know if that's the account number. It says Id.

Q Please read the account number?

A It can be a bank number Athanasios Parlionas Id.

Q Go ahead?

A [redacted]

Q Thank you, Sir. Is that the bank account, if we go down the row, 9/16, 9/17, 9/18, 9/21 that you sent to your private bank account in China $25,000 on that day?

MS. COFFINAS: Objection. Your Honor, this was covered yesterday.

THE COURT: Sustained.

Q It says here $25,000; is that correct, Sir?

THE COURT: What was the question may I ask?

Q What was the total on these, this money sent to China?

A I rely --

MS. COFFINAS: Objection. This was testimony yesterday.

THE COURT: Sustained. Strike any answer.

Q Mr. Parlionas, can you go to Page 83?

A Page 83.

Q On 10/16/2015 how much money did you send to this account in China?

MS. COFFINAS: Objection.

MRS. PARLIONAS: That was not covered yesterday.

THE COURT: Sustained. Actually overruled, you are correct. Okay. Different dates I believe.

MS. COFFINAS: It hasn't been established in any questioning that Mr. Parlionas sent any money on this date.

THE COURT: Well.

MRS. PARLIONAS: This is a private account. We established it yesterday.

THE COURT: Is it from the private account?

MRS. PARLIONAS: Yes. That's the private account, Your Honor.

MS. COFFINAS: It's not a private account. It's the Prime Importing International Account.

MRS. PARLIONAS: There are three accounts. There are three, one is Athanasios Parlionas and the other two are family trade.

We went over this yesterday, Your Honor.

THE COURT: Okay.

MRS. PARLIONAS: Family trade is and trade are totally different and the private account of Mr. Athanasios Parlionas is totally different.

This is what the subpoena was about.

THE COURT: I will allow the question. Go ahead.

Q Does that account say Athanasios Parlionas?
A The receiving accounts says Athanasios Parlionas.

Q Correct. And it says $5,000 in the receiving account that was stated was done?

A That's correct.

Q Thank you so much. Mr. Parlionas, if we go, you're probably going now to the table of contents. If I show you a page number, do I have to show?

A Tell me the page and what paragraph?

Q Okay. Can you go to Page 43.

A 43 now.

Q Um, hum?

A Page 43.

Q Do you see, Sir, where it says check number 1269?

A 1269, yes.

Q On 6/1?

A Yes.

Q Can you tell me the amount, Sir?

A 6,500. Actually, excuse me, I see a ledger. I don't see a check.

Q Correct. I'm going to show you a check.

MRS. PARLIONAS: Your Honor, these documents were subpoenaed but as you know there was many checks that were not in evidence and were not sent from the bank.

I'm a corporate officer. These checks that I give Mr. Parlionas will reflect the ledger.

THE COURT: Ma'am, they're not in evidence yet.

You got to get them in evidence then we'll talk about them first.

MRS. PARLIONAS: This is Exhibit 1038.

THE COURT: Can we mark this plaintiff 1038 for ID, please.

MS. COFFINAS: Your Honor, may I ask that at some point the exhibit list be sent to us by email or some other way that we can have the exhibit list?

THE COURT: Maybe we can make you a copy. Believe it or not we don't have a copy machine. Don't even get me started.

Can we please at the end of the day email Ms. Coffinas a copy of the most updated exhibit list, the bridge sheet. Send it to both them.

MS. COFFINAS: If we get it next week, that's fine.

(Whereupon, the document was marked for identification as Plaintiff's Exhibit 1038.)

COURT OFFICER: Exhibit 1038 marked for ID.

MRS. PARLIONAS: Can I ask?

THE COURT: Ma'am, it's your evidence.

Q What check number is that, Sir, you are holding?

A 1269.

Q Did you cash that check?

A I cashed that check and my daughter rob it to me, yes.

My daughter wrote it to me.

THE COURT: Okay. This is exhibit, what, for ID? 1038, okay. Great. Thank you. What is it identified as, first of all, check number what?

MRS. PARLIONAS: Check number 1269.

THE COURT: From what account?

MRS. PARLIONAS: Prime Import 3042.

THE COURT: Ending 3042; is that right?

THE WITNESS: Correct, 3042, Your Honor.

THE COURT: Go ahead.

Q How much is the amount of the check?

