UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

| | |
|---|---|
| In re: | Case No. 19-75598-reg |
| YUVAL GOLAN, | Chapter 7 |
| Debtor. | |

---------------------------------------------------------------x

# **DECISION**

Before the Court is a motion (the "Motion") by Yuval Golan (the "Debtor") to, *inter alia*: (1) enforce the automatic stay, 11 U.S.C. § 362(a), (2) void any action(s) taken in violation of the stay, and (3) impose monetary damages for alleged willful violation of the automatic stay by creditor Jonathan E. Kroll & Associates, PLLC ("Kroll"). Kroll is counsel to the Debtor's wife[1] in a state court matrimonial proceeding, and is also a creditor of the Debtor by virtue of a $30,000 pre-petition judgment (the "Kroll Judgment") awarded to Kroll by the state court for Debtor's wife's legal fees in connection with the matrimonial action.

Pre-petition, the Debtor's wife initiated contempt proceedings against the Debtor for his failure to comply with orders of the state court, including an order to pay the Kroll Judgment. The state court held the Debtor in contempt for failing to comply with court orders, including the order to pay the Kroll Judgment, and the court scheduled a subsequent hearing on sentencing. Two days prior to the sentencing hearing, the Debtor filed bankruptcy and gave notice of the filing to Kroll. Kroll appeared at the sentencing hearing and argued that the hearing was not stayed by the bankruptcy. Kroll advocated for the incarceration of the Debtor barring his payment of the Kroll Judgment. The record demonstrates that the state court conducted a full hearing highlighted by a thoughtful analysis of the effect of the automatic stay on contempt

---

[1] The record is unclear as to whether the Debtor's marriage has in fact been dissolved. Absent evidence that the marriage is dissolved, the Court will refer to the Debtor's spouse as "wife."

proceedings. The state court determined that the automatic stay did not apply to the sentencing and ordered the Debtor to be incarcerated for a period of 90 days. The Debtor, however, retained the right to purge the contempt by paying $20,000 to Kroll. Mot. to Impose Stay, Exh. F. (Tr. at 35:15-18), ECF No. 8.

Here, the Debtor argues that the act of proceeding with the sentencing hearing post-bankruptcy filing was a violation of the automatic stay and that the automatic stay prevented the state court from requiring the Debtor to pay a pre-petition debt as a condition to purging his civil contempt. *See Goodman v. Albany Realty Co. (In re Goodman)*, 277 B.R. 839 (Bankr. M.D. Ga. 2001). Kroll argues that the state court properly exercised its concurrent jurisdiction with the bankruptcy court to determine whether the automatic stay applied. *See Mokuba v. Pitts (In re Pitts)*, Case No. 08-74860, Adv. Proc. No. 09-8320, 2009 WL 4807615 (Bankr. E.D.N.Y. 2009). Kroll maintains that the state court was correct in its finding that the stay did not apply because, according to Kroll, a claim for attorney's fees in a matrimonial action, properly awarded under New York law is a domestic support obligation, which is non-dischargeable pursuant to 11 U.S.C § 523 (a)(5) and/or (15) and thus not subject to the automatic stay. Kroll also argues that the state court proceedings were for criminal contempt which is not stayed by the bankruptcy filing.

These arguments raise the following questions: Was the sentencing hearing in the nature of a criminal proceeding and therefore excepted from the automatic stay by virtue § 362(b)(1)? Was the state court's requirement that the Debtor pay $20,000 to purge his contempt a violation of the automatic stay? Did Kroll, acting in its capacity as a creditor, violate the automatic stay by appearing at the sentencing hearing and advocating for the Debtor's incarceration barring payment of the Kroll Judgment? If yes, what remedy should be imposed?

The Court finds that the state court did not violate the automatic stay by proceeding with the sentencing hearing. The findings of the state court at the hearing are consistent with a finding that the sentencing hearing was criminal in nature and thus excepted from the stay under § 362(b)(1). The state court made clear that it was sentencing the Debtor for contumacious conduct against the dignity of the state court. In this Court's view, the automatic stay absent an extraordinary finding will not prevent a non-bankruptcy court from enforcing a pre-petition contempt finding.

However, there is a distinction between the decision to conduct the sentencing hearing and the actual sentence imposed by the court at the hearing. Had the state court imposed a sentence designed to protect the integrity of the court from further offensive conduct by the Debtor, this Court would not substitute its own judgment for the judgment of the state court and find the sentence to be a violation of the automatic stay. But when the sentence the court imposed included a requirement that the Debtor pay a creditor what is clearly a pre-petition obligation, then the automatic stay is violated and such order is void.

