**Rosen, Tsionis & Pizzo, PLLC**
38 New Street
Huntington, New York 11743
(631) 423-8527
Alex E. Tsionis, Esq.

*Attorneys for Debra Kramer, Chapter 7 Trustee*

**Hearing Date: November 12, 2026**
**Hearing Time: 10:00 a.m.**
**Objection Deadline: November 5, 2026**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re: Chapter 7

MARGARITA ONASSIS PARLIONAS
*a/k/a* MARGARITA MARY VEKRAKOS,

Case No.: 23-42029-jmm

Debtor.
-----------------------------------------------------------X

**CHAPTER 7 TRUSTEE'S OMNIBUS OBJECTION SEEKING ENTRY OF AN ORDER DISALLOWING AND EXPUNGING PROOFS OF CLAIM 15, 21, 22, AND 23 FILED BY EVANGELIA ANDREONE AND CHRISTOPHER ANDREONE (VIOLATIVE OF GENERAL OBLIGATION LAW SECTION 5-1105 – DUPLICATIVE – NOT ENTITLED TO ADMINISTRATIVE EXPENSE STATUS)**

| |
|---|
| **THE OBJECTION SEEKS TO DISALLOW CERTAIN CLAIMS FILED IN THE ABOVE-CAPTIONED BANKRUPTCY CASE.** |
| **PARTIES RECEIVING THE OBJECTION SHOULD REVIEW THE OBJECTION TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OBJECTION AND/OR THE EXHIBITS ATTACHED THERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS THEIR CLAIM(S).** |
| **IF YOU DO NOT FILE A RESPONSE BY THE RESPONSE DEADLINE OF NOVEMBER 5, 2026, YOUR CLAIM MAY BE DISALLOWED.** |
| If you have questions, please contact the Chapter 7 Trustee's counsel:<br>Rosen, Tsionis & Pizzo, PLLC, (631) 423-8527<br>Attention: Alex E. Tsionis, Esq., atsionis@ajrlawny.com. |

**TO: THE HONORABLE JIL MAZER-MARINO**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Debra Kramer, the Chapter 7 Trustee (the "Trustee") of the estate of Margarita Onassis Parlionas *a/k/a* Margarita Mary Vekrakos (the "Debtor"), by and through her counsel, Rosen,

Tsionis & Pizzo, PLLC, respectfully submits this omnibus objection (the "Objection") pursuant to Sections 105(a) and 502 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and E.D.N.Y. LBR 3007-1, seeking entry of an order, substantially in the form of the proposed order annexed hereto (the "Proposed Order"), disallowing and expunging Proofs of Claim 15, 21, 22, and 23 filed by Evangelia Andreone ("Evangelia") and Christopher Andreone ("Christopher" and Evangelia, together, the "Claimants"), and respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Trustee objects to Claim 15 because the Promissory Notes (defined below) annexed to Claim 15 appear to be on account of past consideration but fail to explicitly and clearly state the past consideration, in violation of Section 5-1105 of the New York General Obligations Law (the "GOL"). In addition, the Trustee objects to Claim 21 and Claim 22, as those claims appear to be duplicates of Claim 15.

2. The Trustee also objects to Claim 23 on two separate grounds. *First*, to the extent that Claim 23 is deemed an administrative expense claim, it should be disallowed and expunged, as none of the expenses alleged in Claim 23 are an actual, necessary cost of preserving the Debtor's estate. And *second*, to the extent that Claim 23 is deemed a general unsecured claim, it should be disallowed and expunged, as general unsecured claims are for pre-petition debts, and Claim 23 appears to be on account of alleged post-petition advances.

## JURISDICTION

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. §§ 157(b).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1408 *et seq*.

5. The statutory predicates for the relief requested herein are Sections 105(a) and 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and E.D.N.Y. LBR 3007-1.

**I. The Bankruptcy Filing and Appointment of the Trustee**

6. On June 7, 2023, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. *See* ECF No. 1.

7. On March 18, 2024 (the "Conversion Date"), the Court entered an Order [ECF No. 95] converting the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

8. On March 20, 2024, the United States Trustee for Region 2 appointed Debra Kramer as interim Chapter 7 Trustee for the Debtor's bankruptcy estate. *See* ECF No. 100. Following a duly convened meeting of creditors pursuant to Section 341 of the Bankruptcy Code, Debra Kramer became the permanent Chapter 7 Trustee for the Debtor's bankruptcy estate.