A $6,500.

Q Did you take it in cash?

A Well, I cash it. I don't know what I did with that. I deposit whatever I did. I don't know but it was in my name and my signature wrote it by process it by my daughter.

Q Does it say you took $6,500 in cash, Sir?

A No, doesn't cash, says I give me check to my name. I don't know what I did with it, if I deposit, I have a signature over there.

I don't remember what I did 10, 11 years ago.

Q Thank you.

A You're welcome.

THE COURT: Are you putting this check into evidence?

MRS. PARLIONAS: Absolutely. Into evidence, please.

MS. COFFINAS: Your Honor, it appears to be a check that was part of a subpoena response. So, I have no objection.

THE COURT: In evidence as 1038.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 1038.)

COURT OFFICER: 1038 marked and received in evidence.

THE COURT: Move on, Mrs. Parlionas.

MRS. PARLIONAS: Exhibit 1040?

THE COURT: For ID.

MRS. PARLIONAS: Check 275, again on Page 43.

THE COURT: This is already in evidence? No.

MS. COFFINAS: I have no objection, Your Honor. It'S part of a series of checks.

THE COURT: Okay. In evidence, no problem. Check 1040 you wanted in evidence, Mrs. Parlionas, correct?

MRS. PARLIONAS: Yes. Mr. Parlionas --

THE COURT: Hold on.

COURT OFFICER: Exhibit 1040, check 1275.

THE COURT: What date is the check so we're clear?

COURT OFFICER: 6/30/2015.

THE COURT: Thank you.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 1040.)

COURT OFFICER: Exhibit 1040 in evidence.

THE COURT: Yup. Show it to the witness.

Q Can you please tell me the check number, Mr. Parlionas?

A 1275.

Q Who is it made out to?

A Athanasios Parlionas by process by my daughter.

Q Sir, if you look on the bottom of the right-hand-corner of the check, it says cash check which means you took it in cash?

MRS. PARLIONAS: May I show the witness?

THE COURT: Sure.

THE WITNESS: I don't know what it is.

Q Right here?

A Show cashed check.

Q So you cashed the check, Sir, do you know what you did with it, Sir?

A I don't remember what I did with it.

Q It says it right there, cashed check?

A I don't care what it says. I tell you what I remember.

MS. COFFINAS: Your Honor.

THE COURT: Sustained.

Q Mr. Parlionas, you recognize your signature, from what account was it, let's verify?

A 3042.
Q And you do see that it says, check cashed?
A Oh I see. That may say I may have deposit. I don't remember what I did with it.
Q We can verify from the bank. Thank you, Sir.
A You're welcome.

MRS. PARLIONAS: I would like to enter this into Exhibit 1039.

THE COURT: 1039 for ID.

(Whereupon, the document was marked for identification as Plaintiff's Exhibit 1039.)

COURT OFFICER: Plaintiff's 1039 marked for ID and being shown to the witness.

MS. COFFINAS: No objection.

THE COURT: In evidence. Officer, just for my own benefit, can you tell me is there a check number there on that?

COURT OFFICER: Check number 1271.

THE COURT: Okay. Check number 1271. What's the date on that?

MRS. PARLIONAS: 6/11/2015.

THE COURT: 6/11/2015, thank you, Officer. In evidence.

(Whereupon, the document was marked in evidence as Plaintiff's Exhibit 1039.)

COURT OFFICER: Plaintiff's 1039 marked and received in evidence.

Q Mr. Parlionas, what is that check number, please?

A One second. Let me look at the other page because you have two pages over here.

MRS. PARLIONAS: I'm sorry.

A 1271 the first Page and 1271 the second Page.

Q Okay. How much is the amount?

A $7,500.

Q From what account is that, Sir?

A 3042.

Q Is that your signature?

A That's my signature and my daughter's signature.

Q That is not your daughter's signature. It doesn't matter. I'm asking you did you cash that check?

A I recognize my signature and I recognize my daughter's signature.

Q So, you took the check and you cashed the check. On the bottom it says, check cash?

A I don't remember what I do 11 years ago.

Q But you do remember that is your signature?

A That is my signature.

Q Thank you so much.

A You're welcome.

Q So, from this account at this moment you cashed

$21,500; is that correct, Sir?

A I don't remember if I cash.