In addition, Kroll by its conduct violated the automatic stay when it appeared at the sentencing hearing in its role as a creditor and advocated a purge provision that included the requirement that the Debtor pay $20,000 towards the Kroll Judgment.[2] As explained herein, Kroll's argument that the Kroll Judgment was non-dischargeable is irrelevant to this analysis. For these reasons, and the reasons to follow, the Court finds that Kroll willfully violated the stay and directs that the $20,000 paid by the Debtor to purge his contempt be returned to the Debtor. Pursuant to § 362(k), the Court shall conduct a hearing to determine whether and for what

---

[2] According to Kroll, the $20,000 is currently being held by the sheriff, but Kroll argues that it is entitled to those funds. Mem. of law in opp'n to req. to vacate ct. order, ECF No. 24.

amount Kroll is obligated to reimburse the Debtors actual damages in the form of attorney's fees and costs associated with filing this Motion and related court appearances. Punitive damages will not be awarded.

### ***Procedural History and Relevant Facts***

Proceedings to dissolve the Debtor's marriage were initiated in May of 2017. In that proceeding the Debtor's wife was represented by Kroll. By order, dated January 08, 2019, the state court ordered the Debtor to pay $30,000 to Kroll on account of legal fees incurred by the Debtor's wife in the matrimonial proceeding. Mot. to Impose Stay, Exh. C at 8, ECF No. 8. The Debtor failed to pay Kroll's fees and upon submission of an affirmation of non-compliance by Kroll the state court awarded Kroll a judgment, dated April 15, 2019, in the amount of $30,000 ("Kroll Judgment"). *Id*. Exh. D.

Thereafter, on July 10, 2019, the Debtor's wife sought to hold the Debtor in contempt for his alleged willful failure to comply with the order of the state court to pay the Kroll Judgment, among other things. *Id*. Exh. E at 1. The state court granted the motion and held the Debtor in contempt citing Article 19 of the Judiciary Law and New York Domestic Relations Law § 245. *Id.* at 6. The state court reasoned that the Debtor had "…willfully violated the Orders of [the court] . . ." and there was "no reason to believe that any fines or threat of fines from [the] court would change the Debtor's attitude or compel his compliance…" *Id*. at 7. The contempt order provided that the Debtor could purge his contempt by paying Kroll $30,000 within 30 days of service of the Order. *Id.* If the Debtor failed to purge, the state court found that the Debtor would be incarcerated for a period up to six months. A sentencing hearing was scheduled for August 12, 2019. *Id*. at 8.

On July 26, 2019, the Debtor, through matrimonial counsel, Kenneth J. Weinstein, P.C., filed an Order to Show Cause with the Appellate Division for the Second Department of New York seeking a stay of the state court's July 10th Order. The Debtor's request was denied. Mem. of law in opp'n to req. to vacate ct. order, Exh. F, ECF No. 24.

On August 9, 2019, the Debtor filed a petition for relief under chapter 7 of title 11 of the Bankruptcy Code. On the same day, the Debtor served Kroll a copy of the petition. Mot. to Impose Stay, Exh. B, ECF No. 8.

On August 12, 2019, the state court proceeded with the contempt sentencing hearing. At the hearing, the state court first considered and decided the issue of whether the sentencing hearing based on the pre-petition contempt finding was stayed by the filing of the bankruptcy. *Id*. Exh. F. (Tr. at 16:24-25). Kroll appeared at the contempt sentencing hearing, "…on behalf of John E. Kroll and Associates…," *Id*. Exh. F. (Tr. at 2:6-7) and Shany Kirshner, an associate at Jonathan E. Kroll and Associates, appeared for the Debtor's wife. *Id*. Exh. F. (Tr. at 2:10-11). Kroll argued that "…the contempt proceeding is not stayed…, nor is the judgment for counsel fees." *Id*. Exh. F. (Tr. at 16:16-18). Relying on § 523(a)(15) of the Bankruptcy Code, Kroll argued that the Kroll Judgment was incurred by the Debtor in the course of a divorce proceeding, and thus is non-dischargeable. *Id*. Exh. F. (Tr. at 6:18-25). The Debtor maintained that he was not in violation of the state court orders, *Id*. Exh. F. (Tr. at 31:18-21), but in any event, he argued that the state court proceedings were stayed by the bankruptcy filing and it was incumbent upon Kroll to first seek relief from stay in bankruptcy court. *Id*. Exh. F. (Tr. at 11:9-16).