**II. The Disputed Claims**

**A. Claim 15**

9. On November 28, 2023, prior to the Conversion Date, the Claimants filed a proof of claim docketed as Claim Number 15 on the Court's Claims Register ("Claim 15"). A copy of Claim 15 is annexed hereto as **Exhibit "A"**.

10. According to Claim 15, the Claimants assert a general unsecured claim in the amount of $234,449.00 on account of "money loaned to assist debtor with legal, professional, legal expenses, and bills." *See* Claim 15, Q. 8.

11. Attached to Claim 15 is a "Witness Statement" (the "Witness Statement") executed by the Claimants, in which they state, among other things, that Evangelia is the Debtor's Daughter and Christopher is the Debtor's Son (in-law). Upon information and belief, Evangelia and

Christopher are married. The Trustee submits that the Claimants are "insiders" of the Debtor as that term is defined in Section 101(31) of the Bankruptcy Code.

12. To support their claim, the Claimants attached various documents to Claim 15, including a purported spreadsheet (the "Spreadsheet") allegedly showing the sums transferred to the Debtor or to whom the Claimants paid on the Debtor's behalf, the date of the transfer or payment, the amount transferred or paid, and the type of category that the transfer or payment falls under (i.e., healthcare, legal, utilities, etc.).

13. The Claimants also attach three promissory notes to Claim 15. The first promissory note is dated January 6, 2022, is in the amount of $60,649.40, and states that it is allegedly "[f]or $ cash given From Jan 21 – Dec 21" (the "First Promissory Note"). The First Promissory Note appears to be executed by both the Debtor and the Claimants.

14. The second promissory note attached to Claim 15 is dated January 7, 2023, is in the amount of $124,865.36, and is allegedly "for Bills pad [sic] and cash from 1.1.22 – 12.31.22" (the "Second Promissory Note"). The Second Promissory Note also appears to be executed by both the Debtor and the Claimants.

15. The third promissory note is dated June 7, 2023, the same day as the Petition Date, and is allegedly in the amount of $48,934.24[1] (the "Third Promissory Note", together with the First Promissory Note and the Second Promissory Note, together, the "Promissory Notes"). Unlike the First Promissory Note and the Second Promissory Note, the Third Promissory Note does not contain a recital for the past consideration. The Third Promissory Note appears to be executed by the Debtor and the Claimants.

[1] The amount on each promissory note totals the amount listed in Claim 15 ($234,449.00).

16. As shown in the Spreadsheet annexed to Claim 15, each Promissory Note appears to be on account of past consideration, retroactively consolidating transfers of money allegedly made by the Claimants to the Debtor or on the Debtor's behalf and converting those transfers or payments into alleged loans.

17. For example, based on the documentation and the Spreadsheet annexed to Claim 15, the Claimants appear not to have given the Debtor the loan amounts listed on the Promissory Notes in a single tranche. Rather, it appears the Claimants allegedly transferred money to the Debtor or made payments on the Debtor's behalf over time, and then, months later, allegedly entered into a promissory note for the various amounts allegedly transferred to the Debtor or remitted on the Debtor's behalf.

**B. Claim 21**

18. On August 5, 2024, after the Conversion Date, the Claimants filed a second proof of claim, docketed as Claim Number 21 on the Court's Claims Register ("Claim 21"). A copy of Claim 21 is annexed hereto as **Exhibit "B"**.

19. According to Claim 21, the Claimants assert a general unsecured claim in the amount of $234,449.00 and assert that their "claim arises from [their] commitment to assist the [Debtor] in her daily living and legal expenses." *See* Claim 21, Q. 8.

20. Claim 21 appears to be a duplicate of Claim 15, as it asserts the same general unsecured amount as Claim 15 and appears to attach identical copies of the Spreadsheet and the three Promissory Notes that are attached to Claim 15.