Q Your signature was on the check?

A My signature is there. I took responsible of this money. I don't know what I did with them. I don't know if I cash. I don't know if I deposit them.

I don't know if I cash them and give them to you.

MRS. PARLIONAS: Your Honor.

A So please.

Q Doesn't recognize cash, so --

THE COURT: Excuse me?

MRS. PARLIONAS: If he gave it to me? Your Honor, you don't recognize this? I'm sorry, well --

THE COURT: Mrs. Parlionas, don't put words in my mouth. I did not say I don't recognize cash.

Q Now, this is Exhibit 1046. Mr. Parlionas, can you go to Page 52?

THE COURT: Hold on. Is this in evidence, 1046?

MRS. PARLIONAS: Not yet, Your Honor.

THE COURT: So, no, you are not going anywhere.

1046 for ID whatever it is.

MS. COFFINAS: No objection.

THE COURT: Mrs. Parlionas, I've been informed you're recording these proceedings. Please surrender your phone to the court officer.

MRS. PARLIONAS: Wait, can I have that, please?

THE COURT: No, you may not.

MRS. PARLIONAS: I need to use it, Sir.

COURT OFFICER: It's recording.

THE COURT: Okay. Okay. We're going to have -- step back. Step back. We're going to stop the recording right now.

MRS. PARLIONAS: Why, am I not allowed to record?

THE COURT: You have been told this numerous times. You are now in summary contempt of court for recording.

There are signs all over the courthouse. You now at best go find an attorney because now we got problems.

MRS. PARLIONAS: But why?

THE COURT: Because you're not getting your phone back.

MRS. PARLIONAS: I understand that but why can I not record?

THE COURT: Because it is not permitted in the courtroom without the permission of the judge, which you did not seek.

And I believe I have told everybody several times. In fact, I think I allowed you to keep your phone on once already with a specific instruction that it can only be used for legal research or a question.

Nope. We're done.

MRS. PARLIONAS: I didn't know, Your Honor. For the record, I did not know.

THE COURT: Ma'am. Ma'am. I don't know what the remedy is going to be but your case maybe over.

MRS. PARLIONAS: For something I didn't know, Your Honor?

THE COURT: Ma'am. Ma'am. I want to make something very clear on the record. I want it on the record.

Ma'am, I've had the chance to observe you now for 5 years.

MRS. PARLIONAS: I'm not an attorney.

THE COURT: Quite frankly, you may not be an attorney --

MRS. PARLIONAS: No, I'm not.

THE COURT: You are not mentally limited in any way.

MRS. PARLIONAS: I am.

THE COURT: There are signs all over this courthouse and you have been told by me that you are not to record.

MRS. PARLIONAS: I never knew that, Your Honor.

THE COURT: Ma'am.

MRS. PARLIONAS: I have short-term memory and I

don't remember.

THE COURT: Ma'am, okay. I have given you as much leeway as I am going to give you. You have no more leeway.

Okay. And I want to make this clear, I may be taking your phone into evidence now. I don't know what I'm permitted to do.

I'm going to find out but right now, Ma'am, you are in deep trouble.

MRS. PARLIONAS: I don't understand why.

THE COURT: Okay. I can't explain it anymore.

MRS. PARLIONAS: I didn't know that.

THE COURT: I'll read to you. Outside of every elevator bank in this courthouse, where I know you have spent a great deal of time because I had a chance to observe you, in the courtroom and out in the hallway many times.

Notice: No cameras or audio visual recording, no audio, video recording devices maybe used in this courthouse unless expressly authorized by the administrative judge.

That's not even me, has to be authorized by my boss. Unauthorized use will result in the confiscation of the device.

So, therefore, consider your phone confiscated. Proceed with your case. Go ahead. We will just -- I would

like. I would like to have the phone put in an envelope, officer.

We will be mark it Court's Exhibit 1 in evidence. I will ask it be given over the weekend. I will ask it be given to the, um, to the captain to be held until we figure out what we're going to do with this.

MRS. PARLIONAS: For the record I never saw that sign. I understand. That's fine.

THE COURT: Ma'am, there maybe further actions taken. I have to see what I can do but you're not getting your phone back today.

MRS. PARLIONAS: I understand. Exhibit 12, I'm sorry, is it in evidence, the check, check 1278?