Ultimately, the state court found that the contempt sentencing hearing was not stayed by the bankruptcy filing. At the sentencing hearing the state court distinguished between sentencing in a contempt proceeding aimed at upholding the dignity of the state court and contempt

proceedings aimed at collecting pre-petition debts. The court found the case to fall within the former category, and found that the sentencing hearing was not stayed by the bankruptcy. The state court ordered the Debtor to be immediately incarcerated based upon his contempt for 90 days or until such time as he paid $20,000 to be released. *Id*. Exh. F. (Tr. at 35:12-17).

The commitment order, dated August 12, 2019, directs that the $20,000 purge amount be paid to Kroll. Mot. to Impose Stay, Exh. G., ECF No. 8. On the same day, the Debtor through a third party paid the purge amount and was released from incarceration. Mem. of law in opp'n to req. to vacate ct. order, ECF No. 24.

On August 13, 2019, the Debtor, through bankruptcy counsel, filed the instant motion to enforce the automatic stay pursuant to § 362(a). Mot. to Impose Stay at 3-4, ECF No. 8. The Debtor seeks: (i) to vacate the state court sentence of incarceration, (ii) to declare the sentencing order void *ab initio* as having been entered in violation of the automatic stay, (iii) to compel the state court to set aside the sentencing order and return the $20,000 purge amount to the Debtor, (iv) to compel the wife, Kroll and the state court to respect the automatic stay, and (v) an award of attorney fees and costs associated with the Motion, plus punitive damages under § 362(k). *Id*. at 11.[3] The Debtor argues that the state court erred in finding that the automatic stay did not apply to the sentencing hearing because the Debtor's alleged contempt was civil in nature, not criminal, and there is no other applicable exception to the stay under § 362(b). *Id*. 4, 7-8.

On September 9, 2019, Kroll opposed the Motion and argued that a claim for matrimonial legal fees properly awarded under New York state law is a domestic support obligation, which is non-dischargeable pursuant to 11 U.S.C § 523(a)(5) and/or (15) and therefore the stay did not

[3] The Court will not vacate the state court's incarceration order as the Debtor has been released and that matter is now moot.

apply. Mem. of law in opp'n to req. to vacate ct. order, ECF No. 24. Thus, Kroll argues that there was no willful violation of the automatic stay. *Id*.

***Discussion***

***I. Did the state court have jurisdiction to determine whether the automatic stay applied to the contempt sentencing hearing and disposition?***

As a preliminary matter, this Court finds that the state court was acting within its jurisdiction when it engaged in its analysis at the contempt sentencing hearing as to whether the automatic stay applied to the proceeding. *See, e.g., Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin–United Corp.)*, 765 F.2d 343, 347 (2d Cir. 1985); *Siskin v. Complete Aircraft Services Inc.* (*In re Siskin*), 258 B.R. 554, 562 (Bankr. E.D.N.Y. 2001) (finding that state and federal courts have concurrent jurisdiction to determine the applicability of the automatic stay).

However, the ultimate determination as to whether the stay applies rests with the bankruptcy court and the *Rooker-Feldman* doctrine does not prevent the bankruptcy court from re-visiting the state court's analysis on this subject. *See Mokuba v. Pitts (In re Pitts)*, Case No. 08-74860, Adv. Proc. No. 09-8320, 2009 WL 4807615 (Bankr. E.D.N.Y. 2009) (reasoning that this is consistent with the bankruptcy court's power to enforce its own injunctions under the Supremacy Clause). *See also Eastern Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117, 121 (2d Cir. 2001) (questions of stay violation are preempted by the Bankruptcy Code); *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir. 2000) (bankruptcy court was not precluded by the *Rooker-Feldman* doctrine from annulling a state court's determination regarding the automatic stay).

Consequently, this Court will embark on its own analysis of the § 362 automatic stay as it applied to the state court's contempt sentencing hearing and resulting sentencing of the Debtor.