**C. Claim 22**

21. On August 5, 2024, the Claimants filed a third proof of claim, docketed as Claim Number 22 on the Court's Claims Register ("Claim 22"). A copy of Claim 22 is annexed hereto as **Exhibit "C"**.

22. According to Claim 22, the Claimants assert a general unsecured claim in the amount of $234,449.00 and assert that their "claim arises from [their] commitment to assist the [Debtor] in her daily living and legal expenses." *See* Claim 22, Q. 8.

23. Claim 22 appears to be a duplicate of both Claim 15 and Claim 21, as it asserts the same general unsecured amount as Claim 15 and Claim 21, and appears to attach identical copies of the Spreadsheet and the three Promissory Notes that are attached to both Claim 15 and Claim 21.

**D. Claim 23**

24. On August 5, 2024, the Claimants filed a fourth proof of claim docketed as Claim Number 23 on the Court's Claims Register ("Claim 23," together with Claim 15, Claim 21, and Claim 22, the "Disputed Claims"). A copy of Claim 23 is annexed hereto as **Exhibit "D"**.

25. It appears that the Claimants in Claim 23 assert both a general unsecured claim and an administrative expense claim in the amount of $15,400.00, as Claim 23 was filed just a few days before the Administrative Bar Date expired,[2] and appears to be on account of a "loan for **post bankruptcy** support to maintain the estate including insurance, daily living, professional fees, healt [sic]." *See* Claim 23, Q. 8 (emphasis added).

26. To support their claim, the Claimants attached a "Witness Statement" (the "Claim 23 Witness Statement") whereby the Claimants stated, among other things, that they "**voluntarily**

[2] On June 24, 2024, the Court entered an Order [ECF No. 148] setting August 9, 2024, as the Administrative Bar Date. The Claimants filed Claim 23 on August 5, 2024, just a few days before the Administrative Bar Date.

provided financial support to [the Debtor] to ensure her survival and well-being", that their "assistance…was provided with the expectation of repayment….", and that the Claimants allegedly assisted the Debtor "with the understanding that these funds would be reimbursed when [the Debtor's] financial circumstances allowed." *See* Wit. Stmt. Cl. 23 (emphasis added).

27. In addition, in their Claim 23 Witness Statement, the Claimants stated that the funds allegedly advanced to or for the benefit of the Debtor were for the Debtor's "daily living expenses including but not limited to food, gas, and insurance, $3,900.00 expense for her emergency dental services and $2500.00 expense for legal professional fees by Michael Cohen." *Id.*

**RELIEF REQUESTED**

28. By this Objection, the Trustee respectfully seeks entry of an order, substantially in the form of the Proposed Order annexed hereto, disallowing the Disputed Claims.

**LEGAL STANDARD**

29. Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest…objects." 11 U.S.C. § 502(a). Once an objection is filed, the burden shifts to the claimant to prove the validity and amount of the claim by a preponderance of the evidence. *Mercer v. Lee (In re Lee)*, 2025 Bankr. LEXIS 1305, at *17 (Bankr. E.D.N.Y. May 29, 2025). The burden-shifting process also applies to claims filed by insiders. *Norris v. Schlossberg (In re Madeoy)*, 2015 Bankr. LEXIS 2326, *15 (2015). Insider claims, however, are subject to heightened scrutiny because of the influence and/or control that the insider may have. *Id.*; *see also Porretto v. Williams (In re Porretto)*, 761 F. App'x 437, 443 n.9 (5th Cir. 2019) (the United States Court of Appeals for the Fifth Circuit found that because the creditor was the debtor's mother, the bankruptcy court applied a heightened scrutiny standard to the debtor's mother's claim); *see also In re LATAM*

*Airlines Grp. S.A.*, 2022 Bankr. LEXIS 248, at *39 (Bankr. S.D.N.Y. Jan. 28, 2022) (where the bankruptcy court found that a claim arising from dealings between the debtor and the insider is to be rigorously construed).

30. Pursuant to Bankruptcy Rule 3007(a), an objection to the allowance of a claim must be in writing, filed with the Court, and served on 30 days' notice. *See* Fed. R. Bankr. P. 3007(a).