THE COURT: Yes, I'm giving you a hand here. I don't know why. Exhibit 12 is in evidence 2010 form 1065, US Partnership income.

It's in evidence. Go ahead.

Q Mr. Parlionas, are you on Page 52?

THE COURT: Does he have Exhibit 10 in front of him?

MRS. PARLIONAS: I don't know.

THE COURT: Well, Ma'am -- Mr. Parlionas, look at nothing, touch nothing. She asked you about Exhibit 10. Is exhibit -- can we please show, is it 1046 or 10?

MRS. PARLIONAS: 1046.

THE COURT: Hold on. Exhibit 1046, hold on. We're off the record a second.

(Whereupon, a discussion was held off the record.)

(Whereupon, a recess was taken.)

THE COURT: All right. Mrs. Parlionas, I just wanted this to be on the record. During the testimony today, despite numerous court rules about recording in the courtroom, despite the fact that the hallways are full of signs as I read to you on the record, forbidding the recording of proceedings, you're witnessed today recording the proceedings against every rule that we have basically.

As such, I hereby find you in summary civil contempt. I'm going to ask the officers to take your phone into custody.

It will be marked Court's 1 in evidence in an envelope that the court officers will hold. Ma'am, as I did previously, although in theory I want to make it clear although in theory I could have you incarcerated today.

Again, as I have done before, I'm going to give you a chance. Please be here Tuesday morning at 9:30, Wednesday morning at 9:30.

I advise you on the record to have an attorney present with you. I have previously, again, appointed Mr. Worms to represent you on the prior contempt.

My office will reach out to Mr. Worms and inform

him that you will be here Tuesday morning, Wednesday. But he is not signed on this particular, Wednesday, he is not signed on this particular contempt.

Now, I want to make clear again on the last date, I told you that as a courtesy I would give Mr. Worms time to look into things on the prior contempt and I would not consider incarceration until the next date in September.

That portion of anything I said is now off the record. I'm going to strongly consider incarcerating you on Wednesday morning.

We are going to mark the phone in this proceeding Court's 1 in evidence. Ma'am, your phone will not be returned to you until the conclusion of these proceedings. We're done for the day.

MS. COFFINAS: May I make a record?

THE COURT: Court's 1 in evidence. I'm asking that the envelope containing Court's 1 in evidence be turned to over Captain Dolosa (ph).

Captain Dolosa, are you acknowledging that you are taking this involve in custody.

THE CAPTAIN: Yes.

THE COURT: It will be stored in a safe in the courthouse?

THE CAPTAIN: It will be maintained in safe storage as evidence.

THE COURT: Understood. Thank you, Captain, very much. I'm also directing that at any future court appearance, any electronic device you are carrying is to be vouchered by the court officers upon your entry into the courthouse, Ma'am.

It will be in safekeeping. You can retrieve anything you give them on the way out the door. Okay. Ms. Coffinas, I'll let you go on the record again as a courtesy but I want to point out one thing.

You are not part of the summary contempt proceeding here. So, quite frankly, you don't have an official position in what I'm doing here.

I want to make that clear.

MS. COFFINAS: Your Honor, if I may still make my record? May I do it sitting, please? May I do it seated?

THE COURT: You may.

MS. COFFINAS: Thank you, Your Honor. I'm going to ask that you consider adjudicating Mrs. Parlionas in criminal contempt.

And that is because she has met the standard for a finding of criminal contempt. Just give me a moment, please.

THE COURT: I will consider that on Wednesday, Ms. Coffinas. To be very honest with you, I need to get my ducks in order on this thing.

If I'm going to incarcerate somebody, I want to make sure it's done properly, that she has a chance to retain counsel.

And I will do whatever research I have to do between now and Tuesday. I don't know if you will be here but believe me, the criminal contempt is something I'm considering.

MS. COFFINAS: And that is because her conduct fits the criteria of disorderly contempt with insulant behavior committed during this proceeding.

And in the view of everyone present here in this courtroom today and it has been going on beyond today. It's been going on all week and maybe even before that.

We don't know how long she has been recording proceedings in this case. She admitted she --

THE COURT: Ms. Coffinas, I'm going to interrupt you and say this. Again, I'm aware of the statute. I will research it accordingly but please keep in mind you really don't have a position here.