## *II. Is there an exception to the automatic stay for a contempt sentencing hearing and disposition where the Debtor was found in contempt pre-petition and all that remained to be done was sentencing?*

Upon the filing of a petition in bankruptcy, § 362(a) imposes a stay of "the commencement or continuation, . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case, . . . or to recover a claim against the debtor that arose before the commencement of the case . . ." 11 U.S.C. § 362(a)(1). This stay applies unless: (1) the stay is lifted pursuant to § 362(d) by order of the bankruptcy court, or (2) it expires by its own terms as provided in § 362(c), or (3) one of the exceptions to the stay found in § 362(b) applies. The stay was not lifted in this case, nor did the stay expire under § 362(c), so here we must find an exception under § 362(b).

Relevant to this case, pursuant to § 362(b)(1) the stay does not apply to "the commencement or continuation of a criminal action or proceeding against the debtor; . . ." 11 U.S.C. § 362(b)(1).[4] So the question becomes was the contempt sentencing hearing and resulting direction that the Debtor pay $20,000 to Kroll to purge the contempt and avoid incarceration, a criminal proceeding under § 362(b)(1)?[5]

---

4 The Court recognizes that § 362(b)(2)(B) creates an exception to the stay for "the collection of a domestic support obligation from property that is not property of the estate; . . ." However, the Court finds this exception does not apply here. First, assuming without deciding that the Kroll Judgment was a "domestic support obligation", the action at issue here was a contempt sentencing hearing, not specifically a hearing to collect the Kroll Judgment. Second, to the extent it was a hearing and ultimately an order to collect the Kroll Judgment, it is not clear that the action was seeking to collect from property that was "not property of the estate."

5 The Court finds that the issue of whether the contempt sentencing hearing and resulting incarceration of the Debtor was stayed by § 362(a)(1) is properly analyzed under § 362(b)(1), not, as Kroll argued, based on whether or not the Kroll Judgment is non-dischargeable. There is no blanket exception to the stay in § 362(b) which allows for the collection of non-dischargeable debts without first seeking relief from stay under § 362(d).

A "criminal proceeding" under § 362(b)(1) is not limited to criminal prosecution under criminal statutes.[6] Contempt proceedings in civil cases can be either criminal or civil in nature and if criminal in nature they will fall under the § 362(b)(1) exception. *See Guariglia v. Community Nat. Bank & Trust Co.*, 382 F. Supp. 758, 761 (E.D.N.Y. 1974), *aff'd*, 516 F.2d 896 (2d Cir. 1975) (distinguishing between contempt proceedings to uphold the dignity of the court and contempt proceedings intended to effectuate collection of a debt). Generally, criminal contempt proceedings are intended to uphold the dignity of the court and are vindicatory in nature. If a party engages in "willful and deliberate defiance of the court's orders" and "the consequences of the contumacious behavior" affront "the public interest," *United States v. United Mine Workers*, 330 U.S. 258, 303 (1974), a court's resulting contempt is "criminal in nature." *See Rook v. Rook (In re Rook)*, 102 B.R. 490, 493 (Bankr. E.D. Va. 1989), *aff'd*, 929 F.2d 694 (4th Cir. 1991); *see also America Online, Inc. v. CN Productions, Inc.*, 272 B.R. 879, 882 (E.D. Va. 2002) (finding if the purpose of the contempt is "to uphold the [c]ourt's dignity," the contempt is vindicatory in nature). Civil contempt proceedings, on the other hand, are generally remedial in nature and focused more on compelling behavior that may benefit some other party to the litigation. that the character and purpose of the sanctions imposed often determines whether contempt is civil or criminal in nature); *see also In re Lincoln*, 264 B.R. 370, 376 (Bankr. E.D. Pa. 2001) (citing *Guariglia v. Community Nat. Bank & Trust Co.*, 382 F. Supp. 758, 761 (E.D.N.Y. 1974), *aff'd*, 516 F.2d 896 (2d Cir. 1975) (distinguishing between contempt proceedings to uphold the dignity of the court and contempt proceedings intended to effectuate collection of a debt)).

---

6 *See generally* Amir Shachmurove, *Sherlock's Admonition: Vindicatory Contempts as Criminal Actions for Purposes of Bankruptcy Code § 362*, 13 DePaul Bus. & Com. L.J. 67 (2014).