**DISCUSSION**

**I. Claim 15 Should be Disallowed and Expunged**

31. Claim 15 should be disallowed and expunged because the Promissory Notes, upon which Claim 15 is based, are purportedly supported by past consideration, but fail to sufficiently identify that consideration as required by Section 5-1105 of the GOL.

32. Section 5-1105 of the GOL provides that:

> A promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, **if the consideration is expressed in the writing** and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed.

NY GOL § 5-1105 (emphasis added).

33. Under New York law, "[g]enerally, past consideration is no consideration and cannot support an agreement because 'the detriment did not induce the promise.'" *Samet v. Binson*, 122 A.D.3d 710, 711 (App. Div. 2nd Dept. 2014) (quoting *Umscheid v. Simnacher*, 106 A.D.2d 380, 381 (App. Div. 2nd Dept. 1984)). Stated differently, because the alleged consideration "had already been incurred, it cannot be said to have been bargained for in exchange for the promise." *Id.* (quoting *Umscheid*, 106 A.D.2d at 381). Section 5-1105 of the GOL creates a statutory exception to that general rule where the past consideration is expressed in the signed writing. *See* NY GOL § 5-1105; *see also Korff v. Corbett*, 155 A.D.3d 405, 408 (App. Div. 1st Dept. 2017). To

qualify for that exception, however, the description of the past consideration must not be "vague" or "imprecise," and extrinsic evidence may not be used to supply or explain consideration that is not sufficiently expressed in the writing itself. *Korff*, 155 A.D.3d at 408 (citing *Clark v. Bank of N.Y.*, 185 A.D.2d 138, 140 (App. Div. 1st Dept. 1992)).

34. In *Samet*, the plaintiff's decedent allegedly loaned money to the defendant and, thereafter, the parties executed a written agreement in which the defendant promised to repay a specified sum. *Samet*, 122 A.D.3d at 710. Because the agreement did not express the underlying debt or any other consideration for the defendant's promise to pay, the Second Department held that the agreement was unenforceable as a promissory note or contract under Section 5-1105 of the GOL. *Id.* at 711. Similarly, in *Korff*, the First Department reiterated that the past consideration must be ascertainable from the writing itself and may not be supplied or clarified through extrinsic evidence. *Korff*, 155 A.D.3d at 408.

35. Here, the documents submitted by the Claimants demonstrate that the consideration allegedly supporting each promissory note had already been furnished before the respective promissory note was executed. According to the Spreadsheet, the Claimants allegedly transferred funds to the Debtor, or made payments on the Debtor's behalf, throughout a particular year and thereafter executed a promissory note purporting to memorialize the aggregate amount allegedly advanced during that preceding period. Thus, insofar as the Claimants seek to enforce the Promissory Notes based upon those antecedent advances and payments, the Promissory Notes are supported by past consideration and must satisfy Section 5-1105 of the GOL (which they do not).

36. The First Promissory Note, dated January 6, 2022, states only that it is "[f]or $ cash given From Jan 21 – Dec 21." That generalized recital does not sufficiently identify the antecedent transactions giving rise to the Debtor's purported obligation. The First Promissory Note does not

identify the amounts or dates of the alleged advances, whether the stated amount represents one advance or numerous advances, or otherwise identify the transactions comprising the stated $60,649.00 obligation. Rather, one must resort to the separately submitted Spreadsheet and other documents accompanying Claim 15 to determine what transactions the Claimants contend constitute the consideration for the First Promissory Note. The Trustee submits that a generalized reference to unspecified "cash given" over an entire year, which requires one to resort to extrinsic evidence to identify the transactions comprising the alleged obligation, does not sufficiently express the past consideration as required by Section 5-1105 of the GOL.