This is a decision that's left I believe exclusively to this Court's discretion.

MS. COFFINAS: May I just state one thing.

THE COURT: You are not the prosecutor. There's no prosecutor in this case. This is basically a summary proceeding.

I understand what the statute is. I'll consider both criminal and summary contempt and if you would like to submit a memo of law on this issue on Wednesday for me to consider, I might accept it and I might consider it or I might find it helpful.

But I'm really, it occurs to me that in this matter I'm basically the prosecutor and the sentencer if there is to be a sentence.

Let's call it a day.

MS. COFFINAS: May I state one more thing on the record.

THE COURT: Sure.

MS. COFFINAS: I just want to make it clear dthat Mrs. Parlionas is certainly aware that all of the proceedings we had in trial for the past three years have been recorded by a court reporter.

She knows that. She herself ordered transcripts pro se, one of which she put in evidence yesterday as Exhibit 823. Thank you, Your Honor.

THE COURT: Thank you very much, Ms. Coffinas. Ms. -- okay. Please listen to me carefully, Mrs. Parlionas.

I'm actually advising you, can't stop you from saying anything, I'm advising you not to say a word. If you insist on speaking I will allow it but I'm advising you

and I want this on the record.

I'm advising you not to say a word. I can't stop you from saying a word but I urge you and advise you not to say a word.

You have a Fifth Amendment right. You are not required to testify. You are not required to present evidence or to testify in any manner that might implicate you.

You decide now if you want to speak. Last time I'm going to say it. I strongly advise you not to.

MRS. PARLIONAS: Wednesday what time, Your Honor.

THE COURT: 9:30 be here with an attorney. We're off the record.

*************************

CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT OF THE ORIGINAL MINUTES TAKEN OF THIS PROCEEDING.

[redacted]

SENIOR COURT REPORTER

# EXHIBIT 12

Certified Transcript of Proceedings, May 27, 2026
Supreme Court, Queens County, Part 63
Index No. 721778/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS : CIVIL TERM : PART 63

------------------------------------------X

MARGARITA PARLIONAS,

Plaintiff,

-against-

Index No. 721778/2020

ATHANASIOS PARLIONAS,

SUMMARY CONTEMPT SENTENCING

Defendant.

------------------------------------------X

Supreme Courthouse
88-11 Sutphin Boulevard
Jamaica, New York 11435
May 27, 2026

B E F O R E:

THE HONORABLE WILLIAM A. VISCOVICH,
J U S T I C E of the Supreme Court

A P P E A R A N C E S:

Plaintiff appearing Pro Se

VALERIE McNALLY
Senior Court Reporter

THE COURT CLERK: All rise. Queens Supreme Court Part 63 now in session. Honorable William Viscovich presiding.

This is a summary contempt sentencing of the plaintiff Margarita Parlionas on Index Number 721778 of 2020, Margarita Parlionas versus Athanasios Parlionas.

Let the record show no other parties are present.

Mrs. Parlionas, please raise your right hand. Do you swear to tell the truth, the whole truth and nothing but the truth?

THE PLAINTIFF: I do.

THE COURT CLERK: State your name and address in a loud and clear voice for the record.

THE PLAINTIFF: Margarita Parlionas, 157 -- no. 11 The Hemlocks.

THE COURT CLERK: Full address?

THE PLAINTIFF: Roslyn.

THE COURT CLERK: Zip code?

THE PLAINTIFF: Don't know.

THE COURT CLERK: You may be seated.

THE COURT: Ms. Parlionas, I advised you to come with counsel today, correct, previously?

THE PLAINTIFF: I do not have counsel, Your Honor, which I don't know what I am here for today, Your Honor.

THE COURT: Ms. Parlionas, I want to make it

clear, you are here because I found you in summary civil contempt last week. I asked you to come with counsel today. You were recording the proceedings on your telephone, despite my warnings to you in the past that the telephone was to be used only for legal research.

There are signs all over the building indicating recording the proceedings are not permitted, that's why you are here, Ms. Parlionas.

Do you have any other questions, if you have anything else you would like to say?

THE PLAINTIFF: Yes, I would, Your Honor. I am not here with counsel. I don't know what was going to happen. I apologize to the Court.