In the matter at hand, it is clear to this Court from a review of the record that the contempt finding was based upon the state court's determination that the Debtor's contumacious conduct represented an affront to the dignity of the state court. Therefore, this Court finds that the contempt proceeding was criminal in nature for purposes of § 362(b)(1). When the state court entered the contempt order, it reasoned that the Debtor had "…willfully violated the Orders of this Court…" Mot. to Impose Stay, Exh. E at 7, ECF No. 8, "…and there was no reason to believe that any fines or threat of fines from the court would change the Debtor's attitude or compel his compliance…" *Id*. This is consistent with the notion that a criminal contempt order addresses "… a rejection of judicial authority, or an interference with the judicial process…" *See Lewis v. United States*, 518 U.S. 322, 329 (1996) (quoting *Codispoti v. Pennsylvania,* 418 U.S. 506, 516 (1974)).

At issue here is the sentencing hearing and the resulting sentence and whether those acts were violative of the automatic stay. The state court in the instant case was sensitive to the distinction between contempt proceedings based on the failure to pay matrimonial obligations and sentencing for contempt where contempt had already been found pursuant to a valid and enforceable pre-petition order. The court stated:

> Under the filing of a Bankruptcy Petition, Chapter 7 in this instance, I would agree with the argument it is pretty-well founded that matrimonial actions particularly are stayed upon the filing…But if this were a contempt proceeding based upon the nonpayment of obligations concerning a marital estate such as carrying costs or things of that nature that the court ordered a litigant to pay, then in that instance I would agree with you, Mr. Weinstein, that I would stay the contempt proceeding, *but it is not such a proceeding*. *This is a sentence first and foremost. Contempt had already been found. That distinguishes it from some of the cases that you have submitted and argued*, but also it seems to be pretty well established that the award of attorney's fees is a nondischargeable debt. In that instance…[i]t doesn't fall within the ambit of an automatic stay…We will proceed with the sentence, and in that regards, I'll hear from both sides…

Mot. to Impose Stay, Exh. F. (Tr. at 19:21-25–20:1-18), ECF No. 8 (emphasis added).

This Court finds that to the extent the purpose of the sentencing hearing was to mete out punishment for a previously-found contempt based on the Debtor's failure to comply with court orders, the proceeding was not subject to the automatic stay. *Cf. Wohleber v. Skurko (In re Wohleber)*, 596 B.R. 554, 571 (6th Cir. B.A.P. 2019) (finding contempt order to be civil in nature in part because "…nowhere in the record [indicated] any evidence that the purpose of the confinement was to uphold the court's dignity. Rather,…the purpose of the sentencing hearing and [the debtor's] confinement was to coerce him into paying the property settlement.").

However, there is a subtle but important distinction between the *sentencing hearing* and the *sentence*. Although the state court's decision to hold the sentencing hearing did not violate the automatic stay, when the state court imposed at sentencing a provision which required the Debtor to pay Kroll money in partial satisfaction of a pre-petition obligation in order to be released from incarceration, that act did violate the automatic stay. *See Goodman v. Albany Realty Co. (In re Goodman)*, 277 B.R. 839, 841 (Bankr. M.D. Ga. 2001) (holding that the automatic stay applied to the contempt order because it was a tool for coercing the payment of a pre-petition judgment)). *Cf. Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) ("…the stay protects creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors."). In the instant case, the state court stated:

> You have been given the opportunity to purge [your] contempt,…The purge amount will be set at $20,000. That is, Mr. Golan, if you choose, you may pay the $20,000 and you could be released. That will satisfy your sentence. The remainder of the contempt amount can be collected by money judgment.

Mot. to Impose Stay, Exh. F. (Tr. at 35:9-19), ECF No. 8.

The commitment order, dated August 12, 2019, directs that the $20,000 purge amount be paid to Kroll.[7] Mot. to Impose Stay, Exh. G., ECF No. 8. Setting a purge requirement that required a $20,000 payment to Kroll to avoid incarceration created a sentence that was remedial in nature rather than a vindicatory. Had the state court merely directed the incarceration of the Debtor for a period of time as punishment for the Debtor's willful violation of the court's orders, rather than craft a purge amount which required payment be made to a pre-petition creditor, this Court would not find the state court's sentence to be violative of the automatic stay. *See Gruntz v. County of Los Angeles (In re Gruntz),* 202 F.3d 1074 (9th Cir. 2000); *In re Burgess,* 503 B.R. 154 (Bankr. M.D. Fla. 2014) (finding state court contempt order was criminal in nature, and enforcement was not barred by automatic stay).