37. The Second Promissory Note appears to suffer from the same deficiency. The Second Promissory Note, dated January 7, 2023, states only that it is "for Bills pad [sic] and cash from 1.1.22 – 12.31.22." This description likewise does not identify the bills allegedly paid, the amounts or dates of those payments, the persons or entities to whom such payments were made, the amounts or dates of the referenced cash advances, or otherwise identify the transactions comprising the alleged $124,865.36 obligation. Instead, the Second Promissory Note refers generally to unspecified "bills" and "cash" allegedly furnished over a twelve-month period. As with the First Promissory Note, the consideration underlying the Second Promissory Note can be identified only by consulting the separately submitted Spreadsheet and other extrinsic evidence. Accordingly, the Trustee submits that the Second Promissory Note likewise fails to sufficiently express the past consideration within the meaning of Section 5-1105 of the GOL.

38. And worst of all, the Third Promissory Note, which is dated June 7, 2023 (the same day as the Petition Date), is even more deficient because it does not identify *any* past consideration supporting the Debtor's promise. The Spreadsheet submitted in support of Claim 15 identifies transactions allegedly occurring during 2023, after the January 1, 2022 through December 31, 2022

period referenced in the Second Promissory Note. The Third Promissory Note therefore presents the same fundamental deficiency identified in *Samet*: a written promise to pay based upon alleged antecedent advances without the underlying debt or other consideration being expressed in the writing. *See Samet*, 122 A.D.3d at 710-11. Because the consideration is absent from the Third Promissory Note itself, resort to the Spreadsheet or other extrinsic evidence cannot supply what Section 5-1105 of the GOL requires the signed writing to express.

39. Accordingly, the Promissory Notes are not enforceable on the basis of the alleged past consideration because they fail to satisfy Section 5-1105 of the GOL. Therefore, Claim 15 should be disallowed and expunged.

## II. <u>Claim 21 and Claim 22 Should be Disallowed and Expunged</u>

40. Claim 21 and Claim 22 should be disallowed and expunged as they appear to be duplicates of Claim 15.

41. Rule 3007(d)(2)(A) of the Bankruptcy Rules permits omnibus objections to object to a claim on the basis that the claim is duplicative of other claims. *See* Fed. R. Bankr. P. 3007(d); *see also In re Endo Int'l PLC*, 2024 LX 42491, at *13 (Bankr. S.D.N.Y. Dec. 13, 2024). "[O]bjections on the grounds set forth in Bankruptcy Rule 3007 (d)…include that the claims are duplicates…." *In re Roman Cath. Diocese of Rockville Ctr.*, 650 B.R. 765, 770 (Bankr. S.D.N.Y. 2023), *appeal denied, judgment aff'd sub nom. In re Roman Cath. Diocese of Rockville Ctr., New York*, No. 20-12345, 2024 U.S. Dist. LEXIS 89471, 2024 WL 2262708 (S.D.N.Y. May 17, 2024). The purpose of the rule is clear: "it is axiomatic that one can not recover for the same debt twice." *In re Handy Andy Home Imp. Centers, Inc.*, 222 B.R. 571, 575 (Bankr. N.D. Ill. 1998).

42. In this case, Claim 21 and Claim 22 appear to be duplicative of Claim 15. The Claimants in Claim 15 assert a general unsecured claim in the amount of $234,449.00 and attach, among other things, the Spreadsheet and the Promissory Notes to support their claim.

43. The Claimants in Claim 21 and Claim 22 likewise assert the same general unsecured amount of $234,449.00 and attach what appears to be the same Spreadsheet and the same three Promissory Notes attached to Claim 15. Accordingly, because Claim 21 and Claim 22 are duplicative of Claim 15, Claim 21 and Claim 22 should be disallowed and expunged.

## III. Claim 23 Should Be Disallowed and Expunged

44. To the extent Claim 23 is asserted as an administrative expense claim, it should be disallowed and expunged because none of the expenses identified in Claim 23 constitute an actual and necessary cost or expense of preserving the Debtor's bankruptcy estate.