THE COURT: Ms. Parlionas --

THE PLAINTIFF: You have never said --

THE COURT: Ms. Parlionas, again I want to make something clear.

THE PLAINTIFF: Yes, Your Honor.

THE COURT: I want to make it very clear because I see where you are going with this.

THE PLAINTIFF: Yes.

THE COURT: I could have locked you up last week. I didn't.

THE PLAINTIFF: Yes.

THE COURT: I told you to come in with counsel

today because you may get locked up today and I wanted you to have the opportunity to retain counsel.

Go ahead.

THE PLAINTIFF: I do not have counsel. I was going to go today to talk to Judge Margaret Gray, I believe her name is, to hire me an attorney because I cannot afford an attorney. I don't understand the procedures. I don't have an attorney and I didn't know, that's it.

Also, I would like to put on the record that nothing was ever said in this court about recording. They weren't used for anything. I have macular degeneration. You ruled against me to have the poor thing. I have fallen and I have short-term memory, Your Honor, which you are all aware of everything.

So right now I do not have attorney. I don't know what is going on. I wanted to go to judge and ask for counsel. I believe it's Judge Earl Gray who could give me counsel because I cannot afford one.

And we have written a motion. I don't know exactly who's on the motion. If you read the motion, Your Honor, I am not sure.

THE COURT: First of all, your motion was denied because your motion directed the defendant to appear and to perform certain actions. The defendant has no role in the issue of whether or not you are in contempt of this Court.

That is my decision and my decision alone.

THE PLAINTIFF: What defendant? I am sorry, Your Honor.

THE COURT: Your husband. You asked specifically that he be brought to -- you asked that the defendant Athanasios Parlionas appear. He has no role in the contempt proceeding. He is not the one who found you in contempt. His lawyer asked I hold you in criminal contempt; I did not do so. You are in civil contempt. As such, he has no role here and he cannot stop this proceeding so your Order to Show Cause is denied.

THE PLAINTIFF: I thought this was for the other contempt. I am sorry.

THE COURT: No, ma'am. Let's just get down to it.

THE PLAINTIFF: Okay.

THE COURT: Ma'am --

THE PLAINTIFF: Will I be able to get counsel, Your Honor?

THE COURT: Ma'am, your opportunity -- and I don't believe you are destitute, ma'am.

THE PLAINTIFF: Why do you feel I am not destitute, Your Honor?

THE COURT: Because I held you in contempt previously, twice to be clear, for transferring an asset that, I believe, was worth $250,000 --

THE PLAINTIFF: It was not.

THE COURT: -- during the course of these proceedings. Ma'am, you still have a contempt. I did not incarcerate you on those two contempts. I gave you an assigned counsel on those two contempts, which are coming back in September.

I did not want to incarcerate you, but it has become clear to this Court that the money part of it doesn't seem to affect you.

You do what you want no matter what you want to do, so I think the only thing I can do to prove a point is to incarcerate you. That's what is going on here, ma'am.

THE PLAINTIFF: Yes.

THE COURT: You know exactly what is going on. I have had the chance to observe you acting pro se in this matter. You have been prepared, you are asking questions, you are conducting yourself somewhat competently in your trial. But you, in fact, have been found to be in civil contempt twice. On those two occasions, I did not incarcerate you, although that is yet to be decided in September.

However, I found you to be in summary contempt on Wednesday for recording, as I said. So please go forward with this, ma'am. I can't make it any clearer.

THE PLAINTIFF: Your Honor, may I say something

else?

THE COURT: Ma'am, this is it.

THE PLAINTIFF: The contempt charge you charged with me with yo-yo is totally, totally wrong and Miss G's report is totally wrong. I was in total debt of $3 million. I did not -- Your Honor never gave me an opportunity to show any of the -- any of the reports that we did, which was not competent IRS agent who worked for the government who did the same procedures. It was totally in debt, Your Honor.

I owned $4 million in debt. I did not do it for any other reason. No, I did not do it. And this is the first contempt charge.

The other one, Your Honor, I apologize for, you know, but for the yo-yo contempt is totally wrong and once I am proven innocent of that, Your Honor will see it's clear that I did not do it. There was no money, there was nothing in that account. It was total debt, Your Honor.

THE COURT: Ma'am, I don't have the document in front of me but I believe that business was appraised and found to have a value of $500,000 or so. You own half of it and you transferred it --

THE PLAINTIFF: No.