Thus, the Court finds that the contempt sentencing proceeding comes within the purview of § 362(b)(1) as it was a proceeding that was criminal in nature because it was the continuation of a proceeding by the state court to punish the Debtor for his willful failure to comply with orders of the state court. However, when the sentence the court imposed required the Debtor to pay a creditor for a pre-petition obligation that act by the court did in fact violate the automatic stay. Because any action taken in violation of the automatic stay is void *ab initio*, the Court directs that the $20,000 paid by the Debtor to purge his contempt be returned to him. *See, e.g., Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) (citing *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc.* (*In re 48th St. Steakhouse, Inc.*), 835 F.2d 427, 431 (2d Cir. 1987)); *In re Ebadi*, 448 B.R. 308, 313 (Bankr. E.D.N.Y. 2011).

---

[7] This Court recognizes that the commitment order was for "civil contempt." However, that label is not determinative of this analysis. *See In re Burgess,* 503 B.R. 154, 157 (Bankr. M.D. Fla. 2014).

***III. Should this Court award damages against Kroll for willful violation of the automatic stay under § 362(k)?***

The Debtor seeks to hold Kroll liable under § 362(k) for damages resulting from its alleged willful violation of the stay for the role it played and the position it advocated at the contempt sentencing hearing. Mot. to Impose Stay at 10-11, ECF No. 8. Under § 362(k), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). Willful violation is found "when a creditor violates the stay with knowledge that the bankruptcy petition has been filed…Willfulness does not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional…[A] creditor's 'good faith' belief that he is not violating the automatic stay provision is not determinative of willfulness…" *Landsdale Family Rests., Inc. v. Weis Food Serv. (In re Landsdale Family Rests., Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992) (citations omitted). As such, it is necessary to look at Kroll's specific actions in connection with the contempt sentencing hearing.

Despite knowledge of the Debtor's bankruptcy filing, Kroll appeared at the contempt sentencing hearing as a creditor apparently motivated by collecting the Kroll Judgment. Kroll argued at the hearing that "…the contempt proceeding is not stayed…, nor is the judgment for counsel fees." Mot. to Impose Stay, Exh. F. (Tr. at 16:16-18), ECF No. 8. Relying on § 523(a)(15) of the Bankruptcy Code, Kroll argued that the Judgment was incurred by the Debtor in the course of a divorce proceeding, and thus is non-dischargeable. *Id*. (Tr. at 6:18-25). The Kroll Judgment may or may not be non-dischargeable. However, the non-dischargeability of the debt has no bearing on whether the stay applied. *See supra* notes 4-5. In fact, Kroll's focus on the nature of the debt, or its focus on the debt at all in connection with the contempt sentencing

hearing, was entirely inappropriate. If Kroll intended to, as it did, appear at the contempt sentencing hearing and advocate for a disposition that would result in payment of all or any part of its claim against the Debtor, it was incumbent upon Kroll to first seek relief from the automatic stay under § 362(d). *See In re Wohleber*, 596 B.R. at 576-77 ("The burden was on the creditor and her legal counsel to stop the collection proceeding once the bankruptcy was filed.").

Consequently, the Court finds that Kroll violated the automatic stay when it appeared as a creditor before the state court at the contempt sentencing hearing and advocated a disposition to the contempt proceeding that included the requirement that the Debtor pay the Kroll Judgment. Simply put, Kroll's actions were "a thinly veiled attempt to coerce payment of the debt, …" *Weary v. Poteat*, 627 F. App'x 475, 478 (6th Cir. 2015).

In addition to the requirement that the $20,000 purge amount be returned to the Debtor, the Court will award the Debtor actual damages in the form of attorneys' fees and costs incurred by the Debtor in connection with this Motion to enforce the stay. 11 U.S.C. § 362(k).

### ***Conclusion***

For all the reasons stated herein, the Court finds that the contempt sentencing hearing which took place post-petition comes within the purview of § 362(b)(1) because contempt had been found pre-petition for Debtor's willful violation of the state court's pre-petition order. However, when the state court set a contempt purge provision which required the Debtor to pay $20,000 to a pre-petition creditor, Kroll, the stay was violated. Because actions taken in violation of the stay are void *ab initio*, the $20,000 purge amount shall be returned to the Debtor.

Further, the Court finds that Kroll's actions and advocacy at the contempt sentencing hearing resulted in a willful violation of the automatic stay. Kroll shall reimburse the Debtor

actual damages in the form of attorney's fees and costs associated with filing this Motion and related court appearances. An order consistent with this Decision will be entered forthwith.

**Dated: Central Islip, New York**
**December 19, 2019**

**Robert E. Grossman**
**United States Bankruptcy Judge**