45. Section 503(b) permits "allowed, administrative expenses" that involve the "actual, necessary costs and expenses of preserving the estate…" 11 U.S.C. § 503(b). To be entitled to an administrative priority claim under Section 503(b)(1)(A), the creditor must demonstrate that (1) its claim arose from a transaction with or on account of consideration furnished to the debtor and (2) that the transaction or consideration directly benefited the debtor. *Holzer v. Barnard*, 2016 U.S. Dist. LEXIS 98175, at *24 (E.D.N.Y. July 27, 2016). "A clear relationship between the expenditures made and the benefit conferred on the estate must therefore be shown." *In re Ideal Mortg. Bankers, Ltd.*, 539 B.R. 409, 430 (Bankr. E.D.N.Y. 2015). In addition, "[b]ecause the priority elevates the payment of the administrative claim to the detriment of the unsecured creditors, *see* 11 U.S.C. § 507(a)(1), the language of section 503(b)(1)(A) must be narrowly construed to promote the bankruptcy goal of equality of distribution." *In re Patient Educ. Media*, 221 B.R. 97, 101 (Bankr. S.D.N.Y. 1998); *see also Trs. of Amalgamated Ins. Fund v. McFarlin's,*

*Inc.*, 789 F.2d 98, 100 (2d Cir. 1986) ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed.").

46. Here, none of the alleged payments preserved the Debtor's bankruptcy estate or otherwise conferred a benefit upon the estate. According to the Claimants' Claim 23 Witness Statement attached to Claim 23, the amount allegedly advanced consists of: (i) $9,000.00 "directly deposited to [the Debtor's] TD Bank Account to pay for her daily living expenses including but not limited to food, gas, and insurance"; (ii) $3,900.00 for the Debtor's "emergency dental services"; and (iii) $2,500.00 for "legal professional fees by Michael Cohen."

47. These expenditures appear to be the Debtor's personal expenses and did not preserve, protect, or otherwise benefit the bankruptcy estate. The amounts allegedly advanced for the Debtor's food, gas, insurance, and dental services were incurred for the Debtor's personal living and medical expenses, rather than for the preservation or administration of estate property. The fact that such expenditures may have benefited the Debtor personally does not establish that they conferred the direct and substantial benefit upon the bankruptcy estate necessary to qualify for administrative priority under Section 503(b)(1)(A) of the Bankruptcy Code.

48. In addition, the alleged payment of $2,500.00 in legal fees likewise does not support an administrative expense claim. Those fees were allegedly paid to the Debtor's divorce attorney, whose employment was not authorized by the Bankruptcy Court, and Claim 23 does not identify any services performed by that attorney that preserved estate property or otherwise conferred a benefit upon the bankruptcy estate. As such, the alleged payment of the Debtor's personal matrimonial legal expenses does not constitute an actual and necessary cost or expense of preserving the estate within the meaning of Section 503(b)(1)(A) of the Bankruptcy Code.

49. Accordingly, to the extent Claim 23 seeks allowance of an administrative expense under Section 503(b)(1)(A), Claim 23 should be disallowed and expunged. And to the extent Claim 23 is deemed a general unsecured claim, it should also be disallowed and expunged, as Claim 23 is not on account of an alleged pre-petition debt, but rather appears to be on account of alleged post-petition advances. *See* 11 U.S.C. § 502(b) ("….the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States **as of the date of the filing of the petition**….") (emphasis added).

**NOTICE**

50. This Objection will be filed with the Court and served on at least 33 days' notice to: (i) the Claimants; (ii) the Debtor's counsel; (iii) the Office of the United States Trustee; and (iv) all parties who filed a notice of appearance in this case.

**NO PRIOR REQUEST**

51. No previous request for the relief sought herein has been made to this Court or any other court.

[*Remainder of Page Intentionally Left Blank*]

## RESERVATION OF RIGHTS

52. The Trustee reserves her right to amend, modify, or supplement the Objection. Should this Objection be overruled, the Trustee reserves her right to object to the Disputed Claims on other grounds or any other grounds that she discovers.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an order, substantially in the form of the Proposed Order annexed hereto: (i) disallowing and expunging the Disputed Claims; together with (ii) such other, further, and different relief as this Court deems just and proper.

Dated: September 30, 2026
Huntington, New York

Respectfully submitted,

**Rosen, Tsionis & Pizzo, PLLC**
*Counsel to Debra Kramer,*
*Chapter 7 Trustee*

By: *<u>/s/ Alex E. Tsionis</u>*
Alex E. Tsionis, Esq.
38 New Street
Huntington, NY 11743
(631) 423-8527
atsionis@ajrlawny.com