THE COURT: -- during the proceedings. Ma'am, let's proceed.

Taking photographs, films or videotapes, or audio taping, broadcasting or telecasting, in a courthouse, including any courtroom, office or hallway thereof, at any time or on any occasion, whether or not the court is in session, is forbidden unless permission of the Chief Administrator of the Courts or a designee of the Chief Administrator is first obtained; which it was not in the this case -- provided, however, that the permission of the Chief Judge of the Court of Appeals or the presiding justice of an Appellate Division shall be obtained with respect to the court over which each presides.

None of that permission was granted, ma'am. There are signs all over the courthouse.

In addition, you have been using the phone; I have allowed you to use the phone and made very clear the phone is only used for legal research or if you have a script on your phone for questioning, you could.

It turns out you were recording the proceedings. My court officer observed you recording the proceedings. We have taken the phone into evidence. It is in evidence as Court's Exhibit I. It will remain in evidence as Court's I until your time to appeal this decision has expired, at which time the phone may be returned to you once your time to appeal has expired.

After due deliberations, this Court has found the

plaintiff to be within summary contempt of the court. And I did that on Wednesday, I instructed you -- Thursday, I instructed you to appear here today for consideration of whether there would be a sanction, fine, punishment and/or sentencing.

It's uncontroverted that the plaintiff utilized her cell phone to record the proceedings. She admitted to the same, citing that she did not know she could not.

This Court outlined on the record and read verbatim to you the signs posted and placed outside all of these courtrooms. In addition, as the Court points out again, you have been told several times the phone could only be on for limited purposes.

THE PLAINTIFF: Not true.

THE COURT: What power do I have? I have the power to sanction, fine and sentence and otherwise punish a litigant or attorney for contempt.

Ma'am, as you have already been found in summary contempt of court as outlined above, you knowingly committed a misdemeanor. I am not holding you in criminal contempt, I am holding you in civil contempt.

Plus, ma'am, I want the record to be clear. You have been held in contempt at least once and I believe twice before by this Court. This Court chose not to incarcerate you on those two contempts and, in fact, as I

stated previously, I have assigned you an attorney on those two contempts.

THE PLAINTIFF: I only know one.

THE COURT: Because, ma'am --

THE PLAINTIFF: I am sorry.

THE COURT: Because, ma'am, I wanted you to have counsel. I gave you an opportunity to have counsel today. You chose to appear without counsel.

Now, ma'am again, I know you are claiming you don't have money --

THE PLAINTIFF: I don't.

THE COURT: But again, ma'am, I found you in contempt previously for transferring at least $250,000 worth of assets.

THE PLAINTIFF: Which was wrong evaluation, Your Honor. I only have 25 percent.

THE COURT: Nonetheless, whether they were worth zero or $250,000, ma'am, you transferred the shares in violation of the automatic orders.

THE PLAINTIFF: That's a different story, Your Honor.

THE COURT: In addition, ma'am, I would point out, and I want to make clear, the Court has been trying to be extremely helpful to you. You declared bankruptcy and I want to be clear, because you appeared pro se, this Court

told you that declaring bankruptcy would stop the sale of the home for a while, but eventually the sale would go through.

Again, because you are operating without counsel, the Court advised you after you said no -- and ma'am, let be very clear, you said the bankruptcy trustee was your friend and was going to help you -- I told you what was going to happen when the house got sold after you filed, didn't I? And that appears to have happened. You simply don't listen.

You went to the closing and your share of the money went to the bankruptcy trustee, not to you, and your husband's share of the money got picked up by the New York State Tax Department and both of you walked away with nothing. Your husband didn't declare bankruptcy, which is why the Tax Department appears to have taken his share of the money. You declared bankruptcy and your share of the money went to the bankruptcy trustee. Again, because you don't listen.

I am not your lawyer. I told you to reconsider the bankruptcy, that you should talk to somebody. You didn't and you lost the house. Ma'am, it's obvious that the money concerns do not affect you.

THE PLAINTIFF: Your Honor, may I speak?

THE COURT: Having come before this Court and the

Court having found after a hearing on May 27, 2026, that the plaintiff, Margarita Parlionas, has violated New York Civil Rights Law Section 52 and that said violation was calculated, it is ordered that Margarita Parlionas is found to be in contempt of this Court's order and it is ordered that Margarita Parlionas is sentenced to a period of seven days incarceration to the New York City Department of Corrections.

And Margarita Parlionas is remanded to the custody of the New York City Department of Corrections, to be transported to New York City Department of Corrections civil jail, to be held there in custody for a period of seven days of incarceration.

This constitutes the Order of the Court. The plaintiff is remanded into custody.

Officers, take charge. This matter is concluded.

**********************************

CERTIFIED TO BE A TRUE AND ACCURATE TRANSCRIPT OF THE ORIGINAL STENOGRAPHIC MINUTES TAKEN OF THIS PROCEEDING.

COPY [redacted]

Court Reporter

# EXHIBIT 13

Letter of Maria Coffinas, Esq. to Hon. William A. Viscovich, J.S.C., filed May 19, 2026, transmitting Order of the United States Bankruptcy Court dated May 1, 2026 (Adv. Pro. No. 24-01059-jmm)
NYSCEF Doc. No. 892

COFFINAS LUSTHAUS

186 Joralemon Street, Suite 701 • Brooklyn, NY 11201 • Tel: 718.488.7900 • Fax: 718.625.3210 • www.coflus.com

Maria Coffinas
Meredith Lusthaus

May 19, 2026

*Via NYSCEF filing*

Honorable William A. Viscovich

Re: Margarita Parlionas v. Athanasios Parlionas
Supreme Court, Queens County
Index No.: 12636/2015

Dear Hon. Viscovich:

Enclosed is the Order issued by U.S. Bankruptcy Judge Jill Mazer-Marino on May 1, 2026.

Very truly yours

[redacted]

MC/mp

cc: Margarita Parlionas

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
In re:

Margarita Onassis Parlionas
a/k/a Margarita Mary Vekrakos,

Debtor.

Chapter 7

Case No. 23-42029-jmm
--------------------------------------------------------------X
Anthanasios Parlionas,

Plaintiff,

v.

Margarita Onassis Parlionas,

Defendant.

Adv. Pro. No. 24-01059-jmm
--------------------------------------------------------------X

**ORDER DENYING DEBTOR'S MOTION TO CLARIFY**
**INTEREST IN YOYO LIP GLOSS**

**WHEREAS**, the above captioned debtor (the "Movant") filed a motion seeking the Court to clarify the debtor's estate's interest in YoYo Lip Gloss, Inc., (the "Motion") [ECF No. 15]; and

**WHEREAS**, the Court held a hearing on the Motion on March 19, 2026.

**NOW, THEREFORE**, for the reasons set forth on the record of the March 19, 2026, hearing, it is hereby

**ORDERED**, that the Motion is denied.

Dated: May 1, 2026
Brooklyn, New York

Jil Mazer-Marino
Chief United States Bankruptcy Judge

# EXHIBIT 14

Order of Commitment, filed May 27, 2026
NYSCEF Doc. No. 899

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS PART 63

-----------------------------------------------------------X

MARGARITA PARLIONAS,

Plaintiff,

**Index No:** 721778/2020

-against-

**ORDER OF COMMITMENT**

ATHANASIOS PARLIONAS

Defendant.

-----------------------------------------------------------X

FILED
5/27/2026
COUNTY CLERK
QUEENS COUNTY

**P R E S E N T: WILLIAM A. VISCOVICH, J.S.C.**

**WHEREAS** by oral Order of this Court dated May 21, 2026 file; and

**WHEREAS** plaintiff Margartia Parlionas was held and adjudged in summary contempt of Court in that the plaintiff violated Civil Rights Law Sec. 52 and 22 NYCRR Secs. 131.1 & 131.7

**ORDERED** that the plaintiff **MARGARITA PARLIONAS** is sentenced to a period of SEVEN DAYS (7) incarceration with the New York City Department of Corrections. Plaintiff **MARGARITA PARLIONAS** is forthwith remanded to the custody of the New York City Department of Corrections to be transported to the New York City Department of Corrections, Civil Jail, to be held there in custody for a period of seven (7) days.

The foregoing constitutes the Order of the Court.

Dated: May 27, 2026

**E N T E R:**

**WILLIAM A. VISCOVICH, J.S.C.**

1